**LAW OFFICE OF GREGORY PEACOCK**
Gregory Peacock, ESQ. (SBN 277669)
4425 Jamboree Road
Suite 130
Newport Beach, CA 92660
Telephone (949) 292-7478
Email: gregorypeacockesq@gmail.com

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

SARAH CRUZ REAZA, individually and as Successor-in-Interest of Decedent Fernando Cruz, FERNANDO BAEZA, individually and as Successor-in-Interest of Decedent Fernando Cruz, FERNANDO CRUZ, JR., individually and as Successor-in-Interest of Decedent Fernando Cruz, FRANK FIDEL CRUZ, individually and as Successor-in-Interest of Decedent Fernando Cruz, CELESTE MARIE CRUZ, individually and as Successor-in-Interest of Decedent Fernando Cruz, RAELENE MARIE CRUZ, individually and as Successor-in-Interest of Decedent Fernando Cruz, J.A., by and through his guardian, JOANNE ALBIDREZ, I.C., by and through his guardian, JOANNE ALBIDREZ, L.M.C., by and through her guardian, JOANNE ALBIDREZ,

Plaintiffs,

vs.

COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT and DOES 1 through 20, Inclusive,

Case No: 5:20-CV-01188 MEMF-SP

[Hon. Maame Ewusi-Mensah Frimpong; Hon. Sheri Pym]

**DECLARATION OF GREGORY PEACOCK, ESQ. RE AUTHENTICITY OF ATTACHED AND SEPARATELY LODGED EXHIBITS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

1

Defendants.

I, Gregory Peacock, Esq. do declare that the facts set forth herein are based upon my personal knowledge and on information and belief, and if called upon to testify I could do so competently.

1. I am an attorney duly licensed to practice before all courts of the State of California. I am the managing partner in the Law Offices of Steven A. Lerman & Associates, Inc. co-counsel of record for Plaintiff SARA CRUZ REAZA, et al. in this action

2. Attached as Exhibit "A" is an excerpt of the Deposition of Sarah Reaza Cruz, taken on June 18, 2021, that was taken by the Defendant in this case.

3. Attached as Exhibit "B" is an excerpt of the Deposition of Sandy Acuna, taken on February 17, 2022, that was taken by the Defendant in this case.

4. Attached as Exhibit "C" is an excerpt of the Deposition of Robert Roach, taken on March 10, 2022, that was taken by the Plaintiff in this case.

5. Attached as Exhibit "D" is an excerpt of the Deposition of Andrew Lucifora, taken on March 8, 2022, that was taken by the Plaintiff in this case.

6. Attached as Exhibit "E" is an excerpt of the Deposition of Geoffrey Gillison, taken on March 11, 2022, that was taken by the Plaintiff in this case.

7. Attached as Exhibit "F" is an excerpt of the Deposition of Todd Halbeisen, taken on March 9, 2022, that was taken by the Plaintiff in this case.

8. Attached as Exhibit "G" is an excerpt of the Audio Transcription of Body

2

DECLARATION OF GREGORY PEACOCK, ESQ. RE AUTHENTICITY OF SEPARATELY FILED EXHIBITS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Worn Camera Video – Final Composite, that was transcribed on July 8, 2022.

9. Attached as Exhibit "H" is an excerpt of the Deposition of Jolie Rodriguez, M.D., taken on January 5, 2021, taken by the Defendant in this case.

10. Attached as Exhibit "I" is an excerpt of the Deposition of Jeffrey Noble, taken on May 19, 2022, taken by the Defendant in this case.

11. Attached as Exhibit "J" is an excerpt of the Deposition of Marvin Pietruszka, M.D., taken on May 18, 2022, taken by the Defendant in this case.

12. Attached as Exhibit "K" is an excerpt of the Deposition of Commander Steve Lurie, taken on May 13, 2022, taken by the Plaintiff in this case.

13. Separately Filed Exhibit "L" is a true and correct copy of Interview of Deputy Roach by Investigator Harvey, taken on October 7, 2019.

14. Separately Filed Exhibit "M" is a true and correct copy of Body Worn Camera of Deputy Roach & Lucifora – Final Composite Video with Audio Transcription.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 14th day of July, 2022, in Los Angeles, CA.

Dated: 7/14/2022                    /s/ *Gregory Peacock*

                                   GREGORY PEACOCK, ESQ.

**DECLARATION OF GREGORY PEACOCK, ESQ. RE AUTHENTICITY OF SEPARATELY FILED EXHIBITS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

EXHIBIT "A"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION


SARAH CRUZ REAZA, INDIVIDUALLY AND )
AS SUCCESSOR-IN-INTEREST OF         )
DECEDENT FERNANDO CRUZ, FERNANDO    )
BAEZA, INDIVIDUALLY AND AS          )
SUCCESSOR-IN-INTEREST OF DECEDENT   )
FERNANDO CRUZ, FERNANDO CRUZ, JR., )
INDIVIDUALLY AND AS                 )
SUCCESSOR-IN-INTEREST OF DECEDENT   )
FERNANDO CRUZ, FRANK FIDEL CRUZ,    )
INDIVIDUALLY AND AS                 )
SUCCESSOR-IN-INTEREST OF DECEDENT   )
FERNANDO CRUZ, CELESTE MARIE CRUZ, )
INDIVIDUALLY AND AS                 )
SUCCESSOR-IN-INTEREST OF DECEDENT   )
FERNANDO CRUZ, RAELENE MARIE CRUZ, )
INDIVIDUALLY AND AS                 )
SUCCESSOR-IN-INTEREST OF DECEDENT   )
FERNANDO CRUZ, J.A., BY AND THROUGH)
HIS GUARDIAN, JOANNE ALBIDREZ,      )
I.C., BY AND THROUGH HIS GUARDIAN, )
JOANNE ALBIDREZ, L.M.C., BY AND     )
THROUGH HER GUARDIAN, JOANNE        )
ALBIDREZ,                           )
                                    )
          PLAINTIFFS,               )
                                    )
     VS.                            ) CASE NO. 5:20-CV-01188-FMO (SPX)
                                    )
COUNTY OF RIVERSIDE, RIVERSIDE      )
COUNTY SHERIFF'S DEPARTMENT AND     )
DOES 1 THROUGH 20, INCLUSIVE,       )
                                    )
          DEFENDANTS.               )
_____)


DEPOSITION OF SARAH REAZA CRUZ

TAKEN ON

FRIDAY, JUNE 18, 2021


MELINDA S. WOMELSDORF, C.S.R. NO. 13124

1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

3

4                                        )
     SARAH CRUZ REAZA, INDIVIDUALLY AND )
5    AS SUCCESSOR-IN-INTEREST OF          )
     DECEDENT FERNANDO CRUZ, FERNANDO    )
6    BAEZA, INDIVIDUALLY AND AS          )
     SUCCESSOR-IN-INTEREST OF DECEDENT   )
7    FERNANDO CRUZ, FERNANDO CRUZ, JR., )
     INDIVIDUALLY AND AS                 )
8    SUCCESSOR-IN-INTEREST OF DECEDENT   )
     FERNANDO CRUZ, FRANK FIDEL CRUZ,    )
9    INDIVIDUALLY AND AS                 )
     SUCCESSOR-IN-INTEREST OF DECEDENT   )
10   FERNANDO CRUZ, CELESTE MARIE CRUZ, )
     INDIVIDUALLY AND AS                 )
11   SUCCESSOR-IN-INTEREST OF DECEDENT   )
     FERNANDO CRUZ, RAELENE MARIE CRUZ, )
12   INDIVIDUALLY AND AS                 )
     SUCCESSOR-IN-INTEREST OF DECEDENT   )
13   FERNANDO CRUZ, J.A., BY AND THROUGH)
     HIS GUARDIAN, JOANNE ALBIDREZ,      )
14   I.C., BY AND THROUGH HIS GUARDIAN, )
     JOANNE ALBIDREZ, L.M.C., BY AND     )
15   THROUGH HER GUARDIAN, JOANNE        )
     ALBIDREZ,                           )
16                                        )
                    PLAINTIFFS,          )
17                                        )
          VS.                            ) CASE NO. 5:20-CV-01188
18                                        )          FMO (Spx)
     COUNTY OF RIVERSIDE, RIVERSIDE       )
19   COUNTY SHERIFF'S DEPARTMENT AND     )
     DOES 1 THROUGH 20, INCLUSIVE,       )
20                                        )
                    DEFENDANTS.          )
21   _____)

22

23

24

25
                                                              2

1          DEPOSITION OF SARAH REAZA CRUZ, taken on behalf of

2    the Defendants, at 4199 Flat Rock Road, Riverside, CA,

3    commencing at 9:56 A.M., Friday, June 18, 2021, before

4    Melinda S. Womelsdorf, Certified Shorthand Reporter, License

5    No. 13124, for the State of California, pursuant to Notice.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1   APPEARANCES:

2

3   For the Defendants, COUNTY OF RIVERSIDE:

4        MANNING & KASS, ELLROD, RAMIREZ, TRESTER, LLP
         BY:  TONY SAIN, ESQ.
5        801 S. Figueroa Street, 15th Floor
         Los Angeles, California 90017-3012
6        (213) 624-6900
         tms@manningllp.com
7
     For the Plaintiffs, SARAH CRUZ REAZA, FERNANDO BAEZA,
8    FERNANDO CRUZ JR., FRANK FIDEL CRUZ, CELESTE MARIE CRUZ,
     RAELENE MARIE CRUZ, J.A., I.C., AND LMC
9
         STEVEN A. LERMAN AND ASSOCIATES
10       BY:  NICHOLAS M. LERMAN
         6033 West. Century Boulevard, Suite 740
11       Los Angeles, California 90045
         (310) 659-8166
12       nmlerman0@yahoo.com

13

14   Also Present:

15   Armand Frigon - Videographer

16

17

18

19

20

21

22

23

24

25

                                                              4

10:06:23:00  1   incident or my table; correct?

2        A    No.

3        Q    So if I asked you to give an estimate of the

4   length of the table in my home, you would be completely

10:06:29:20  5   guessing; right?

6        A    Yes.

7        Q    Do you see the difference between an estimate

8   and a guess?

9        A    Yes.

10:06:36:19 10   Q    There's a difference between "I don't know"

11  and "I don't recall."

12           I don't mean -- "I don't know" means at no

13  point in time did you ever have that information in your

14  brain.  Like, for example, I don't know what the dust on

10:06:44:16 15  the moon tastes like because I've never been to the

16  moon, I've never eaten moon dust.

17           "I don't recall" means I think I used to know,

18  but right now I can't remember.

19           Do you understand that?

10:06:54:21 20   A    Yes.

21        Q    Okay.  Some people have a bad habit of

22  speaking in conclusionary terms.  They speak in the

23  conclusion, rather than in what they saw.  So I may say,

24  "How was that person driving?"  And they say, "He was

10:07:04:27 25  driving like a maniac."  Okay.  That's really more an

18

NORMAN SCHALL & ASSOCIATES
(800) 734-8838

10:09:49:13 1      A    Own.

2      Q    And how long have you lived there?

3      A    Like 13 years.

4      Q    So since approximately 2008 --

10:10:00:25 5      A    2007.

6      Q    That was one of those ones where you don't

7    want to interrupt, even though you know where I'm going.

8      A    Yeah.

9      Q    You got to wait until the question is done.

10:10:11:12 10          All right.  You have lived at 5479 34th

11    Street, Space 10, Riverside, California 92509 in a

12    mobile home since approximately 2007?

13      A    Yes.

14      Q    Okay.  Any plans to move in the next two

10:10:23:10 15    years?

16      A    No.

17      Q    Who lives at that address with you?

18      A    Myself and my grandson.

19      Q    Your grandson's name is?

10:10:38:24 20      A    Randy Acuna.

21      Q    In October 2019, did anyone else live with you

22    at that residence besides yourself and Randy Acuna?

23      A    Yes, they did.

24      Q    Who?

10:10:56:05 25      A    Sandy Acuna.  Adler Metcalf.

                                                        22

11:40:03:00  1       Q     You did not ask for an ambulance or for

2       medical help; is that correct?

3            A     No.

4            Q     Yes, that's correct?

11:40:08:19  5       A     Yes.

6            Q     Do you remember what you told the 911

7       dispatcher?

8            A     I needed help.

9            Q     What was it that prompted you to call 911 that

11:40:28:03 10      day?

11           A     Because my son -- my son was -- I think I

12      heard him banging hard on the wall, on the front room

13      wall where he was sitting -- where he was sitting.

14           Q     Why was that a concern to you?

11:40:45:03 15      A     Because I thought he was going to hurt

16      himself.

17           Q     By doing what?

18           A     By hitting himself by the -- by the wall.

19           Q     How did you think that he was going to hurt

11:40:59:19 20      himself by hitting the wall?

21           A     Because he was -- he was just banging and

22      banging and I told him to stop.

23           Q     What was he banging the wall with?

24           A     His head.

11:41:22:14 25      Q     You told him to stop hitting his head on the

80

11:53:41:12  1    house is that?

2         A    That's the entrance, too.  Like this -- this

3    is an entrance, too.

4         Q    Which entrance?

11:53:48:18  5    A    The one that the -- to the front.

6         Q    So the entrance we can see in 433 is the same

7    entrance we --

8         A    Yes.

9         Q    -- can see --

11:53:58:24 10    A    Sorry.

11        Q    That's okay, ma'am.  You're doing okay.

12   Remember, even when you know where my question is going

13   you have to let me finish.  So new question.  Strike

14   that.

11:54:07:01 15        The entrance we can see in Exhibit 4, 433 is

16   the same entrance that we can see in Exhibit 4, 1333,

17   432 and 431; is that correct?

18        A    Yes.  Yes.

19        Q    Okay.  And is this entrance we can see in the

11:54:25:26 20   photos I've just identified, is that the entrance where

21   the police entered your home on the date of the

22   incident?

23        A    No.

24        Q    Okay.  Police arrived, what happened next?

11:54:47:25 25        A    They called me outside so I went by the front

89

11:54:51:26 1    and then I told them to go through the -- through the

2    back, and then they went through the back, that's when

3    they -- they shouted his name, Fernando Cruz something,

4    and then they came in.  And he was -- they went in and I

11:55:11:04 5    guess when they -- they said Fernando Cruz, he got up, I

6    think he was sitting down.  He ran to the -- like, he

7    ran through the hallway and I think they Tasered him and

8    then he fell right there in the hallway.

9        Q    Let's back up.

11:55:25:29 10            When you told the deputies to go in the house,

11   how many deputies were there?

12       A    Two.

13       Q    What did they look like?

14       A    I don't know.  I don't remember.

11:55:40:26 15   Q    Male, female?

16       A    No, male.  Both of them.

17       Q    White, black, Latino, Asian?

18       A    White.

19       Q    How tall are you?

11:55:53:00 20   A    Me?

21       Q    Yes.

22       A    Five -- about five.

23       Q    Five feet?

24       A    Yes.

11:55:58:17 25   Q    No inches?

90

12:35:32:20  1   have any medical conditions that you were aware of?

2       A   Yes.

3       Q   What were those?

4       A   He was mental, he was taking mental pills.

12:35:44:13  5       Q   I'm sorry?

6       A   He was having to see the doctor.

7       Q   For what?

8       A   For the 5150.

9       Q   For what condition, ma'am?

12:36:10:17 10      A   I don't know.  He said he was hearing, like,

11   voices.

12       Q   Up to the date of the incident, before having

13   a mental condition that caused Fernando Cruz to hear

14   voices, were you aware of any other medical conditions

12:36:24:18 15   or problems that he was experiencing?

16       A   He had asthma.

17       Q   Okay.  And what -- do you know what kind of

18   asthma he had?

19       A   No.

12:36:39:05 20      Q   Do you know if he had any allergies?

21       A   Yes.

22       Q   Okay.  What was he allergic to?

23       A   Cats.

24       Q   Anything else?

12:36:47:24 25      A   That's all I remember, the cats.

122

12:37:04:14 1     Q   How old was Fernando Cruz when you first

2  became aware that he had asthma?

3     A   When he was eight.

4     Q   At the time of the incident, was he taking any

12:37:16:22 5  medication for his asthma?

6     A   Yes.

7     Q   Do you know what kind it was?

8     A   No.

9     Q   Do you know that on the day of the incident

12:37:27:13 10  he'd already taken his asthma medication?

11     A   No, I don't know.

12     Q   When is the last time up to the date of the

13  incident that you know that he took his asthma meds?

14     A   Like, the last time was -- probably --

12:37:44:29 15  October, probably around the 1st.

16     Q   October 1st, 2019?

17     A   Yes.

18     Q   Other than having a mental condition that

19  caused him to hear voices and having asthma from age

12:38:05:25 20  eight, were you aware of Fernando Cruz having any other

21  medical conditions or problems leading up to the date of

22  the incident?

23     A   No.

24     Q   When Fernando Cruz was taken out of the house,

12:38:25:04 25  by the paramedics, did you see him?

123

```
1   State of California   )
                          )   SS.
2   County of_____)

3

4           I, Sarah Reaza Cruz, say I have read the

5   foregoing deposition and declare under penalty of

6   perjury that my answers as indicated are true and

7   correct.

8

9

10  _____
         (DATE)

11

12

13

14                              _____
                                      (SIGNATURE)
15

16

17

18

19

20

21

22

23

24

25
                                                    140
```

```
 1  State of California     )
                            )  SS.
 2  County of San Bernardino)

 3

 4              I, MELINDA WOMELSDORF, Certified Shorthand

 5  Reporter, License No. 13124, for the State of

 6  California, do hereby certify:

 7              That, prior to being examined, the witness

 8  named in the foregoing deposition, to wit, Sarah Reaza

 9  Cruz, was by me duly sworn to testify the truth, the

10  whole truth and nothing but the truth;

11              That said deposition was taken down by me

12  in shorthand at the time and place therein named and

13  thereafter reduced to computer-aided transcription under

14  my direction;

15              That the foregoing transcript, as typed, is

16  a true record of the said proceedings.

17              I further certify that I am not interested

18  in the event of the action.

19              Witness my hand this 5th day of July, 2021.

20

21

22              MELINDA WOMELSDORF, CSR. NO. 13124

23

24

25

                                                        141
```

# EXHIBIT "B"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| SARAH CRUZ REAZA, INDIVIDUALLY AND ) | |
| AS SUCCESSOR-IN-INTEREST OF          ) | |
| DECEDENT FERNANDO CRUZ, FERNANDO   ) | |
| BAEZA, INDIVIDUALLY AND AS           ) | |
| SUCCESSOR-IN-INTEREST OF DECEDENT  ) | |
| FERNANDO CRUZ, FERNANDO CRUZ, JR., ) | |
| INDIVIDUALLY AND AS                   ) | |
| SUCCESSOR-IN-INTEREST OF DECEDENT  ) | |
| FERNANDO CRUZ, FRANK FIDEL CRUZ,    ) | |
| INDIVIDUALLY AND AS                   ) | |
| SUCCESSOR-IN-INTEREST OF DECEDENT  ) | |
| FERNANDO CRUZ, CELESTE MARIE CRUZ, ) | |
| INDIVIDUALLY AND AS                   ) | |
| SUCCESSOR-IN-INTEREST OF DECEDENT  ) | |
| FERNANDO CRUZ, RAELENE MARIE CRUZ, ) | |
| INDIVIDUALLY AND AS                   ) | |
| SUCCESSOR-IN-INTEREST OF DECEDENT  ) | |
| FERNANDO CRUZ, J.A., BY AND THROUGH) | |
| HIS GUARDIAN, JOANNE ALBIDREZ,      ) | |
| I.C., BY AND THROUGH HIS GUARDIAN, ) | |
| JOANNE ALBIDREZ, L.M.C., BY AND     ) | |
| THROUGH HER GUARDIAN, JOANNE        ) | |
| ALBIDREZ,                             ) | |

PLAINTIFFS,

VS.                         CASE NO. 5:20-CV-01188-FMO (SPX)

COUNTY OF RIVERSIDE, RIVERSIDE
COUNTY SHERIFF'S DEPARTMENT AND
DOES 1 THROUGH 20, INCLUSIVE,

DEFENDANTS.

DEPOSITION OF SANDY ACUNA

TAKEN ON

THURSDAY, FEBRUARY 17, 2022

MELINDA S. WOMELSDORF, C.S.R. NO. 13124

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| SARAH CRUZ REAZA, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, FERNANDO BAEZA, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, FERNANDO CRUZ, JR., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, FRANK FIDEL CRUZ, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, CELESTE MARIE CRUZ, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, RAELENE MARIE CRUZ, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, J.A., BY AND THROUGH HIS GUARDIAN, JOANNE ALBIDREZ, I.C., BY AND THROUGH HIS GUARDIAN, JOANNE ALBIDREZ, L.M.C., BY AND THROUGH HER GUARDIAN, JOANNE ALBIDREZ, | |
| PLAINTIFFS, | |
| VS. | CASE NO. 5:20-CV-01188 FMO (Spx) |
| COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT AND DOES 1 THROUGH 20, INCLUSIVE, | |
| DEFENDANTS. | |

2

1           DEPOSITION OF SANDY ACUNA, taken on behalf of the

2    Defendants, at Larry D. Correctional Facility 1627 Hargrave

3    Street, Banning, CA, commencing at 12:21 P.M., Thursday,

4    February 17, 2022, before Melinda S. Womelsdorf, Certified

5    Shorthand Reporter, License No. 13124, for the State of

6    California, pursuant to Notice.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1   APPEARANCES:

 2

 3   For the Defendants, COUNTY OF RIVERSIDE:

 4        LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
          BY:   TORI BAKKEN, ESQ.
 5        633 West 5th Street, Suite 4000
          Los Angeles, California 90071
 6        (213) 250-1800
          Tori.Bakken@lewisbrisbois.com
 7
     For the Plaintiffs, SARAH CRUZ REAZA, FERNANDO BAEZA,
 8   FERNANDO CRUZ JR., FRANK FIDEL CRUZ, CELESTE MARIE CRUZ,
     RAELENE MARIE CRUZ, J.A., I.C., AND LMC
 9
          STEVEN A. LERMAN AND ASSOCIATES
10        BY:   NICHOLAS M. LERMAN, ESQ.
               STEVEN A. LERMAN, ESQ.
11        6033 West. Century Boulevard, Suite 740
          Los Angeles, California 90045
12        (310) 659-8166
          nmlerman0@yahoo.com
13
     For the Witness, Sandy Acuna
14
          DEPUTY PUBLIC DEFENDER
15        BY:   LINDA MOORE, ESQ.
          4075 Main Street, Suite 100
16        Riverside, California 92501
          (951) 955-6000
17        LindaMoore@RIVCO.ORG

18

19   Also Present:

20   Adam Ellison - Videographer

21

22

23

24

25
                                                              4
```

12:30:51:17   1   living with there?

2        Q     Yes.

3        A     Okay.  Well, my dad, my grandma, my mom.  And

4   as years went by, then -- then it was my uncle, my dad

12:31:07:03   5   and my grandma and then my brothers.

6        Q     Okay.  And what were each of those

7   individuals' names that you lived with?

8        A     Everybody?

9        Q     Yes.  So your grandma?

12:31:17:00 10        A     Sarah Reaza, Andy Acuna, Fernando Cruz, Zandy

11   Acuna, Landon Metcalf, River Metcalf, Adler Acuna, Adler

12   Metcalf, and that's it.

13        Q     Okay.  And all of those individuals that you

14   just listed lived at that address in Rubidoux?

12:31:46:09 15        A     Yes.

16        Q     Okay.  And who owned the property that you

17   were living at?

18        A     My grandma.

19        Q     Okay.  Were you living at that residence at

12:31:53:03 20   the time of this incident on October 7th of 2019?

21        A     Yes.

22        Q     Do you have an email address?

23        A     No.

24        Q     Did you have a cell phone prior to being

12:32:04:08 25   incarcerated?

18

12:34:53:13 1    question.

2    BY MS. BAKKEN:

3        Q    Have you ever been convicted of a crime during

4    your lifetime?

12:35:01:22 5        MS. MOORE:  Same objection.

6        THE WITNESS:  No, I don't want to answer that

7    question.

8    BY MS. BAKKEN:

9        Q    Okay.  Have you ever been arrested for a crime

12:35:08:27 10   during your lifetime?

11       MS. MOORE:  Same objection.

12       THE WITNESS:  I don't want to answer that, either.

13       MS. BAKKEN:  Counsel, all I'm trying to get into

14   with that, not the substance of it, but as far as who

12:35:19:10 15   the arresting agency would be because that would be

16   relevant to this case.

17       MS. MOORE:  I would still maintain the same

18   objection.

19       MS. BAKKEN:  If I were to limit it to have you ever

12:35:31:02 20   been arrested by the County of Riverside Sheriff's

21   Department?

22       MS. MOORE:  Same objection.

23   BY MS. BAKKEN:

24       Q    What correctional facilities have you been

12:35:45:14 25   incarcerated at?

                                                      22

12:36:48:03  1       Q     Okay.  So you say you weren't hired.  What do

           2   you mean by that?  Were you formally employed?

           3       A     Well, yeah, I was hired but I wasn't -- it was

           4   like a temp -- I don't know how -- I worked there, but

12:37:00:23  5   it wasn't -- I don't know.  Like when you -- I don't

           6   know how to -- what it's called.

           7       Q     Was it more of like a temp placement type

           8   of -- like an agency put you there?

           9       A     Yeah.

12:37:17:29 10       Q     Okay.  Have you ever worked as a law

          11   enforcement officer?

          12       A     No.

          13       Q     Have you ever worked in security?

          14       A     No.

12:37:27:23 15       Q     Are you an expert in law enforcement practices

          16   or procedures?

          17       A     No.

          18       Q     Have you read the Complaint that was filed in

          19   this case?

12:37:38:13 20       A     Yes.

          21       Q     And are you aware of what the plaintiffs are

          22   claiming in that Complaint?

          23       A     Yes.

          24       Q     Okay.  When did you read that Complaint?

12:37:47:27 25       A     In 2019.

                                                                      24

```
12:53:22:06  1        A    Uh-huh.
             2        Q    What did she want to get him help for?
             3        A    Like take him to a rehab or something.
             4        Q    Okay.  Rehab for drug use?
12:53:29:18  5        A    I think so.
             6        Q    Okay.  All right.  Other than meth, do you
             7   know whether or not Fernando Cruz had used any other
             8   substances?
             9        A    No, he didn't.
12:53:39:01 10        Q    Okay.  Do you know whether or not
            11   Fernando Cruz had any psychological problems?
            12        A    Yes, he did.
            13        Q    What kind of problems?
            14        A    Schizophrenic.  Like, I don't know what it's
12:53:51:04 15   called but I know he wasn't all there.  He took meds and
            16   stuff.  And we told the officers that, also.  That he
            17   took meds and stuff.  My grandma told them that.
            18        Q    Okay.  When did you first become aware that
            19   Fernando Cruz had psychological problems?
12:54:16:26 20        A    I don't remember the day, I just know he took
            21   his meds.  I wasn't really in his business like that.
            22        Q    Okay.
            23        A    So --
            24        Q    I mean, was it -- had it been years prior to
12:54:25:10 25   this incident that you've known him to have potentially
```

38

13:12:29:07  1  that.

2         How did you first become aware that there was

3  an issue with Fernando Cruz on the date of this

4  incident?

13:12:38:18  5     A    By the way he was acting.

6     Q    Okay.  And how was he acting?

7     A    He was just yelling a lot and talking to

8  somebody that wasn't there.

9     Q    Okay.  And do you recall what he was yelling

13:12:49:09 10  or what he was saying to that person who was not there?

11     A    I can't remember exactly what he was saying

12  because it was long ago, but I just remember him

13  yelling.  And talking to somebody that wasn't there.

14     Q    Okay.  And how long did that go on for?

13:13:12:11 15     A    I can't remember how long -- how long he was

16  doing that for but we called the cops.

17     Q    Where was Fernando Cruz when he was yelling

18  and talking to someone who wasn't there?

19     A    Where was he?

13:13:24:26 20     Q    Uh-huh.

21     A    In his room, in the back room.  And then he

22  would, like, walk around and be yelling and talking to

23  somebody that wasn't there so my grandma called the

24  officers to get him help.  But it went bad.

13:13:40:24 25     Q    And do you recall whether or not he was

54

13:15:56:22 1    them.

2        Q     Okay.  And do you know what she told the

3    police?

4        A     I don't know what she told the police.

13:16:01:29 5    Q     Okay.  And then at some point you also called

6    911; correct?

7        A     Yes.  Because they wouldn't hurry up and my

8    grandma was getting nervous.

9        Q     How long was it that you called the police

13:16:12:12 10   after your grandma had called the police?

11       A     It wasn't that long after I don't think.  I'm

12   not sure how long after.

13       Q     Was it a couple seconds?  Was it an hour or

14   so?

13:16:26:06 15   A     No, not that long.  Not an hour or so, but

16   maybe a couple minutes later.

17       Q     All right.  And then how long after you called

18   the police until the police arrived?

19       A     I don't know how long -- I don't remember how

13:16:44:08 20   long it took them to arrive.

21       Q     And other than just seeing if they were on

22   their way or trying to get them to hurry up, do you

23   recall anything else that you said to 911 when you

24   called?

13:16:58:16 25   A     I don't remember what I told them.  I don't

57

13:39:13:06   1        A     Using one hand.

              2        Q     Okay.  You just don't recall if it was the

              3   officer's right hand or left hand; correct?

              4        A     Yeah, I don't know which hand.

13:39:20:02   5        Q     And how many times did you see that officer

              6   punch Fernando?

              7        A     A lot of times, but I don't remember exactly

              8   how many punches.  But it was a lot of times and it was

              9   hard punches.  And my uncle was saying, "They're killing

13:39:33:09  10   me, Mom.  They're going to kill me.  They're killing

             11   me."  And then it just went silent so they killed him.

             12   And then they were trying to bring him back to life.

             13   And then they were still trying to bring him back to

             14   life, and they put him in the ambulance and they took

13:39:48:18  15   him to the hospital.

             16        Q     Okay.  But just going back to that officer and

             17   the punches, you said it was a lot of punches.  But what

             18   does a lot mean to you?  Is a lot five or six?

             19        A     Yeah, like five or six.

13:39:59:21  20        Q     Okay.  And those five or six punches that he

             21   was delivering to Fernando, were they in quick

             22   succession or was there long pauses in between them?

             23        A     Quick.

             24        Q     And where were you located when you saw these

13:40:13:19  25   punches being delivered?

                                                                      78

13:45:01:00  1      A    I can't remember.

          2      Q    Okay.  Do you remember anything being said by

          3  any of the officers to Fernando at any point during this

          4  incident?

13:45:14:00  5      A    No, I just heard him yelling and saying that

          6  they were killing -- going to kill him and stuff.

          7  That's all I remember is him yelling and crying, telling

          8  my grandma that they were going to kill him.

          9      Q    And how long would you say that that

13:45:27:14 10 interaction lasted from when those first two officers

         11  came in the house and made contact with Fernando until

         12  the very end of the incident?

         13      A    Like, 15 minutes.

         14      Q    And were you looking in the window -- other

13:45:52:00 15 than where you said that the one to two minutes it took

         16  you to get outside, were you looking in the window for

         17  the full 15 minutes minus that little section?

         18      A    We were taking turns looking in the window so

         19  not the full 15 minutes, but I seen a lot of it.

13:46:13:08 20      Q    Okay.  And when you say we were talking turns,

         21  who was all taking turns looking through the window?

         22      A    Me and my little brother and I believe

         23  Adler Metcalf, too.

         24      Q    Okay.  So was only one of you looking in the

13:46:26:06 25 window at a time?

                                                              83

13:46:27:18  1     A     Yeah.  And then there was a point where we

2     both stand -- stood on the tire, me and my brother, and

3     we were both looking.

4     Q     So how many times would you say you got up on

13:46:38:14  5     the tire and looked in the window?

6     A     Throughout the whole time they were doing

7     that.

8     Q     Okay.  So if this whole incident took 15

9     minutes as you stated, how many times within that 15

13:46:51:06 10     minutes was it your turn to look in the window?

11     A     Every time I heard him yell.  I was just

12     seeing what they were doing to him.  And at one point I

13     was standing there for a good amount of time trying to

14     record.  But I didn't really want to record because the

13:47:09:13 15     officer, he kept looking at us and I think he was

16     getting mad that we're in the window and I was recording

17     what they were doing to him.  But I couldn't really get

18     a good video of what they were doing to him because I

19     was trying to, like, hide from looking inside the window

13:47:24:22 20     to see what they were doing because I didn't want them

21     to get mad.

22     Q     Okay.

23     A     Because they were already getting mad when I

24     didn't want to get out of the house because I didn't

13:47:34:08 25     want them to hurt him so I didn't want to get out of the

84

14:17:15:15 1   their body to do so?

2        A     Their hands.  And I don't know if they were

3   using their knees, the two officers.  I just remember

4   them telling him to put his hands behind his back.

14:17:38:05 5        Q     And then at some point Fernando ends up in the

6   living room; that's correct?

7        A     Uh-huh.

8        Q     Are you aware of how he ended up in the living

9   room?

14:17:47:24 10       A     I don't remember how he ended up in the living

11  room.

12       Q     Do you recall in your interview shortly after

13  the incident that you told the detective that you

14  believe that Fernando was dragged by the officers to the

14:17:57:29 15  living room?

16       A     I think he was.

17       Q     And -- and where Fernando ended up in the

18  living room was, I believe you pointed out in the

19  exhibit, was just right in front of that -- what was it?

14:18:21:20 20  Wardrobe, wooden wardrobe?

21       A     That's where he was.

22       Q     And when Fernando was dragged to that

23  position, was he still on his stomach or had he switched

24  positions at that point?

14:18:50:14 25       A     I don't remember if he was on his stomach or

                                                              109

14:20:25:01 1  of their body on Fernando Cruz's body?

2       A    Yeah.

3       MS. BAKKEN:  Objection.  Misstates testimony.

4  BY MR. NICHOLAS LERMAN:

14:20:30:27 5       Q    I believe you testified that all the officers

6  had their knees on Fernando; is that not right?

7       A    Yeah, I think they had their knees on him.  It

8  was a long time -- it was kind of long ago so I don't

9  remember exactly what happened, but I'm pretty sure

14:20:51:21 10  their knees were on him.

11       Q    Did you ever see if any officer put their knee

12  on Fernando's chest?

13       A    I think the black officer did.

14       Q    And during the entire 15-minute incident with

14:21:16:25 15  the officers, would you say that these officers had

16  their body weight on Fernando during that entire time?

17       A    Yeah, they did.

18       Q    And during that 15-minute period, Fernando was

19  yelling out that these officers were going to kill him?

14:21:39:05 20       A    Yes.

21       Q    And you testified that the officer you

22  identified as the black officer punched Fernando, I

23  believe you said five to six times?

24       A    Yeah, in his head.

14:22:04:22 25       Q    Do you believe that the five to six punches

                                                            111

14:22:06:24  1   were to the head?

2        A    Yes.

3        Q    And could you visualize or -- you had no -- no

4   issue seeing that this officer was punching Fernando in

14:22:20:02  5   the head?

6        A    No issues.  I seen him hit him in the head.

7        Q    And after this officer punched Fernando in the

8   head, did you see that Fernando was affected by the

9   punches in any way?

14:22:30:27 10   A    Yes, he was.  He was saying they're going to

11   kill him and he was affected.

12        Q    At any point in time did you see Fernando spit

13   out any type of liquid or blood or any type of bile or

14   anything of that nature?

14:22:47:02 15   A    I couldn't see what he was -- I couldn't see

16   that because I seen the -- the officer was in front of

17   his head hitting his head so I couldn't really see his

18   head that much.  I just seen him -- the officer hitting

19   his head, like he was kind of in front of his body right

14:23:04:07 20   there so it was kind of hard to see his mouth.

21        Q    Other than Fernando Cruz flopping around on

22   the floor, did you see him do anything that posed a

23   threat to these officers?

24        A    No, he was just trying to run away from them.

14:23:20:13 25   Q    At any point did you ever see Fernando cock a

112

```
1   State of California   )
                          )  SS.
2   County of_____ )

3

4            I, Sandy Acuna, say I have read the

5   foregoing deposition and declare under penalty of

6   perjury that my answers as indicated are true and

7   correct.

8

9

10  _____
             (DATE)
11

12

13

14                            _____
                                       (SIGNATURE)
15

16

17

18

19

20

21

22

23

24

25
                                                        129
```

```
 1   State of California      )
                              )  SS.
 2   County of San Bernardino)

 3

 4              I, MELINDA WOMELSDORF, Certified Shorthand

 5   Reporter, License No. 13124, for the State of

 6   California, do hereby certify:

 7              That, prior to being examined, the witness

 8   named in the foregoing deposition, to wit, Sandy Acuna,

 9   was by me duly sworn to testify the truth, the whole

10   truth and nothing but the truth;

11              That said deposition was taken down by me

12   in shorthand at the time and place therein named and

13   thereafter reduced to computer-aided transcription under

14   my direction;

15              That the foregoing transcript, as typed, is

16   a true record of the said proceedings.

17              I further certify that I am not interested

18   in the event of the action.

19              Witness my hand this 2nd day of March,

20   2022.

21

22

23              MELINDA WOMELSDORF, CSR. NO. 13124

24

25

                                                    130
```

EXHIBIT "C"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

SARAH CRUZ REAZA, individually )
and as Successor-in-Interest of )
Decedent Fernando Cruz, et al., )
                                 )
              Plaintiffs,        )
                                 )
         vs.                     ) No. 5:20-CV-01188
                                 )    FMO (SPx)
COUNTY OF RIVERSIDE, RIVERSIDE   )
COUNTY SHERIFF'S DEPARTMENT and  )
DOES 1 through 20, Inclusive,    )
                                 )
              Defendants.        )
_____)

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

DEPUTY ROBERT ROACH

Thursday, March 10, 2022

REPORTED BY:  Lyn Corrin Aaker, CSR No. 6228

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

1

2                    UNITED STATES DISTRICT COURT

3          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

4

5

6

7

8   SARAH CRUZ REAZA, individually  )
    and as Successor-in-Interest of )
9   Decedent Fernando Cruz, et al., )
                                     )
10                     Plaintiffs,   )
                                     )
11          vs.                      ) No. 5:20-CV-01188
                                     )        FMO (SPx)
12  COUNTY OF RIVERSIDE, RIVERSIDE   )
    COUNTY SHERIFF'S DEPARTMENT and  )
13  DOES 1 through 20, Inclusive,    )
                                     )
14                     Defendants.   )
    _____)

15

16

17          Videotaped videoconference deposition of

18          DEPUTY ROBERT ROACH, a Witness, taken on

19          behalf of the Plaintiffs, commencing at the

20          hour of 8:31 a.m., Thursday, March 10, 2022,

21          before Lyn Corrin Aaker, CSR No. 6228,

22          pursuant to Notice of Taking Deposition.

23

24

25

Deputy Robert Roach                                                           1203172
Sarah Cruz Reaza vs. County of Riverside

```
1    APPEARANCES OF COUNSEL:

2

3    For Plaintiffs:

4                    STEVEN A. LERMAN & ASSOCIATES, INC.
                     BY:  NICHOLAS M. LERMAN
5                         Attorney at Law
                     (Via Videoconference)
6                    6033 West Century Boulevard
                     Suite 740
7                    Los Angeles, California 90045
                     (310) 659-8166
8                    nlerman@lermanslaw.com

9                    LAW OFFICE OF GREGORY PEACOCK
                     BY:  GREGORY PEACOCK
10                        Attorney at Law
                     (Via Videoconference)
11                   4425 Jamboree Road
                     Suite 130
12                   Newport Beach, California 92660
                     (949) 292-7478
13                   gregorypeacockesq@gmail.com

14   For Defendants:

15                   LEWIS BRISBOIS BISGAARD & SMITH, LLP
                     BY:  ANTHONY SAIN
16                        Attorney at Law
                     (Via Videoconference)
17                   633 West 5th Street
                     Suite 4000
18                   Los Angeles, California 90071
                     (213) 680-5172
19                   tony.sain@lewisbrisbois.com

20   Videographer (Via Videoconference):

21                   GARRETT ESTORGA

22   Also Present (Via Videoconference):

23                   DEPUTY JEFFREY GILLISON

24

25
```

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 41 of 203   Page ID #:2291

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

```
 1                    I N D E X

 2

 3   WITNESS                EXAMINATION              PAGE

 4   DEPUTY ROBERT ROACH    By Mr. Peacock             6

 5                          By Mr. Sain              129

 6                          By Mr. Peacock           158

 7

 8

 9

10               EXHIBITS FOR IDENTIFICATION

11                       (None)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Kusar   Keeping Your Word Is Our Business ℠

4

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

|          |    |                                                          |
|----------|----|----------------------------------------------------------|
|          | 1  | BY MR. PEACOCK:                                           |
| 08:40:59 | 2  | Q.    And this is going to be one of those               |
| 08:41:00 | 3  | instances where I need your best estimate.  What's       |
| 08:41:04 | 4  | your best estimate as to how many times you've           |
| 08:41:07 | 5  | testified in court?  And that can be anything from a     |
| 08:41:08 | 6  | traffic trial to a motion hearing to a jury trial,       |
| 08:41:11 | 7  | anything where you were placed under oath in a           |
| 08:41:14 | 8  | court.                                                   |
| 08:41:15 | 9  | A.    Approximately 60 times.                            |
| 08:41:23 | 10 | Q.    And what's your best estimate as to how            |
| 08:41:25 | 11 | many of those 60 times was a jury trial?                 |
| 08:41:30 | 12 | A.    Once.                                              |
| 08:41:38 | 13 | Q.    Have you ever received any training as it          |
| 08:41:41 | 14 | relates to the topic of positional asphyxiation?        |
| 08:41:47 | 15 | MR. SAIN:  Discovery phase relevance.                    |
| 08:41:48 | 16 | THE WITNESS:  No.                                        |
| 08:41:49 | 17 | BY MR. PEACOCK:                                           |
| 08:41:51 | 18 | Q.    Have you ever received any training on the         |
| 08:41:54 | 19 | use of prone restraints?                                 |
| 08:41:58 | 20 | A.    Yes.                                                |
| 08:41:59 | 21 | Q.    Can you tell me what you were trained in           |
| 08:42:00 | 22 | that regard?                                             |
| 08:42:03 | 23 | A.    Yes.  That it is the most efficient and            |
| 08:42:09 | 24 | effective and safest position to restrain a subject,     |
| 08:42:14 | 25 | and it's most efficient and effective and safest for     |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
08:42:18   1    the individual being restrained for the public and
08:42:20   2    for the subject being restrained.
08:42:22   3         Q.   Is the training you received from the
08:42:24   4    Riverside County Sheriff's Department?
08:42:27   5         A.   Yes.
08:42:30   6              (Attorney Nicholas Lerman joined the
           7         proceedings via videoconference.)
08:42:32   8    BY MR. PEACOCK:
08:42:32   9         Q.   Have you ever been trained that pressing
08:42:35   10   down on someone's back in a prone position can cause
08:42:41   11   suffocation?
08:42:41   12        MR. SAIN:   Assumes facts not in evidence.
08:42:44   13        THE WITNESS:   No.
08:42:44   14   BY MR. PEACOCK:
08:42:47   15        Q.   Have you ever been trained to get a prone
08:42:49   16   subject off of their stomach as soon as they are
08:42:52   17   handcuffed to prevent suffocation?
08:42:55   18        MR. SAIN:   Assumes facts not in evidence.
08:42:57   19        THE WITNESS:   No.
08:42:58   20   BY MR. PEACOCK:
08:43:03   21        Q.   Have you ever been trained that a subject
08:43:08   22   who is in a prone position and is also struggling
08:43:12   23   with peace officers that the struggling may be due
08:43:15   24   to oxygen deficiency rather than a desire to disobey
08:43:20   25   the officer's commands?
```

**Kusar** *Keeping Your Word Is Our Business* ℠

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | | |
|---|---|---|
| 08:43:22 | 1 | MR. SAIN:  Assumes facts not in evidence. |
| 08:43:24 | 2 | THE WITNESS:  No. |
| 08:43:25 | 3 | BY MR. PEACOCK: |
| 08:43:28 | 4 | Q.   Have you been trained that officers are |
| 08:43:30 | 5 | responsible for the health, safety, and welfare of |
| 08:43:32 | 6 | people in their custody? |
| 08:43:33 | 7 | A.   Yes. |
| 08:43:39 | 8 | Q.   Have you been trained that keeping |
| 08:43:42 | 9 | handcuffed individuals in a prone position after |
| 08:43:46 | 10 | handcuffing can negatively affect the subject's |
| 08:43:49 | 11 | breathing? |
| 08:43:50 | 12 | MR. SAIN:  Assumes facts not in evidence. |
| 08:43:52 | 13 | THE WITNESS:  No. |
| 08:43:53 | 14 | BY MR. PEACOCK: |
| 08:43:56 | 15 | Q.   Have you ever been trained that |
| 08:43:59 | 16 | asphyxiation can be magnified when officers apply |
| 08:44:03 | 17 | weight or pressure to a handcuffed individual in a |
| 08:44:07 | 18 | prone position? |
| 08:44:09 | 19 | MR. SAIN:  Assumes facts not in evidence. |
| 08:44:11 | 20 | THE WITNESS:  No. |
| 08:44:11 | 21 | BY MR. PEACOCK: |
| 08:44:21 | 22 | Q.   Have you been trained that oxygen deficit |
| 08:44:28 | 23 | that can result in positional asphyxiation does not |
| 08:44:31 | 24 | preclude speech? |
| 08:44:34 | 25 | MR. SAIN:  Assumes facts not in evidence. |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
08:44:36   1          THE WITNESS:  No.

08:44:36   2    BY MR. PEACOCK:

08:44:38   3          Q.   Have you been trained that handcuffed

08:44:41   4    individuals are at a heightened risk of positional

08:44:44   5    asphyxiation even when they are not hog tied?

08:44:48   6          MR. SAIN:  Assumes facts not in evidence.

08:44:51   7          THE WITNESS:  No.

08:44:53   8    BY MR. PEACOCK:

08:44:57   9          Q.   Have you been trained that an officer

08:44:59  10    should roll a prone subject onto his or her side or

08:45:04  11    into a sitting position as soon as possible to

08:45:07  12    reduce the risk of positional asphyxiation?

08:45:10  13          MR. SAIN:  Assumes facts not in evidence.

08:45:13  14          THE WITNESS:  No.

          15    BY MR. PEACOCK:

08:45:16  16          Q.   Prior to October 7, 2019, had you become

08:45:20  17    aware of individuals who had died while in the prone

08:45:24  18    position involving Riverside County Sheriff's

08:45:27  19    Department personnel?

08:45:29  20          A.   No.

08:45:31  21          Q.   Prior to October 7, 2019, had you become

08:45:34  22    aware of individuals who had died while in the prone

08:45:38  23    position involving any other law enforcement agency?

08:45:42  24          A.   No.

08:45:45  25          Q.   Have you been trained that punching a
```

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

| | |
|---|---|
| 08:45:47 | 1 |
| 08:45:52 | 2 |
| 08:45:54 | 3 |
| 08:45:54 | 4 |
| 08:45:56 | 5 |
| 08:45:58 | 6 |
| 08:46:03 | 7 |
| 08:46:05 | 8 |
| 08:46:06 | 9 |
| 08:46:13 | 10 |

1   person in the head is considered deadly force?

2       MR. SAIN:  Assumes facts not in evidence.

3       THE WITNESS:  No.

4   BY MR. PEACOCK:

5       Q.   Have you been trained that punching someone

6   in the head can be considered use of force?

7       A.   Yes.

8       Q.   And what were you trained in that regard?

9       A.   That a closed fist punch to the head is a

10   nondeadly use of force.

11       Q.   Have you ever been trained that there are

12   circumstances in which a punch to the head is

13   considered deadly force?

14       MR. SAIN:  Assumes facts not in evidence, asked

15   and answered.

16       THE WITNESS:  No.

17   BY MR. PEACOCK:

18       Q.   Is it your understanding the use of a

19   hobble is considered a use of force?

20       A.   Yes.

21       Q.   Is it your understanding that use of a

22   hobble can cause an individual to experience pain?

23       MR. SAIN:  Discovery phase relevance.

24       THE WITNESS:  No.

25

**Kusar**  *Keeping Your Word Is Our Business ℠*

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

| | | |
|---|---|---|
| 08:50:15 | 1 | A.   Yes. |
| 08:50:16 | 2 | Q.   And how many contacts did you have with |
| 08:50:19 | 3 | Mr. Cruz prior to October 7, 2019? |
| 08:50:24 | 4 | A.   I had two contacts and a third where I |
| 08:50:30 | 5 | never made contact with Mr. Cruz and was just called |
| 08:50:32 | 6 | to the mobile home area for Fernando Cruz but never |
| 08:50:37 | 7 | made contact with him in that third instance. |
| 08:50:40 | 8 | Q.   Do you recall when the first contact you |
| 08:50:42 | 9 | had with Mr. Cruz was? |
| 08:50:43 | 10 | A.   Yes. |
| 08:50:45 | 11 | Q.   When was that? |
| 08:50:46 | 12 | A.   Approximately February of 2019. |
| 08:50:59 | 13 | Q.   And where did this contact take place? |
| 08:51:03 | 14 | A.   Outside of the mobile home at 3479 Space |
| 08:51:08 | 15 | No. 10, 34th Street in Jurupa Valley. |
| 08:51:17 | 16 | Q.   The same location you responded to on the |
| 08:51:19 | 17 | date of our incident? |
| 08:51:21 | 18 | A.   Yes, on October 7, 2019. |
| 08:51:27 | 19 | Q.   Why was it that you went to the Cruz |
| 08:51:29 | 20 | residence on this date or in February of 2019? |
| 08:51:37 | 21 | A.   Deputy Valenciano was primary on a call at |
| 08:51:44 | 22 | that location and had requested back-up.  I |
| 08:51:46 | 23 | responded as back-up. |
| 08:51:51 | 24 | Q.   Do you recall what Deputy Valenciano was |
| 08:51:54 | 25 | there to investigate? |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside
1203172

| | | |
|---|---|---|
| 08:51:57 | 1 | A.   I don't recall. |
| 08:52:03 | 2 | Q.   So once you arrived on the scene, what did |
| 08:52:06 | 3 | you do? |
| 08:52:08 | 4 | MR. SAIN:  Objection; vague. |
| 08:52:11 | 5 | THE WITNESS:  When I arrived to the front of the |
| 08:52:13 | 6 | address in February 2019 with Deputy Valenciano, she |
| 08:52:19 | 7 | advised me she was placing Deputy Cruz on a 5150 |
| 08:52:25 | 8 | Welfare and Institutions Code and that he was going |
| 08:52:26 | 9 | to be transported to the emergency treatment |
| 08:52:29 | 10 | services for mental evaluation and that he had been |
| 08:52:35 | 11 | uncooperative in being secured. |
| 08:52:39 | 12 | MR. SAIN:  Sorry.  Did you say Deputy Cruz? |
| 08:52:42 | 13 | THE WITNESS:  If I did, it was accidental.  I |
| 08:52:44 | 14 | meant Mr. Cruz. |
| 08:52:47 | 15 | MR. SAIN:  Thank you. |
| 08:52:48 | 16 | BY MR. PEACOCK: |
| 08:52:49 | 17 | Q.   When you arrived on scene for this first |
| 08:52:51 | 18 | contact with Mr. Cruz in February of 2019, did you |
| 08:52:56 | 19 | observe any other law enforcement personnel at the |
| 08:52:59 | 20 | scene when you arrived other than Deputy Valenciano? |
| 08:53:04 | 21 | A.   No. |
| 08:53:07 | 22 | Q.   Was there anyone that arrived at the scene |
| 08:53:09 | 23 | in your vehicle with you when you arrived at the |
| 08:53:11 | 24 | scene? |
| 08:53:12 | 25 | A.   No. |

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 49 of 203   Page ID
#:2299
Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside
1203172

09:03:59  1       And after he was in my car and on the way down,

09:04:04  2  he continued those same symptoms.  And I do recall

09:04:10  3  him also having bruxism, grinding his teeth, in the

09:04:14  4  back of my unit while he spoke.

09:04:21  5  BY MR. PEACOCK:

09:04:21  6     Q.   Have you ever been a drug recognition

09:04:25  7  expert?

09:04:27  8     A.   No.

09:04:29  9     Q.   Have you ever been a field training

09:04:30  10  officer?

09:04:31  11     A.   No.

09:04:34  12     Q.   Have you ever worked for any other law

09:04:36  13  enforcement agencies?

09:04:39  14     A.   No.

09:04:42  15     Q.   When was the second contact you had with

09:04:43  16  Mr. Cruz?

09:04:47  17     A.   The second contact would have been

09:04:50  18  approximately in April of 2019.

09:04:59  19     Q.   Do you recall where this contact took

09:05:04  20  place?

09:05:04  21     A.   During this incident I was also responding

09:05:09  22  as back-up to Deputy Gonzalez's initial call for

09:05:12  23  service at the mobile home park, and I don't recall

09:05:17  24  what the call for service was.

09:05:20  25     Q.   Was it at the -- was this contact at the

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 50 of 203   Page ID #:2300

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | | |
|---|---|---|
| 09:05:24 | 1 | Cruz residence? |
| 09:05:25 | 2 | A.   I recall it being within the mobile home |
| 09:05:31 | 3 | park, somewhere near the front of the mobile home |
| 09:05:34 | 4 | park but not at Space No. 10 itself. |
| 09:05:47 | 5 | Q.   Did Deputy Gonzales say he needed |
| 09:05:52 | 6 | assistance from other officers?  Is that what the |
| 09:05:55 | 7 | call was for? |
| 09:05:58 | 8 | A.   I don't recall. |
| 09:06:00 | 9 | Q.   Do you recall why you responded to that |
| 09:06:02 | 10 | call? |
| 09:06:02 | 11 | A.   I don't recall. |
| 09:06:07 | 12 | Q.   When you arrived at the scene of this |
| 09:06:08 | 13 | incident in April 2019, were there any other law |
| 09:06:14 | 14 | enforcement personnel there when you arrived other |
| 09:06:17 | 15 | than Deputy Gonzalez? |
| 09:06:22 | 16 | A.   Yes.  I don't recall who. |
| 09:06:27 | 17 | Q.   Do you recall if Deputy Lucifora ever |
| 09:06:30 | 18 | responded to this incident? |
| 09:06:34 | 19 | A.   I don't recall. |
| 09:06:37 | 20 | Q.   So once you arrived at the scene of this |
| 09:06:39 | 21 | incident, what did you do? |
| 09:06:40 | 22 | A.   Immediately upon arriving to the front of |
| 09:06:46 | 23 | the mobile home park during this incident, Deputy |
| 09:06:50 | 24 | Gonzalez had told me I believe over the radio that |
| 09:06:56 | 25 | he had seen Deputy Cruz -- excuse me -- Mr. Cruz in |

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 51 of 203   Page ID
#:2301
J203172
Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

| | | |
|---|---|---|
| 09:10:22 | 1 | that we've discussed so far with Mr. Cruz, the |
| 09:10:24 | 2 | February 2019 incident and the April 2019 incident, |
| 09:10:30 | 3 | that increased your concern for officer safety while |
| 09:10:33 | 4 | you were at the October 7, 2019 incident.  Is that |
| 09:10:41 | 5 | correct? |
| 09:10:41 | 6 | A.   Individually, no, but collectively with the |
| 09:10:45 | 7 | third incident, yes. |
| 09:10:50 | 8 | Q.   Okay.  When was the third incident? |
| 09:10:56 | 9 | A.   The third incident occurred approximately |
| 09:11:05 | 10 | June or July of 2019. |
| 09:11:16 | 11 | Q.   And where did that contact take place? |
| 09:11:20 | 12 | A.   3479, Space No. 10, 34th Street, |
| 09:11:25 | 13 | Jurupa Valley, California. |
| 09:11:28 | 14 | Q.   The same general location as the other two |
| 09:11:30 | 15 | contacts? |
| 09:11:33 | 16 | A.   Yes. |
| 09:11:36 | 17 | Q.   And do you recall what the call for service |
| 09:11:38 | 18 | was for? |
| 09:11:40 | 19 | A.   Yes. |
| 09:11:40 | 20 | Q.   And what was that? |
| 09:11:41 | 21 | A.   It was a 5150 Welfare and Institutions |
| 09:11:47 | 22 | Code. |
| 09:11:50 | 23 | Q.   Do you recall who placed the -- or do you |
| 09:11:53 | 24 | recall who the reporting party was? |
| 09:11:56 | 25 | A.   Yes. |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 52 of 203   Page ID
#:2302

1203172

| | |
|---|---|
| 09:48:48 | 1 |
| 09:48:57 | 2 |
| 09:49:00 | 3 |
| 09:49:06 | 4 |
| 09:49:08 | 5 |
| 09:49:17 | 6 |
| 09:49:19 | 7 |
| 09:49:20 | 8 |
| 09:49:28 | 9 |
| 09:49:32 | 10 |
| 09:49:45 | 11 |
| 09:49:45 | 12 |
| 09:49:47 | 13 |
| 09:49:51 | 14 |
| 09:49:56 | 15 |
| 09:50:00 | 16 |
| 09:50:03 | 17 |
| 09:50:12 | 18 |
| 09:50:12 | 19 |
| 09:50:14 | 20 |
| 09:50:17 | 21 |
| 09:50:19 | 22 |
| 09:50:22 | 23 |
| 09:50:23 | 24 |
| 09:50:34 | 25 |

1   worked the Wednesday before for a 12-hour shift.

2       Q.   Do you recall if you made any arrests prior

3   to your contact with Mr. Cruz on October 7th or 6th,

4   2019?

5       A.   I don't recall.

6       Q.   And what was it that caused you to go to

7   the location of our incident?

8       A.   On October 7, 2019, I was dispatched, a

9   call from dispatch, from dispatch at 0359 hours for

10  a 415 family disturbance of the peace.

11          (Reporter clarification.)

12      Q.   Do you recall where you were when you heard

13  that over dispatch?

14      A.   I was inside of my patrol unit within the

15  Rubidoux area of Jurupa Valley.

16      MR. SAIN:  You might want to spell that.

17      THE WITNESS:  Rubidoux is R-u-b-i-d-o-u-x.

18  BY MR. PEACOCK:

19      Q.   Was there anyone else inside of your

20  vehicle at that time?

21      A.   No.

22      Q.   And do you recall, generally speaking, what

23  the call for service was regarding?

24      A.   Yes.  Dispatch had notified that the

25  reporting party, Sarah Reaza, was calling about her

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

09:50:37  1    son, Fernando Cruz, who she believed was under the

09:50:42  2    influence of either alcohol or drugs and was

09:50:47  3    punching walls.  And a second RP, or reporting

09:50:50  4    party, had called in stating that her uncle was

09:50:55  5    acting crazy.  It was to the location 3479 Space No.

09:51:04  6    10, 34th Street, Jurupa Valley.

09:51:07  7        Q.   Did you choose to respond to this call, or

09:51:09  8    were you told to respond to this call?

09:51:13  9        A.   No.  I was dispatched.  I was the only one

09:51:16  10   on duty in the 10 East at that time, so the call

09:51:20  11   just came to me.  I did not choose it.

09:51:27  12       Q.   Did you then go directly to the Cruz

09:51:30  13   residence?

09:51:33  14       MR. SAIN:  Vague.

09:51:35  15       THE WITNESS:  After receiving the call from

09:51:36  16   dispatch, I drove directly to the front of the

09:51:39  17   mobile home park.

09:51:42  18   BY MR. PEACOCK:

09:51:43  19       Q.   While you were driving to the front area of

09:51:48  20   the mobile home park, did you have any

09:51:51  21   communications with anyone?

09:51:55  22       A.   No.

09:51:59  23       Q.   Prior to arriving at the front of the

09:52:03  24   mobile home park, did you request that other

09:52:08  25   deputies respond to the call as well?

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | | |
|---|---|---|
| 09:52:13 | 1 | A.   No. |
| 09:52:16 | 2 | Q.   Once you arrived at the front of the mobile |
| 09:52:19 | 3 | home park, what did you do? |
| 09:52:20 | 4 | A.   I parked my vehicle at the front entrance, |
| 09:52:26 | 5 | and by that time Deputy Lucifora had put himself as |
| 09:52:31 | 6 | back-up on the call, and so I had called |
| 09:52:34 | 7 | Deputy Lucifora on my cell phone. |
| 09:52:42 | 8 | Q.   And why did you call Deputy Lucifora on |
| 09:52:44 | 9 | your cell phone? |
| 09:52:47 | 10 | A.   Once I parked the vehicle there, I called |
| 09:52:51 | 11 | Deputy Lucifora.  I called to tell him of my |
| 09:52:54 | 12 | previous experiences with Fernando Cruz. |
| 09:52:58 | 13 | Q.   What did you tell him? |
| 09:53:00 | 14 | A.   Once I parked the vehicle there and called |
| 09:53:04 | 15 | him, I told him briefly about my incident with him, |
| 09:53:09 | 16 | the past three incidents that I previously told you |
| 09:53:11 | 17 | about, the incident in February, April, and June or |
| 09:53:14 | 18 | July of 2019. |
| 09:53:17 | 19 | Q.   Did Deputy Lucifora tell you about any |
| 09:53:20 | 20 | incidents or any contacts he had with Mr. Cruz |
| 09:53:25 | 21 | during this cell phone conversation? |
| 09:53:26 | 22 | A.   During the cell phone conversation in the |
| 09:53:30 | 23 | front of the mobile home park, he did tell me about |
| 09:53:34 | 24 | a use of force that was the same use of force that |
| 09:53:38 | 25 | Deputy Nagle had told me about. |

Kusar   *Keeping Your Word Is Our Business ℠*

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

09:57:20   1    you have a baton with you?

09:57:21   2        A.   Yes.

09:57:26   3        Q.   Did you have a gun with you during the

09:57:29   4    October 7, 2019 incident?

09:57:31   5        A.   Yes.

09:57:37   6        Q.   So once Deputy Lucifora arrived on scene,

09:57:40   7    what did you do next?

09:57:41   8        A.   Once Deputy Lucifora arrived, I immediately

09:57:46   9    drove into the entrance of the mobile home park.  I

09:57:49   10   drove directly to Space No. 10 with Deputy Lucifora

09:57:53   11   behind me following me in his patrol vehicle.

09:57:58   12       Q.   And then did you exit your vehicle?

09:58:00   13       A.   Once I parked the vehicle in front of Space

09:58:03   14   No. 10, I exited my patrol vehicle.

09:58:06   15       Q.   And then what did you do?

09:58:07   16       A.   I walked to the front of Space No. 10.  I

09:58:13   17   had parked just east of the space number and walked

09:58:17   18   towards the front of Space No. 10 and contacted the

09:58:20   19   reporting party, Ms. Sarah Reaza.

09:58:26   20       Q.   And was she already outside when you first

09:58:30   21   made contact with her?

09:58:32   22       A.   Yes.  She was standing just in front of

09:58:36   23   Space No. 10.

09:58:38   24       Q.   And what, if anything, did she say to you

09:58:42   25   at that point?

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | | |
|---|---|---|
| 10:02:08 | 1 | residence. |
| 10:02:11 | 2 | Q.   At any point in time prior to entering the |
| 10:02:16 | 3 | Cruz residence did you and Deputy Lucifora discuss |
| 10:02:22 | 4 | any sort of tactics that the two of you were going |
| 10:02:25 | 5 | to take while responding to this call? |
| 10:02:32 | 6 | A.   No. |
| 10:02:35 | 7 | Q.   Prior to entering the Cruz residence, did |
| 10:02:40 | 8 | you and Deputy Lucifora discuss what you were going |
| 10:02:47 | 9 | to do once inside of the residence? |
| 10:02:51 | 10 | A.   No. |
| 10:02:55 | 11 | Q.   And so when Ms. Reaza took you to the door |
| 10:03:02 | 12 | area, what did you do next? |
| 10:03:07 | 13 | A.   Once we were at the rear of the mobile |
| 10:03:11 | 14 | home, Deputy Lucifora and I, he took the position on |
| 10:03:15 | 15 | the left side of the door frame.  I took the |
| 10:03:16 | 16 | position on the right side of the door frame. |
| 10:03:19 | 17 | Q.   At that point in time what was your |
| 10:03:21 | 18 | objective? |
| 10:03:25 | 19 | A.   To safely contact Mr. Cruz. |
| 10:03:28 | 20 | Q.   Was it your intent to detain him at that |
| 10:03:36 | 21 | point? |
| 10:03:36 | 22 | A.   No.  At that point before contacting him, |
| 10:03:39 | 23 | making the initial contact with Mr. Cruz, our intent |
| 10:03:43 | 24 | was -- my intent as leading officer was to |
| 10:03:45 | 25 | investigate the claims that Ms. Reaza had made about |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

| | | |
|---|---|---|
| 10:05:22 | 1 | Q.   As you stood at the doorway prior to making |
| 10:05:25 | 2 | entry, did you believe that you had reasonable |
| 10:05:28 | 3 | suspicion to detain Mr. Cruz? |
| 10:05:36 | 4 | A.   Prior to opening the door and prior to |
| 10:05:40 | 5 | making any visual or verbal contact with Mr. Cruz, I |
| 10:05:45 | 6 | did not have any reasonable suspicion to detain him |
| 10:05:47 | 7 | at that time. |
| 10:05:52 | 8 | Q.   So once -- did you open the door? |
| 10:05:56 | 9 | A.   No. |
| 10:05:58 | 10 | Q.   How was it that the door was opened? |
| 10:06:00 | 11 | A.   When the back door was opened, |
| 10:06:02 | 12 | Deputy Lucifora, as he was positioned on the left |
| 10:06:06 | 13 | side of the door frame, he pressed it open with his |
| 10:06:08 | 14 | right hand. |
| 10:06:10 | 15 | Q.   Once Deputy Lucifora opened the door with |
| 10:06:14 | 16 | his right hand, what happened next? |
| 10:06:16 | 17 | A.   The door opened completely, and I could see |
| 10:06:20 | 18 | that Mr. Cruz was seated approximately three feet |
| 10:06:26 | 19 | inside of the door frame, seated on a bed directly |
| 10:06:31 | 20 | in front of the door frame. |
| 10:06:34 | 21 | Q.   Once the door was open and you saw Mr. Cruz |
| 10:06:37 | 22 | sitting directly in front of the door frame, what |
| 10:06:40 | 23 | happened next? |
| 10:06:43 | 24 | A.   I stated to Mr. Cruz something to the |
| 10:06:46 | 25 | effect of, "Hey, Fernando.  What's up?" |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | | |
|---|---|---|
| 10:06:49 | 1 | Mr. Cruz responded twice by stating, "I am |
| 10:06:52 | 2 | going to kill myself.  I'm going to kill myself," |
| 10:06:54 | 3 | stood up, and began running westward towards the |
| 10:06:58 | 4 | open hallway of the mobile home. |
| 10:07:04 | 5 | Q.   When the door was first opened by |
| 10:07:08 | 6 | Deputy Lucifora, did you have flashlights then |
| 10:07:12 | 7 | pointed in Mr. Cruz's direction? |
| 10:07:19 | 8 | A.   Yes. |
| 10:07:21 | 9 | Q.   And did you have your gun unholstered when |
| 10:07:25 | 10 | the door was open? |
| 10:07:28 | 11 | A.   When Deputy Lucifora opened the back door, |
| 10:07:31 | 12 | yes, my gun was drawn, and it was at a low ready so |
| 10:07:36 | 13 | pointed at the ground. |
| 10:07:40 | 14 | Q.   When the door was first opened and you saw |
| 10:07:44 | 15 | Mr. Cruz sitting, can you describe what, if |
| 10:07:54 | 16 | anything, he was doing, or he was just kind of |
| 10:07:57 | 17 | sitting there doing nothing? |
| 10:07:59 | 18 | A.   Mr. Cruz was sitting on the bed facing the |
| 10:08:03 | 19 | door frame.  He had an unfocused stare, which we |
| 10:08:09 | 20 | call the thousand yard stare, which is a look that I |
| 10:08:13 | 21 | have seen many times before on people who are under |
| 10:08:18 | 22 | the influence of drugs.  And he had that unblinking, |
| 10:08:21 | 23 | unfocused stare.  His eyes were super bloodshot and |
| 10:08:25 | 24 | watery. |
| 10:08:28 | 25 | Q.   Did you see if he was holding anything as |

Deputy Robert Roach                                    J203172
Sarah Cruz Reaza vs. County of Riverside

10:08:31   1   he was sitting in front of the door?

10:08:33   2       A.   No.

10:08:36   3       Q.   Did you see his hands when he was seated in

10:08:40   4   front of the door frame?

10:08:43   5       A.   Yes.

10:08:44   6       Q.   And then once Mr. Cruz stood up and began

10:08:52   7   running towards the hallway, what did you do?

10:08:54   8       A.   I gave commands to Mr. Cruz to stop and to

10:09:00   9   come back to me, and Deputy Lucifora did the same.

10:09:06  10       Q.   Did you give those commands while you were

10:09:10  11   inside or outside of the mobile home?

10:09:14  12       A.   Initially outside, and I continued to give

10:09:18  13   them as I entered the residence.

10:09:23  14       Q.   And do you recall specifically what the

10:09:26  15   command was?  Was it "Come out here" or "Come here"?

10:09:30  16   Do you recall the exact verbiage?

10:09:33  17       A.   Verbatim I don't recall what I stated word

10:09:35  18   for word when I was commanding, giving commands to

10:09:40  19   Mr. Cruz to stop running away from us and fleeing.

10:09:42  20   But from what I remember, it was something to the

10:09:45  21   effect of "Stop, stop.  Come back here."  And that's

10:09:48  22   what I recall similarly Deputy Lucifora stating, but

10:09:52  23   I couldn't say what he said verbatim or myself.

10:09:57  24       Q.   When you said something to the effect of

10:10:00  25   "Stop" or "Come back here," something like that,

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

| | |
|---|---|
| 10:11:35 | 1 |
| 10:11:39 | 2 |
| 10:11:41 | 3 |
| 10:11:44 | 4 |
| 10:11:48 | 5 |
| 10:11:54 | 6 |
| 10:11:57 | 7 |
| 10:11:59 | 8 |
| 10:11:59 | 9 |
| 10:12:09 | 10 |
| 10:12:11 | 11 |
| 10:12:15 | 12 |
| 10:12:18 | 13 |
| 10:12:22 | 14 |
| 10:12:26 | 15 |
| 10:12:31 | 16 |
| 10:12:34 | 17 |
| 10:12:41 | 18 |
| 10:12:45 | 19 |
| 10:12:49 | 20 |
| 10:12:54 | 21 |
| 10:12:56 | 22 |
| 10:12:59 | 23 |
| 10:13:07 | 24 |
| 10:13:10 | 25 |

1  that would be him identifying himself as law

2  enforcement personnel?

3      A.   I did not hear at that time Deputy Lucifora

4  make any statements identifying himself as a deputy

5  with the Riverside County Sheriff's Department.

6      Q.   After you made the order to stop or come

7  back or something to that effect, what happened

8  next?

9      A.   Mr. Cruz did not obey those commands.

10  While he was running down the hallway, he looked

11  back several times.  And while he continued running

12  westward towards the open hallway, he tripped into a

13  preexisting hole that was in between the hallway and

14  his room, just inside the room in the door frame of

15  his room, and he fell onto his right side.

16      Q.   Did you see him actually fall?

17      A.   Yes.  Sorry.  I wasn't finished.

18      Q.   Sorry.  That's my fault.  Please continue.

19      A.   Once I saw him fall into that preexisting

20  hole, but that's all I was going to say after that.

21      Q.   When you saw him fall to the ground, were

22  you inside or outside of the mobile home?

23      A.   I was inside the mobile home standing in

24  the door frame once I saw him fall into the

25  preexisting hole.

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
10:13:13   1        Q.   When you saw Mr. Cruz fall to the ground,
10:13:19   2   up until that point in time did you believe you had
10:13:28   3   probable cause to arrest Mr. Cruz for any crimes?
10:13:34   4        A.   Yes.  I had given Mr. Cruz commands to stop
10:13:39   5   and to come back to me, as well as Deputy Lucifora.
10:13:41   6   I was doing an investigation to see if he was under
10:13:44   7   the influence of a drug, which he -- immediately
10:13:48   8   upon opening the door I could see that he was at
10:13:51   9   least showing one objective symptom for it.
10:13:53  10        So at that point he was resisting and
10:13:56  11   delaying my investigation in violation of 148 PC.
10:13:59  12   And then, additionally, I also had probable cause to
10:14:05  13   detain him and take him into my custody due to him
10:14:08  14   making two statements that he wanted to kill himself
10:14:10  15   and then immediately ran into the hallway, in which
10:14:13  16   I believed he was going to fulfill what he said,
10:14:16  17   that he was going to kill himself, and either grab a
10:14:19  18   gun, a knife, or some other weapon to harm himself,
10:14:22  19   me, my partner, or some other resident in the home.
10:14:26  20        Q.   Up until the point in time in which
10:14:28  21   Mr. Cruz fell down to the ground, what did you
10:14:35  22   observe other than him continuing to run after you
10:14:42  23   had given him an order that led you to believe that
10:14:45  24   you had probable cause that he had violated
10:14:48  25   California Penal Code 148(a)(1)?
```

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | | |
|---|---|---|
| 10:17:34 | 1 | other probable cause to place him into a 5150 hold. |
| 10:17:40 | 2 | Q.   Up until the point in time in which |
| 10:17:42 | 3 | Mr. Cruz fell in the hallway into the hole area, did |
| 10:17:48 | 4 | you believe you had probable cause to arrest him for |
| 10:17:52 | 5 | anything in addition to 148(a)(1) and placing him |
| 10:17:57 | 6 | into a 5150 hold? |
| 10:17:59 | 7 | A.   No. |
| 10:18:04 | 8 | Q.   So once he fell to the ground, what |
| 10:18:08 | 9 | happened next? |
| 10:18:08 | 10 | A.   Once Mr. Cruz tripped in the preexisting |
| 10:18:15 | 11 | hole, I saw that he landed on his right side and was |
| 10:18:19 | 12 | reaching, reaching towards the hallway, and his |
| 10:18:23 | 13 | hands were out of view.  I couldn't see what he was |
| 10:18:27 | 14 | reaching for.  As I got closer to him, I could see |
| 10:18:29 | 15 | that he was outstretching his right arm above his |
| 10:18:33 | 16 | head and was holding something that I believed at |
| 10:18:37 | 17 | that time was a knife. |
| 10:18:39 | 18 | So I placed my left foot on his right |
| 10:18:42 | 19 | outstretched arm and placed my right knee against |
| 10:18:46 | 20 | his middle chest area. |
| 10:18:53 | 21 | Q.   And did you ultimately see what he had in |
| 10:19:04 | 22 | his right hand?  I'm sorry.  Strike that. |
| 10:19:08 | 23 | Did you say he had something in his hand, |
| 10:19:10 | 24 | or he was reaching for something with his right |
| 10:19:14 | 25 | hand? |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
10:19:14   1        A.   At the time that he fell, he fell onto his

10:19:17   2   right side, and he was reaching past the doorway out

10:19:20   3   of view for something that at the time I believe

10:19:23   4   could have been a weapon.  It was only once I

10:19:25   5   approached him that I could see that his right arm

10:19:28   6   was outstretched above his head, and he was holding

10:19:31   7   an object that I could not completely see, but I

10:19:34   8   believed at the time it could have been a knife.

10:19:37   9        Q.   Did you ultimately see what he was holding

10:19:38  10   in his right hand?

10:19:41  11        A.   After I placed my left foot on his right

10:19:44  12   arm that was outstretched over his head and I placed

10:19:47  13   my right knee into the middle of his chest or onto

10:19:50  14   the middle of his chest, I gave him commands three

10:19:54  15   times to drop whatever it was that he had in his

10:19:56  16   hand, and he dropped a glass methamphetamine pipe.

10:20:13  17             (Reporter clarification.)

10:20:16  18        Q.   And how long was your left foot on

10:20:22  19   Mr. Cruz's right hand area?

10:20:30  20        A.   Approximately five seconds.

10:20:33  21        Q.   And how long did you have your was it your

10:20:38  22   right knee on Mr. Cruz's chest?

10:20:43  23        MR. SAIN:  Vague as to time.

10:20:46  24        THE WITNESS:  When I first made that contact

10:20:48  25   after he tripped, my left foot was on his, on his
```

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside
Case 5:20-cv-01138-JEMF-SP   Document 98-2   Filed 07/14/22   Page 64 of 203   Page ID
#:2314
I203172

10:38:43   1   individuals on the westernmost side of the living

10:38:47   2   room on a couch area.  That's the only time I

10:38:53   3   noticed other individuals in the house up to that

10:38:56   4   point other than myself, Deputy Lucifora, and

10:38:59   5   Mr. Cruz.

           6   BY MR. PEACOCK:

10:39:02   7        Q.   Did you tell these other individuals to

10:39:05   8   leave the area?

10:39:07   9        MR. SAIN:  Vague as to time.

10:39:10  10        THE WITNESS:  When Deputy Lucifora noticed them,

10:39:15  11   he was the one who gave them commands to leave the

10:39:19  12   residence.

          13   BY MR. PEACOCK:

10:39:21  14        Q.   And did Deputy Lucifora give these commands

10:39:25  15   before or after Mr. Cruz was in the prone position

10:39:29  16   in the living room?

10:39:30  17        A.   Deputy Lucifora gave commands to the other

10:39:37  18   occupants in the home to leave before Mr. Cruz was

10:39:42  19   in the prone position.

10:39:44  20        Q.   Did it appear to you that they immediately

10:39:47  21   complied with that order?

10:39:49  22        A.   When Deputy Lucifora ordered them to leave

10:39:53  23   the residence, it appeared that they all left and

10:39:57  24   went outside.

10:39:59  25        Q.   I apologize.  Did you say "and then went

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

| | | |
|---|---|---|
| 10:40:02 | 1 | outside"? |
| 10:40:03 | 2 | A.   Yes. |
| 10:40:06 | 3 | Q.   When you were in the living room area, |
| 10:40:09 | 4 | could you still see these other people outside? |
| 10:40:14 | 5 | A.   When we had -- when Deputy Lucifora and I |
| 10:40:18 | 6 | had put Mr. Cruz into a prone position, I could not |
| 10:40:21 | 7 | see the other individuals inside or outside of the |
| 10:40:24 | 8 | residence. |
| 10:40:26 | 9 | Q.   So once Mr. Cruz was placed into a prone |
| 10:40:29 | 10 | position, what happened next? |
| 10:40:30 | 11 | A.   Upon Mr. Cruz being placed into a prone |
| 10:40:38 | 12 | position, Deputy Lucifora maintained a -- retained |
| 10:40:48 | 13 | control of Mr. Cruz's right arm.  Mr. Cruz's left |
| 10:40:50 | 14 | arm was tucked underneath his body under his chest |
| 10:40:53 | 15 | area, so upward toward his face.  I immediately |
| 10:40:58 | 16 | tried to gain control of his left arm to place it |
| 10:41:02 | 17 | into the lower back area for handcuffing. |
| 10:41:07 | 18 | Q.   And during that point in time was your knee |
| 10:41:10 | 19 | or leg or foot making contact with Mr. Cruz? |
| 10:41:14 | 20 | A.   When I was attempting to place his left arm |
| 10:41:18 | 21 | behind his back and he was in the prone position, |
| 10:41:20 | 22 | both of my knees were on the ground next to |
| 10:41:23 | 23 | Mr. Cruz's left side.  And I was using both of my |
| 10:41:27 | 24 | hands to come underneath his body in between |
| 10:41:30 | 25 | Mr. Cruz's left side rib cage and under his biceps |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
10:42:59    1    accomplish that?
10:42:59    2        A.   As I previously stated, I was able to take
10:43:05    3    Mr. Cruz's left arm, which he had tucked underneath
10:43:08    4    his right chest, by taking both of my hands.  With
10:43:11    5    my knees on the ground, both my hands went
10:43:14    6    underneath his body, and I placed my hands --
10:43:20    7    slammed them, I guess.  I slammed them underneath
10:43:21    8    his body in between the space of where his left rib
10:43:25    9    cage would be and the bottom portion of that left
10:43:28   10    biceps and just used my strength to bring the arm
10:43:31   11    out, at which time Mr. Cruz was continually
10:43:34   12    resisting, trying to put it back underneath.  And so
10:43:37   13    I had to place my knee underneath the arm so that
10:43:40   14    way it wouldn't, it wouldn't allow the arm to go
10:43:43   15    back underneath his body.
10:43:47   16            And after approximately a minute of doing
10:43:52   17    that, I was able to rest his arm on my knees because
10:43:59   18    he was trying to force it back under, retain a
10:44:02   19    handcuff on the right side of my vest and place it
10:44:05   20    around his left wrist.
10:44:08   21        Q.   And then what happened?
10:44:09   22        A.   Once I placed the handcuff around
10:44:16   23    Mr. Cruz's left wrist, he was exhibiting abnormal
10:44:21   24    strength during that entire encounter.  And it took
10:44:25   25    a couple seconds for Deputy Lucifora and I to
```

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| Time | Line | |
|---|---|---|
| 10:44:29 | 1 | connect those two ends.  So he had a handcuff on his |
| 10:44:33 | 2 | right wrist and a handcuff on his left, and we |
| 10:44:37 | 3 | connected the two open portions together so he was |
| 10:44:39 | 4 | wearing two handcuffs on either wrist. |
| 10:44:43 | 5 | Q.   Did it appear to you that he was physically |
| 10:44:46 | 6 | resisting your efforts to connect those two sets of |
| 10:44:49 | 7 | handcuffs? |
| 10:44:50 | 8 | A.   Yes. |
| 10:44:51 | 9 | Q.   And what did you observe in that regard? |
| 10:44:53 | 10 | A.   As I have previously stated, Mr. Cruz was |
| 10:44:57 | 11 | exhibiting abnormal strength, and he was ripping his |
| 10:45:05 | 12 | arms away from our grips and trying to pull his arms |
| 10:45:08 | 13 | together (indicating) in a downward motion back |
| 10:45:13 | 14 | underneath his body.  He was also kicking his feet |
| 10:45:17 | 15 | and continued jerking his body in up and downward |
| 10:45:23 | 16 | movements. |
| 10:45:24 | 17 | Q.   And then once the two handcuffs -- once the |
| 10:45:27 | 18 | two sets of handcuffs were connected, what happened |
| 10:45:30 | 19 | next? |
| 10:45:32 | 20 | A.   Mr. Cruz continued to resist.  And due to |
| 10:45:38 | 21 | having two handcuffs on, he was able to place one of |
| 10:45:41 | 22 | his hands on the ground.  And because his feet were |
| 10:45:44 | 23 | unrestrained, he was able to separate them to where |
| 10:45:48 | 24 | he was trying to get up and still flee.  He was |
| 10:45:51 | 25 | continuing the bucking motions and also kicking. |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
10:45:54    1        Deputy Lucifora and I maintained our

10:45:56    2   positions on Mr. Cruz by having both of our knees on

10:46:00    3   the ground.  I was on the left side.  Deputy

10:46:03    4   Lucifora was on the left side.  Deputy Lucifora

10:46:07    5   maintained his grip on Mr. Cruz's right arm with

10:46:11    6   both hands, and I maintained my grip on Mr. Cruz's

10:46:14    7   left arm with both hands as he continued to

10:46:16    8   struggle.

10:46:16    9        MR. SAIN:  Sorry.  What did you just say?  Who

           10   was on what side?

10:46:19   11        THE WITNESS:  Deputy Lucifora was near the right

10:46:21   12   side of Mr. Cruz's body with his knees on the ground

10:46:25   13   maintaining a grip on Mr. Cruz's right arm to hold

10:46:30   14   his hand.  I was positioned on Mr. Cruz's left side

10:46:34   15   of his body with both of my knees on the ground and

10:46:37   16   maintained a grip on Mr. Cruz's left arm with both

10:46:40   17   of my hands as Mr. Cruz continued to resist and try

10:46:44   18   and escape.

10:46:47   19   BY MR. PEACOCK:

10:46:49   20        Q.   Were you holding on to his arm to prevent

10:46:55   21   him from getting up?

10:46:58   22        A.   At that time after handcuffing him,

10:47:01   23   Mr. Cruz was placing a hand on the ground and facing

10:47:04   24   out with his feet and trying to get up as well as

10:47:08   25   all the other bucking motions and kicking, so I
```

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | |
|---|---|
| 10:48:26 | 1 |
| 10:48:30 | 2 |
| 10:48:33 | 3 |
| 10:48:33 | 4 |
| 10:48:36 | 5 |
| 10:48:38 | 6 |
| 10:48:42 | 7 |
| 10:48:43 | 8 |
| 10:49:01 | 9 |
| 10:49:04 | 10 |
| 10:49:06 | 11 |
| 10:49:09 | 12 |
| 10:49:12 | 13 |
| 10:49:18 | 14 |
| 10:49:20 | 15 |
| 10:49:24 | 16 |
| 10:49:27 | 17 |
| 10:49:29 | 18 |
| 10:49:33 | 19 |
| 10:49:36 | 20 |
| 10:49:41 | 21 |
| 10:49:46 | 22 |
| 10:49:50 | 23 |
| 10:49:51 | 24 |
| 10:49:53 | 25 |

1  as like a spring, so when he would press up I'd go

2  down.  When he'd go down, I'd press back up on the

3  arm.

4      Q.   So at some point you were holding on to

5  Mr. Cruz's left arm in a way that's arching his

6  back?

7      A.   No.

8      Q.   Okay.  When you were holding on to

9  Mr. Cruz's left arm after he was handcuffed and he

10 was in the prone position, what was your objective

11 at that point?

12     A.   My objective at that point was to get him

13 medical and mental health treatment at that time.

14     Q.   At that point in time did you consider

15 standing him up and taking him to the patrol car?

16     A.   No.

17     Q.   Was it your belief at the time that that

18 would be an unreasonable thing to do?

19     A.   At the time that I had placed handcuffs on

20 him, Mr. Cruz was continuing to fight with us and

21 try and escape by thrashing his body up and down,

22 kicking, placing his hands on the ground, and facing

23 out with his feet to get up.

24          I believe it would be unreasonable to put

25 him in a position where it would be easier for him

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | |
|---|---|
| 10:49:55 | 1 |
| 10:49:59 | 2 |
| 10:50:03 | 3 |
| 10:50:06 | 4 |
| 10:50:09 | 5 |
| 10:50:11 | 6 |
| 10:50:13 | 7 |
| 10:50:18 | 8 |
| 10:50:18 | 9 |
| 10:50:25 | 10 |
| 10:50:27 | 11 |
| 10:50:31 | 12 |
| 10:50:36 | 13 |
| 10:50:41 | 14 |
| 10:50:44 | 15 |
| 10:50:47 | 16 |
| 10:50:51 | 17 |
| 10:50:54 | 18 |
| 10:50:56 | 19 |
| 10:51:02 | 20 |
| 10:51:06 | 21 |
| 10:51:10 | 22 |
| 10:51:16 | 23 |
| 10:51:23 | 24 |
| 10:51:27 | 25 |

to escape, assault us, or harm himself.  And if I
had stood him up at that point, I believe I would
have had to use more force than I was using while he
was in the prone position to restrain him.

Therefore, that's why I believed keeping
him in the prone position was the most effective,
efficient, and safest position for restraint at that
time.

Q.    And were you waiting for Mr. Cruz to stop
thrashing himself and moving around, resisting,
before you took further action?

A.    At that time I was not waiting for Mr. Cruz
to stop his resistive movements.  I at that point
upon handcuffing had called for AMR to come in so
that way he could be backboarded in further
restraints that would be safest for him on that
backboard and for us deputies.  At that time he
could be taken for medical evaluation and for a
mental health assessment or to receive mental health
benefits at that time.

Q.    Once Mr. Cruz was handcuffed in the prone
position, it was your plan to keep him in that
position until AMR or Fire arrived?

A.    Yes, due to his level of resistance, high
level of resistance.

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
10:56:08   1              During the incident I never heard Mr. Cruz
10:56:11   2    just prior to that make any statements about him
10:56:15   3    going to die.  The first time I heard that statement
10:56:17   4    was in review of my BWC.  And just prior to making
10:56:23   5    that statement, Deputy Lucifora, you can hear him
10:56:25   6    state, "Stop, stop" as he continued to try and
10:56:26   7    restrain Mr. Cruz's feet.
10:56:28   8              Just after I made that statement
10:56:29   9    Deputy Lucifora asks for a hobble, which he
10:56:32  10    retrieved from Deputy Gillison, and then asked me to
10:56:35  11    apply the hobble.  I would never make a statement
10:56:38  12    like that such that -- that's abhorrent and
10:56:43  13    disgusting to make a statement like that to someone
10:56:46  14    in response to them saying that they're dying.  That
10:56:48  15    was absolutely in response to Deputy Lucifora's
10:56:51  16    inability to control Mr. Cruz's legs.
10:56:58  17         Q.   Did you hear Deputy Gillison say, "Yeah"
10:57:04  18    immediately after you said, "If it was only that
10:57:07  19    easy"?
10:57:09  20         A.   No.
10:57:16  21         Q.   How long after you had placed or you had
10:57:24  22    connected the two sets of handcuffs together did
10:57:27  23    Deputies Gillison and Halbeisen arrive?
10:57:32  24         A.   Approximately 32 seconds.
10:57:35  25         Q.   And that's a pretty precise number, so I've
```

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

| | |
|---|---|
| 11:06:17 | 1 | going to relieve us so we could essentially catch |
| 11:06:19 | 2 | our breath. |
| 11:06:24 | 3 | Q.   So then did you stop making contact with |
| 11:06:28 | 4 | Mr. Cruz at that point? |
| 11:06:31 | 5 | A.   Once Deputy Halbeisen gained control of |
| 11:06:35 | 6 | Mr. Cruz, I believe he placed a knee on Mr. Cruz's |
| 11:06:44 | 7 | back.  I don't recall which knee or where he placed |
| 11:06:46 | 8 | it.  And then also grabbed Mr. Cruz's left arm with |
| 11:06:51 | 9 | his hands.  And he would be -- Deputy Halbeisen |
| 11:06:55 | 10 | would be on the left side or near the left side of |
| 11:06:57 | 11 | Mr. Cruz.  Once he gained control of him, I stood up |
| 11:07:00 | 12 | and stopped having contact with Mr. Cruz. |
| 11:07:04 | 13 | Q.   And once you stood up, what did you do? |
| 11:07:05 | 14 | A.   I collected -- I tried to regain my breath, |
| 11:07:13 | 15 | started taking deep breaths because I was out of |
| 11:07:16 | 16 | breath, and I was tired.  I did that for |
| 11:07:18 | 17 | approximately five seconds and saw that |
| 11:07:23 | 18 | Deputy Halbeisen and Deputy Gillison were struggling |
| 11:07:27 | 19 | in controlling Mr. Cruz as Mr. Cruz continued to try |
| 11:07:31 | 20 | and escape by getting up off the ground and kicking |
| 11:07:34 | 21 | his feet and facing his feet out. |
| 11:07:37 | 22 | Q.   Did you see Deputy Gillison relieve |
| 11:07:43 | 23 | Deputy Lucifora from the right side of Mr. Cruz? |
| 11:07:48 | 24 | A.   No.  Due to Mr. Cruz's thrashing movements, |
| 11:07:54 | 25 | he had moved almost parallel with the blue couch |

Kusar   *Keeping Your Word Is Our Business* ℠

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

| | | |
|---|---|---|
| 11:24:31 | 1 | controlling different aspects of his body, Mr. Cruz |
| 11:24:34 | 2 | was not able to get off the ground despite his |
| 11:24:38 | 3 | obvious efforts to by placing his hand on the |
| 11:24:41 | 4 | ground, facing his feet out, and trying to get up |
| 11:24:45 | 5 | and kicking and thrashing his body. |
| | 6 | BY MR. PEACOCK: |
| 11:24:50 | 7 | Q.   Prior to observing Deputy Gillison punch |
| 11:24:55 | 8 | Mr. Cruz for the first time, did you hear |
| 11:25:02 | 9 | Deputy Gillison direct any orders towards Mr. Cruz? |
| 11:25:09 | 10 | A.   I don't recall. |
| 11:25:16 | 11 | Q.   Prior to observing Deputy Gillison punching |
| 11:25:23 | 12 | Mr. Cruz, did you hear anyone warn Mr. Cruz that he |
| 11:25:31 | 13 | would be punched if he did not comply? |
| 11:25:37 | 14 | MR. SAIN:  Assumes facts not in evidence, |
| 11:25:39 | 15 | argumentative as phrased. |
| 11:25:42 | 16 | THE WITNESS:  At no point during this incident |
| 11:25:43 | 17 | did I hear any of the deputies warn Mr. Cruz that he |
| 11:25:46 | 18 | was about to be punched or would be punched if he |
| 11:25:50 | 19 | did not comply. |
| | 20 | BY MR. PEACOCK: |
| 11:25:54 | 21 | Q.   Based off of what you observed, did you |
| 11:25:58 | 22 | believe that Deputy Gillison had an opportunity to |
| 11:26:01 | 23 | warn Mr. Cruz that he would be punched if he did not |
| 11:26:06 | 24 | comply prior to punching Mr. Cruz? |
| 11:26:11 | 25 | MR. SAIN:  Assumes facts not in evidence, |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

| | | |
|---|---|---|
| 11:26:13 | 1 | argumentative, misstates legal standard. |
| 11:26:19 | 2 | THE WITNESS: Yes. |
| 11:26:22 | 3 | BY MR. PEACOCK: |
| 11:26:25 | 4 | Q. So once -- after Deputy Gillison punched |
| 11:26:32 | 5 | Mr. Cruz, what happened next? |
| 11:26:34 | 6 | A. I got -- I stood up and stopped having |
| 11:26:42 | 7 | contact with Mr. Cruz, and I exited the mobile home |
| 11:26:46 | 8 | and ran towards the -- ran to just directly in front |
| 11:26:51 | 9 | of the mobile home to see if AMR was in the |
| 11:26:55 | 10 | vicinity. |
| 11:26:56 | 11 | So I looked out towards the street to see |
| 11:26:59 | 12 | if I could see their ambulance lights or see if they |
| 11:27:02 | 13 | were actually there so I could direct them in. As |
| 11:27:04 | 14 | soon as I got to the front of the mobile home, I |
| 11:27:06 | 15 | didn't hear or see any sirens or lights. |
| 11:27:08 | 16 | And I directed someone that was standing |
| 11:27:10 | 17 | out there to run to the front of the entrance of the |
| 11:27:12 | 18 | mobile home to direct AMR in, and then I ran |
| 11:27:15 | 19 | immediately back inside and began assisting again |
| 11:27:19 | 20 | with controlling Mr. Cruz's legs in the same fashion |
| 11:27:24 | 21 | that I was prior to leaving. |
| 11:27:27 | 22 | Q. What's your best estimate as to how long |
| 11:27:30 | 23 | you were outside of the home during that time |
| 11:27:32 | 24 | period? |
| 11:27:34 | 25 | A. From the time I got up to reentering, |

Case 5:20-cv-01388-MEMF-SP   Document 98-2   Filed 07/14/22   Page 75 of 203   Page ID
#:2325

J203172

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

11:29:09   1   both knees on the ground, and was attempting to

11:29:12   2   restrain his thigh or hamstring area.

11:29:15   3        And it was -- and Deputy Lucifora was

11:29:17   4   attempting to restrain his ankles with his hands

11:29:22   5   with his knees on the ground, and that's when he

11:29:24   6   subsequently requested from Deputy Gillison the

11:29:28   7   hobble.

11:29:30   8        Q.   Is it your understanding that when

11:29:32   9   Deputy Gillison first entered the home he already

11:29:34   10  had a hobble with him?

11:29:38   11       A.   I did not know Deputy Gillison had a hobble

11:29:42   12  with him.

11:29:44   13       Q.   When you re-entered the home, was Deputy

11:29:48   14  Halbeisen's knee still on Mr. Cruz's back?

11:29:53   15       A.   I never recalled Deputy Halbeisen's knee

11:29:57   16  position from the time he -- from the time he

11:30:04   17  entered the home and made first contact with

11:30:06   18  Mr. Cruz to my re-entering the home after searching

11:30:11   19  for AMR, I don't recall where Deputy Halbeisen's

11:30:14   20  knee placement was.

11:30:15   21       Q.   When you re-entered the home, could you see

11:30:19   22  if any of the deputies were making contact with

11:30:21   23  Mr. Cruz's back area?

11:30:26   24       A.   I recall Deputy Gillison's right knee being

11:30:32   25  placed across or on Mr. Cruz's left shoulder blade.

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

11:35:25   1        A.   Yes.  Mr. Cruz was continually resistant by

11:35:31   2   kicking his feet and trying to separate them, trying

11:35:33   3   to escape by getting up off the ground and thrashing

11:35:37   4   his body.

11:35:39   5        Q.   Once Mr. Cruz was placed in the hobble, did

11:35:43   6   you continue making contact, physical contact with

11:35:46   7   him?

11:35:46   8        A.   Once I placed the hobble on Mr. Cruz's feet

11:35:52   9   and secured it, I discontinued having physical

11:35:56   10   contact with Mr. Cruz.  I stood up and then walked

11:36:00   11   to Mr. Cruz's -- near his right side and stood near

11:36:07   12   the blue couch that was at the eastern most area of

11:36:14   13   the living room.

11:36:17   14        Q.   When you were near that couch you were no

11:36:20   15   longer making physical contact with Mr. Cruz.  Is

11:36:22   16   that correct?

11:36:22   17        A.   No.  I was just standing near him and

11:36:24   18   keeping observation of him at that point.

11:36:29   19        Q.   After Mr. Cruz was placed in the hobble,

11:36:33   20   could you see if Deputy Halbeisen was continuing to

11:36:37   21   make physical contact with Mr. Cruz?

11:36:40   22        A.   Yes.

11:36:43   23        Q.   And what did you observe in that regard?

11:36:49   24        A.   I recall Deputy Halbeisen was in a kneeling

11:36:54   25   position near Mr. Cruz's left side and was

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

J203172

| | |
|---|---|
| 11:37:00 | 1 |
| 11:37:04 | 2 |
| 11:37:09 | 3 |
| 11:37:12 | 4 |
| 11:37:15 | 5 |
| 11:37:20 | 6 |
| 11:37:24 | 7 |
| 11:37:27 | 8 |
| 11:37:31 | 9 |
| 11:37:34 | 10 |
| 11:37:37 | 11 |
| 11:37:41 | 12 |
| 11:37:47 | 13 |
| 11:37:51 | 14 |
| 11:37:54 | 15 |
| 11:37:55 | 16 |
| 11:38:04 | 17 |
| 11:38:06 | 18 |
| 11:38:10 | 19 |
| 11:38:14 | 20 |
| 11:38:19 | 21 |
| 11:38:24 | 22 |
| 11:38:29 | 23 |
| 11:38:34 | 24 |
| 11:38:36 | 25 |

maintaining control of Mr. Cruz's left arm with his
hands, and he had a knee on the middle section of
Mr. Cruz's back area, but I don't recall which knee
it was.

Q.   After Mr. Cruz was placed in the hobble,
could you observe whether or not Deputy Gillison was
continuing to make physical contact with Mr. Cruz?

A.   Once the hobble was applied to Mr. Cruz,
Deputy Gillison stood up and was no longer making
contact with Mr. Cruz standing directly to
Mr. Cruz's left side.

Q.   Once Mr. Cruz was placed in the hobble, did
it appear to you that he was still attempting to get
up?

A.   Yes.

Q.   Based off of the totality of the
circumstances and what you observed, did you believe
it was objectively reasonable for Deputy Halbeisen
to continue to have his knee on Mr. Cruz's back once
he was placed in the hobble?

A.   Due to Mr. Cruz continually -- continuing
to fight and trying to resist at that point, the
restraints were doing a good job of any vertical
movement, and it was mostly horizontal movement.
And at that point we were mostly concerned about his

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside
Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 78 of 203   Page ID
#:2328
1203172

| | | |
|---|---|---|
| 11:43:43 | 1 | any training whatsoever related to the topic of |
| 11:43:48 | 2 | positional asphyxiation? |
| 11:43:52 | 3 | A.   No. |
| 11:44:02 | 4 | Q.   So once you repositioned yourself near the |
| 11:44:13 | 5 | couch in the living room, what happened next? |
| 11:44:19 | 6 | MR. SAIN:   Is this when he is standing up? |
| 11:44:21 | 7 | MR. PEACOCK:   Correct. |
| 11:44:23 | 8 | THE WITNESS:   After the application of the |
| 11:44:25 | 9 | hobble, I maintained that position to Mr. Cruz's |
| 11:44:29 | 10 | right side, standing, making no contact for |
| 11:44:31 | 11 | approximately three minutes. |
| 11:44:33 | 12 | BY MR. PEACOCK: |
| 11:44:34 | 13 | Q.   And during that three-minute period was |
| 11:44:41 | 14 | Mr. Cruz still in the prone position? |
| 11:44:43 | 15 | A.   Yes.   During that three-minute period |
| 11:44:47 | 16 | Mr. Cruz was maintained in that prone position face |
| 11:44:51 | 17 | down. |
| 11:44:51 | 18 | Q.   During that three-minute period of time did |
| 11:44:57 | 19 | you observe Deputy Halbeisen in the same position |
| 11:45:00 | 20 | where his right knee is making contact with |
| 11:45:03 | 21 | Mr. Cruz's back? |
| 11:45:04 | 22 | A.   I recall Mr. -- sorry -- Deputy Halbeisen |
| 11:45:12 | 23 | making contact with Mr. Cruz's middle back section |
| 11:45:17 | 24 | with a knee.   I don't recall which knee.   And the |
| 11:45:19 | 25 | other knee, whichever one it was, was on the ground |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

12:19:42  1   he make that movement?

12:19:44  2      A.   Mr. Cruz when he saw my approach

12:19:48  3   attempted -- he had his right arm extended over his

12:19:54  4   head, and his left arm was planted on the ground.

12:19:56  5   And as he saw my approach, he was attempting to get

12:20:00  6   up by planting that left arm on the ground and to

12:20:05  7   face -- to get up and face me, so it was a voluntary

12:20:09  8   movement on his part.

12:20:12  9      Q.   In response to Mr. Cruz trying to get up at

12:20:18 10   that point, you said that you placed your knee to

12:20:21 11   his chest approximately four times.  Do you remember

12:20:24 12   that testimony?

12:20:24 13      A.   Yes.

12:20:26 14      Q.   And if I understood you correctly, and if I

12:20:29 15   didn't please correct me, you said the longest

12:20:31 16   amount of contact during that period of time where

12:20:35 17   your knee was on his chest, the longest of those

12:20:40 18   four contacts was about 15 seconds.  Is that

12:20:43 19   correct?

12:20:43 20      A.   It would have been outside of those four

12:20:46 21   contacts.  Those four contacts were separate from

12:20:49 22   the initial contact, which was just after he

12:20:53 23   tripped.  Those four contacts were separate contacts

12:20:57 24   that I made with his chest as I was attempting to

12:21:00 25   release his grasp off of one of my arms, and he was

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

| | |
|---|---|
| 12:21:04 | 1 |
| 12:21:06 | 2 |
| 12:21:08 | 3 |
| 12:21:10 | 4 |
| 12:21:11 | 5 |
| 12:21:12 | 6 |
| 12:21:20 | 7 |
| 12:21:23 | 8 |
| 12:21:27 | 9 |
| 12:21:30 | 10 |
| 12:21:32 | 11 |
| 12:21:34 | 12 |
| 12:21:37 | 13 |
| 12:21:40 | 14 |
| 12:21:42 | 15 |
| 12:21:43 | 16 |
| 12:21:48 | 17 |
| 12:21:52 | 18 |
| 12:21:57 | 19 |
| 12:22:00 | 20 |
| 12:22:02 | 21 |
| 12:22:07 | 22 |
| 12:22:10 | 23 |
| 12:22:12 | 24 |
| 12:22:16 | 25 |

1   attempting to pull me down in the hallway.

2       Q.   Okay.  So are you saying there were

3   approximately five contacts total or approximately

4   four total?

5       A.   Approximately five total.

6       Q.   Okay.  So there was approximately five

7   total chest-to-knee contacts or knee-to-chest

8   contacts.  Is the longest interval that the knee was

9   on his chest still 15 seconds?

10      A.   Yes.

11      Q.   And would it be accurate to say that all of

12   the other four knee-to-chest contacts during this

13   point would have been less than 15 seconds?

14      A.   Yes.

15      Q.   How much less?

16      A.   I applied the knee to his chest during

17   those four separate incidences, which were after his

18   initial trip, for approximately one to two seconds.

19   As he grabbed my arm to pull me down, I wasn't

20   applying pressure on his chest.  It was to make sure

21   that when I pulled my arm away, it was so that --

22   when I pulled my arm away, his body wouldn't fall on

23   me.  So it was just something that would stop his

24   body from following my movement as I pulled his arm

25   away to release his grasp.

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

```
12:48:26    1   deliberately turning that camera off?
12:48:29    2        (Audio glitch - reporter clarification.)
12:48:29    3        A.   No.
12:48:51    4        Q.   At some point on the incident date did you
12:48:53    5   see Fernando Cruz transported from the scene?
12:48:59    6        A.   Yes.
12:49:01    7        Q.   How long from when you noticed Mr. Cruz
12:49:06    8   abruptly stop moving until you saw him transported
12:49:09    9   from the scene?
12:49:13   10        A.   I believe it was over 20 minutes.
12:49:19   11        Q.   Who transported him from the scene?
12:49:22   12        A.   AMR did.
12:49:26   13        Q.   Before you saw Mr. Cruz abruptly stop
12:49:29   14   moving, had you observed any signs or symptoms
12:49:34   15   indicating to you that Mr. Cruz was having any
12:49:36   16   medical problems?
12:49:40   17        A.   No.  Mr. Cruz abruptly stopped yelling and
12:49:45   18   screaming, and all of his body movements were
12:49:51   19   abrupt.  Prior to that abrupt stopping of Mr. Cruz's
12:49:55   20   breathing and thrashing there were no medical
12:49:59   21   indications that I saw that he was having a medical
12:50:02   22   emergency.
12:50:07   23        Q.   Is it your recollection that during the
12:50:10   24   incident from Mr. Cruz tripping and falling all the
12:50:13   25   way until he abruptly stops moving that he was
```

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 82 of 203   Page ID #:2332

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

1                              DECLARATION

2

3

4

5          I hereby declare I am the deponent in the

6     within matter; that I have read the foregoing

7     deposition and know the contents thereof, and I

8     declare that the same is true of my knowledge except

9     as to the matters which are therein stated upon my

10    information or belief, and as to those matters, I

11    believe it to be true.

12         I declare under the penalties of perjury of

13    the State of California that the foregoing is true

14    and correct.

15         Executed this _____ day of _____,

16    2022, at _____, _____.

17

18

19

20

21                         _____

22                         DEPUTY ROBERT ROACH

23

24

25

Case 5:20-cv-01138-MEMF-SP Document 98-2 Filed 07/14/22 Page 83 of 203 Page ID #:2333
Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside
J203172

```
 1                    REPORTER'S CERTIFICATE

 2

 3          I, the undersigned Certified Shorthand

 4   Reporter holding a valid and current license issued

 5   by the State of California, do hereby certify:

 6          That said proceedings were taken down by me

 7   in shorthand at the time and place therein set forth

 8   and thereafter transcribed under my direction and

 9   supervision.

10          I further certify that I am neither counsel

11   for nor related to any party to said action, nor in

12   any way interested in the outcome thereof.

13          Before completion of the deposition, review

14   of the transcript [ X  ]was [   ]was not requested.

15          The dismantling, unsealing, or unbinding of

16   the original transcript will render the Reporter's

17   Certificate null and void.

18      IN WITNESS WHEREOF, I have hereunto subscribed

19   my name on this date: March 14, 2022.

20

21

22

23          _____

24          Certified Shorthand Reporter

25
```



EXHIBIT "D"

                    UNITED STATES DISTRICT COURT

          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION




SARAH CRUZ REAZA, individually  )
and as Successor-in Interest of )
Decedent FERNANDO CRUZ, et al., )
                                )
                Plaintiffs,     )
                                )
        vs.                     )    No. 5:20-CV-01188
                                )    FMO (SPx)
                                )
COUNTY OF RIVERSIDE,            )
RIVERSIDE COUNTY SHERIFF'S      )
DEPARTMENT, and DOES 1 through  )
20, inclusive,                  )
                                )
                                )
                                )
                Defendants.     )
                                )
_____)




VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF DEPUTY ANDREW LUCIFORA

                    Tuesday, March 8, 2022




REPORTED BY:  Stacy L. Lozano, CSR No. 12831

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1

2                  UNITED STATES DISTRICT COURT

3       CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

4

5

6   SARAH CRUZ REAZA, individually  )
    and as Successor-in Interest of )
7   Decedent FERNANDO CRUZ, et al., )
                                     )
8                      Plaintiffs,   )
                                     )
9         vs.                        )   No. 5:20-CV-01188
                                     )   FMO (SPx)
10                                   )
    COUNTY OF RIVERSIDE,             )
11  RIVERSIDE COUNTY SHERIFF'S       )
    DEPARTMENT, and DOES 1 through   )
12  20, inclusive,                   )
                                     )
13                                   )
                                     )
14                     Defendants.   )
                                     )
15  _____)

16

17          Videotaped Videoconference Deposition of

18          DEPUTY ANDREW LUCIFORA, the Defendant,

19          taken on behalf of the Plaintiffs, at San

20          Bernardino California, commencing at the

21          hour of 10:05 a.m., Tuesday, March 8, 2022,

22          before Stacy L. Lozano, CSR No. 12831,

23          Pursuant to Notice.

24

25

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 87 of 203   Page ID
#:2337
Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

```
1    APPEARANCES OF COUNSEL:

2

3   For Plaintiffs:  SARAH CRUZ REAZA, et al.

4            LAW OFFICE OF GREGORY PEACOCK

5            BY:  GREGORY PEACOCK, ESQ.

6            4425 Jamboree Road, Suite 130

7            Newport Beach, California  92660

8            Phone:  (949) 292-7478

9            Email:  Gregorypeacockesq@gmail.com

10

11   For Plaintiffs:  SARAH CRUZ REAZA, et al.

12            STEVEN A. LERMAN & ASSOCIATES, INC.

13            BY:  STEVEN A. LERMAN, ESQ.

14                 NICHOLAS M. LERMAN, ESQ.

15            6033 West Century Boulevard, Suite 740

16            Los Angeles, California  90045

17            Phone:  (310) 659-8166

18            Email:  nlerman@lermanslaw.com
                      nmlerman0@yahoo.com
19

20

21

22

23

24

25
```

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

```
1    APPEARANCES OF COUNSEL:

2

3    For Defendant:  COUNTY OF RIVERSIDE, et al.

4            LEWIS, BRISBOIS, BISGAARD & SMITH, LLP

5            BY:  ANTHONY SAIN, ESQ.

6            633 W. 5th Street, Suite 4000

7            Los Angeles, California  90071

8            Phone:  (213) 358-6041

9            Email:   Tony.Sain@lewisbrisbois.com

10

11   ALSO PRESENT:  Garrett Estorga, Videographer, Kusar Legal

12   Services, Inc.

13            Defendant Todd Halbeisen

14            Defendant Geoffrey Gillison

15            Defendant Robert Roach

16

17

18

19

20

21

22

23

24

25
```

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

J203165

1    A.  Laying in a certain position which restricts

2    breathing and normal function.

3    Q.  Has the Riverside County Sheriff's Department, at

4    any point, provided you with any training as it relates to

10:22:37   5    the topic of positional asphyxiation?

6    A.  That I'm not aware of.

7    Q.  At the academy were you trained on the use of

8    prone restraints in any way?

9    A.  Yes.

10:23:01   10    Q.  And what were you trained at the academy in that

11    regard?

12    A.  That the individual that we're detaining, we're

13    trained to lay them on their stomach, and instruct them to

14    place their hands behind the back to secure them.

10:23:22   15    Q.  At the academy were you trained that placing

16    someone in a prone position, for an extended period of

17    time, could ultimately lead to their suffocation?

18        MR. SAIN:  Assumes facts not in evidence.

19        THE WITNESS:  I don't recall.

10:24:00   20    BY MR. PEACOCK:

21    Q.  Has the Riverside County Sheriff's Department

22    ever provided you training as it relates to how a person

23    in a prone position can ultimately suffer from

24    suffocation?

10:24:25   25        MR. SAIN:  Assumes facts not in evidence.

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1          THE WITNESS:  I don't recall.

2    BY MR. PEACOCK:

3        Q.  At the academy were you ever trained to, or

4    instructed that you should stand a person up after they're

10:24:43    5    handcuffed, to prevent suffocation?

6          MR. SAIN:  Assumes facts not in evidence.

7          THE WITNESS:  We're trained to, once the

8    individual is detained, and the scene is safe, if

9    possible, have the individual stand up or place them in a

10:25:06    10    seated position.

11    BY MR. PEACOCK:

12        Q.  And is it your understanding that that is to

13    prevent suffocation?

14          MR. SAIN:  Assumes facts not in evidence.

10:25:16    15          THE WITNESS:  No, it does not.

16    BY MR. PEACOCK:

17        Q.  Do you have any understanding as to why you were

18    trained to stand the person up or put them in a seated

19    position?

10:25:32    20        A.  No, I do not.

21        Q.  At the academy were you trained that officers are

22    responsible for the health, safety, and welfare of people

23    in their custody?

24        A.  Yes.

10:26:01    25        Q.  And at the academy were you trained that keeping

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

J203165

1   a handcuffed individual in a prone position can negatively

2   affect the subject's breathing?

3            MR. SAIN:  Assumes facts not in evidence.

4            THE WITNESS:  I do not recall.

10:26:22   5   BY MR. PEACOCK:

6       Q.  Do you recall if the Riverside County Sheriff's

7   Department has ever provided you with any training as it

8   relates to -- as it relates to the handcuffed individual

9   in a prone position -- well, handcuffed -- can negative

10:26:44  10   affect their ability to breathe?

11            MR. SAIN:  Assumes facts not in evidence.

12            THE WITNESS:  I do not recall.

13   BY MR. PEACOCK:

14       Q.  At the academy were you trained that asphyxiation

10:27:06  15   can be magnified when an officer applies weight or

16   pressure to a handcuffed prone person?

17            MR. SAIN:  Assumes facts not in evidence.

18            THE WITNESS:  I do not recall.

19   BY MR. PEACOCK:

10:27:22  20       Q.  Has the Riverside County Sheriff's Department

21   ever provided you with any training, as it relates to the

22   idea that asphyxiation is magnified when officers apply

23   weight or pressure to a handcuffed, prone person?

24            MR. SAIN:  Assumes facts not in evidence.

10:27:41  25            THE WITNESS:  I do not recall.

**Kusar**  *Keeping Your Word Is Our Business ℠*                    20

1    Q.  But are they still resisting in some way?

2    A.  Yes.

3    Q.  And so, in your mind, what are some examples of

4  the way a person can be passively resisting?

10:40:46    5    A.  I don't know.

6    Q.  At the academy, were you trained that a punch to

7  the head is considered deadly force?

8         MR. SAIN:  Assumes facts not in evidence.

9  Argumentative.

10:41:07   10         THE WITNESS:  I don't understand your question.

11  BY MR. PEACOCK:

12    Q.  When you were at the academy, did you ever

13  receive any training instructing you that a punch to the

14  head is deadly force?

10:41:29   15         MR. SAIN:  Assumes facts not in evidence.

16  Argumentative.

17         THE WITNESS:  No.  We're trained -- no, we're

18  trained a punch in the head is not deadly force.

19  BY MR. PEACOCK:

10:41:47   20    Q.  And when you say "we are trained" does that

21  include subsequent training, after the academy, that you

22  received from the sheriff's department?

23    A.  Yes.

24    Q.  Has the Riverside County Sheriff's Department

10:42:01   25  ever provided you with any training as it relates to

**Kusar**  *Keeping Your Word Is Our Business ℠*

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

```
1    factors to consider before punching someone in the head?

2         A.   Yes.

3         Q.   And what were you trained in that regard?

4         A.   As deputies, we are trained to utilize -- we

10:42:34  5    utilize the equipment that they provide us, such as baton,

6    tasers, pepper spray, or our personal body weapons, like

7    punches to effect an arrest or overcome resistance.

8         Q.   And the training that you received as it relates

9    to punching an individual, did the training differentiate

10:42:53  10   at any -- in any way as it relates to punching someone in

11   the head than a different area of the body?

12        A.   No.

13        Q.   And what is your understanding of the Riverside

14   County Sheriff's Department policy that was in place on

10:43:16  15   October 7th, 2019, as far as when a deputy may use the

16   distraction punch?

17             MR. SAIN:  Asked and answered.

18             THE WITNESS:  My understanding is, I'm authorized

19   to use force from when in the perspective of a reasonable

10:43:34  20   officer, is objectively reasonable, during the totality of

21   circumstances.

22   BY MR. PEACOCK:

23        Q.   Is there -- is that your understanding of the

24   Riverside County Sheriff's Department policy that was in

10:43:47  25   place on October 7th, 2019, as it relates to when a peace
```

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

J203165

1    10:55?

2         MR. SAIN:  Sounds good.

3         THE VIDEOGRAPHER:  All right.  The time is

4    10:48 a.m.  We're off the record.

10:56:20    5    (OFF THE RECORD FROM 10:48 A.M. TO 10:56 A.M.)

6         THE VIDEOGRAPHER:  Okay.  The time is 10:56 a.m.

7    We're back on the record.

8    BY MR. PEACOCK:

9         Q.  During and throughout the deposition, I may be

10:56:37    10   referring to -- or may be referring to "the incident."

11   And you and I have an understanding that when I'm

12   referring to "the incident," I'm referring to the

13   circumstances surrounding the contact that you had with

14   Fernando Cruz on October 7th, 2019?

10:56:53    15        A.  Understood.

16        Q.  Okay.  Prior to our incident, did you have any

17   prior contacts with Mr. Cruz?

18        A.  Yes, I did.

19        Q.  And approximately how many contacts did you have

10:57:12    20   with Mr. Cruz prior to our incident?

21        A.  One time.

22        Q.  Do you recall when that contact was?

23        A.  Approximately, April or May 2019.

24        Q.  And I assume this contact involved you acting as

10:57:48    25   a peace officer in some sort of way?  This wasn't a social

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

```
 1    contact in any way?

 2         A.  No, I was a police officer at the time.

 3         Q.  Okay.  Were you responding to a call for service?

 4         A.  I was.

 5         Q.  Do you recall what the call for service stated or

 6    requested?

 7              MR. SAIN:  For the prior incident?

 8              MR. PEACOCK:  Correct.

 9              THE WITNESS:  The prior incident was a family

10    disturbance.

11    BY MR. PEACOCK:

12         Q.  And when you had this prior contact with

13    Mr. Cruz, did you respond to his home?

14         A.  Yes, I responded to the residence.

15         Q.  And is this the same residence that you responded

16    to during our incident?

17         A.  Yes.

18         Q.  Okay.  Do you recall who the reporting party was

19    for the prior incident?

20         A.  I do not recall.

21         Q.  Do you recall anything that was relayed to you on

22    dispatch or radio, other than a family disturbance, for

23    the prior incident?

24         A.  I do recall during that incident, Cruz was acting

25    erratically.
```

10:58:02 — line 5
10:58:19 — line 10
10:58:33 — line 15
10:58:46 — line 20
10:59:09 — line 25

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    Q.  And this was something that was relayed to you

2    via dispatch or radio, prior to arriving on the scene of

3    the prior incident?

4    A.  Yes.

10:59:25    5    Q.  Can you, kind of, walk me through what happened

6    after you arrived at the -- at Mr. Cruz's residence, on

7    the first contact you had with him?

8         MR. SAIN:  The prior incident?

9         MR. PEACOCK:  Correct.

10:59:39   10         THE WITNESS:  At the time I was -- during the

11    prior incident, I was on my field training program.  I

12    assigned to a field training officer.

13         We were dispatched to the residence, and we

14    contacted Mr. Cruz inside the residence.  And he

10:59:56   15    immediately saw our presence, and proceeded to evade us

16    and run -- jump out the family room window, and run into

17    the parking lot of the complex.

18    BY MR. PEACOCK:

19    Q.  Do you recall if there were any other Riverside

11:00:17   20    County Sheriff's Department personnel with you at that

21    point?

22    A.  Yes.

23    Q.  And who do you recall being there?

24    A.  My field training officer and another deputy.

11:00:32   25    Q.  Do you recall who that other deputy was?

**Kusar** Keeping Your Word Is Our Business ℠

37

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

J203165

```
 1    incident, do you recall what time your shift started?

 2         A.  At that time, I was assigned to graveyard, so it

 3    would be 5:00 o'clock p.m. to 5:00 o'clock a.m.

 4         Q.  And do you recall when your -- the shift was

 5    previous to that shift of our incident?

 6         A.  I believe it was the Wednesday prior.

 7         Q.  And it's my understanding that our incident

 8    occurred a little after 4:00 a.m.; is that your

 9    understanding?

10         A.  Yes, sir.

11         Q.  So it was toward the conclusion of your shift?

12         A.  Yes, sir.

13         Q.  Do you recall if you made any other arrests

14    during that shift?

15              MR. SAIN:  Discovery phase relevance.

16              THE WITNESS:  That I don't remember, no.

17    BY MR. PEACOCK:

18         Q.  And then, what was it that caused you to go to

19    the Cruz residence on the date of our incident?

20         A.  Just based off the information that was provided

21    to us by the dispatcher, and Cruz's behavior, I chose to

22    offer routine backup to my partner, who was Deputy Roach.

23         Q.  So you heard something over dispatch about an

24    incident taking place at the Cruz residence?

25         A.  Yes, sir.  Dispatch relayed the information into
```

11:17:07   5
11:17:35  10
11:17:48  15
11:18:04  20
11:18:38  25



Kusar  **Keeping Your Word Is Our Business℠**

48

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1    Q.   This is when the two of you are at the front of

2    entrance, shortly after you first arrived.

3    A.   I believe when Deputy Roach was initially

4    dispatched the call on that date and time, he informed

11:25:13    5    dispatch that he was involved in an incident with -- or

6    he -- Mr. Cruz is known to fight with law enforcement.

7    Q.   Do you recall anything else he said in that

8    regard?

9    A.   I don't.

11:25:30    10    Q.   Okay.  So after you met with Deputy Roach at the

11    front of the entrance, what did you do next?

12    A.   After we staged -- or after we met at the

13    entrance of the residence in our patrol vehicles, we drove

14    to the complex and contacted Fernando's mother, Mr. Cruz's

11:25:58    15    mother, who was standing out in front of the mobile

16    home -- or the residence.

17    Q.   All right.  Did you instruct her to go outside,

18    or was she already outside when you arrived?

19    A.   I believe she was already outside.

11:26:11    20    Q.   Okay.  And did you then exit your vehicle and

21    begin communicating with her?

22    A.   Correct.  At the time, when we drove our vehicles

23    in, I exited my vehicle, and spoke with her in front of

24    the residence.

11:26:23    25    Q.   And Deputy Roach was with you, when you were

Kusar  *Keeping Your Word Is Our Business* ℠

53

Case 5:20-cv-01138-MEMF-SP   Document 98-2   Filed 07/14/22   Page 99 of 203   Page ID #:2349

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

J203165

|  |  |  |
|---|---|---|
|  | 1 | communicating with her as well? |
|  | 2 | A.  Correct. |
|  | 3 | Q.  What do you recall her telling you at that time? |
|  | 4 | A.  When we contacted her in front of the residence, |
| 11:26:42 | 5 | I recall her explaining to my partner and I, Deputy Roach, |
|  | 6 | that her son, Mr. Cruz, was acting erratically. |
|  | 7 | He smoked -- or he smoked something out of a |
|  | 8 | glass pipe, but she wasn't able to specifically describe |
|  | 9 | what it was.  And that he was hitting walls, and that her |
| 11:27:03 | 10 | family was inside -- children were inside. |
|  | 11 | Actually, when I was speaking with her, I recall |
|  | 12 | seeing the family peeking out the curtain of the |
|  | 13 | residence, and I recall seeing children inside the |
|  | 14 | residence. |
| 11:27:20 | 15 | Q.  Okay.  So at that point in time, when you're |
|  | 16 | speaking with Mr. Cruz's mother, was it your understanding |
|  | 17 | that you were there to investigate a crime, or there to |
|  | 18 | assist someone with some sort of medical issue?  Did you |
|  | 19 | have any sort of idea as to what you were dealing with at |
| 11:27:37 | 20 | that point in time? |
|  | 21 | A.  Yes.  Based on the information she provided us, |
|  | 22 | he was possibly under the influence of a controlled |
|  | 23 | substance, or he was having a mental health crisis. |
|  | 24 | Q.  And so what information did she relay to you that |
| 11:27:55 | 25 | led you to believe that he been under the influence of |

Case 5:20-cv-01188-MEMF-SP Document 98-2   Filed 07/14/22   Page 100 of 203   Page ID #:2350

1203165
Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

```
               1    something?

               2        A.  She informed that he smoked out a glass pipe

               3    inside the kitchen of the residence.  Based on my training

               4    and experience, individuals that smoke out of a glass

   11:28:13     5    pipe, it's usually methamphetamine.

               6        Q.  Sure.  No, I understand that.  I'm just wondering

               7    if you could just list off the things that she told you

               8    during that first contact that led you to believe that he

               9    was possibly under the influence of something.

   11:28:30    10        So that obviously includes what you had just

              11    stated, but did she say anything else that led you to

              12    believe that he was under the influence of anything?

              13            MR. SAIN:  Asked and answered.

              14            THE WITNESS:  Yes, she did.  Based on his

   11:28:44    15    behavior, she said that he was acting erratically.  He was

              16    hitting walls.  And the information she provided about the

              17    glass pipe.

              18    BY MR. PEACOCK:

              19        Q.  And when you say "under the influence" are you

   11:28:57    20    referring to California Health & Safety Code 11550?

              21        A.  Yes.

              22        Q.  Prior to -- I'm sorry, strike that.

              23        At the conclusion of that initial contact you had

              24    with Mr. Cruz's mother, did you have reason to believe

   11:29:24    25    that Mr. Cruz was in violation of any crime, other than
```

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1  11550?

2      MR. SAIN:  Vague as to time.

3      MR. PEACOCK:  This is at the conclusion of his

4  conversation with Mr. Cruz's mother.

11:29:44  5      THE WITNESS:  After the conclusion of speaking

6  with Mr. Cruz's mother in the front of the property, and

7  the information she provided us, it appeared that, yes, he

8  was under the influence.  Or based on his actions, we

9  could have had a mentally ill individual, and we needed to

11:30:04  10  assist.

11  BY MR. PEACOCK:

12      Q.  And are you referring to a potential 5150?

13      A.  Yes.

14      Q.  And is that based off of Mr. -- is that based off

11:30:17  15  of the characterization of Mr. Cruz's behavior, provided

16  by his mother?

17      A.  Yes.  And the additional reporting party that

18  called in and said that Mr. Cruz was acting erratically as

19  well.

11:30:34  20      Q.  Prior to going to the -- prior to making entry

21  into Mr. Cruz's residence, did you speak with anyone in

22  the general area, other than Deputy Roach and his mother?

23  And when I say "his mother," Mr. Cruz's mother?

24      A.  Sorry, I don't understand your question.

11:30:56  25      Q.  Sure.  Prior to entering Mr. Cruz's residence,

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    detain -- once detained, assess the individual, and then

2    provide the proper care for -- the proper mental health

3    needs or proper care for the individual.

4        Q.   And what options are available to you, that

11:34:01   5    you're aware of at the time, as it relates to providing

6    someone with the proper mental health care that they need?

7        A.   There's department resources that we have.  And

8    also, there's a facility called ETS, Emergency Treatment

9    Services, where there's doctors that can assess and speak

11:34:23  10    with the individual.  And the professional can provide

11    them the proper care.

12        Q.   So when you made entry into the home, was it your

13    objective to detain Mr. Cruz?

14        A.   Yes.

11:34:42  15        Q.   Okay.  And for the reasons we've -- or for the

16    reasons you've already stated related to his -- strike

17    that.

18            For the reasons that his mother had relayed to

19    you, along with the reporting party?

11:34:57  20            MR. SAIN:  Misstates testimony.

21            THE WITNESS:  I'm sorry; I don't understand your

22    question.

23    BY MR. PEACOCK:

24        Q.   Why did you want to detain Mr. Cruz?

11:35:08  25        A.   Based on the information that was provided us, he

Kusar   Keeping Your Word Is Our Business ℠

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 103 of 203   Page ID
#:2353
1203165
Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1       A.   No.

2       Q.   So once you entered into the residence, what did

3    you do next?

4       A.   When I contacted Mr. Cruz on October 7th, at the

11:41:33  5   rear of the residence, the door was cracked open, and I

6    pushed the door open, or tested the door with our hand,

7    like we're trained.  The door was open, and Fernando Cruz

8    was sitting on the bed directly in front of us.

9       Q.   Could you see what he was doing, while he was

11:42:00  10  sitting on the bed?

11      A.   He was sitting on the bed, staring directly at

12   the door jamb with a blank stare.  His eyes were red, and

13   just a blank stare almost -- yeah, just a blank stare.

14      Q.   Okay.  And then what happened once you made

11:42:20  15  entry?

16      A.   We said -- we acknowledged Mr. Cruz.  My partner

17   and I acknowledged Mr. Cruz, and he immediately jumped up,

18   as if -- as if not knowing whether he was going to lunge

19   towards us.  And then he jumped up and immediately he

11:42:42  20  evaded us and ran away from us down the hallway of the

21   residence.

22      Q.   When he jumped up and evaded down the hallway,

23   could you see if he has anything in his hands?

24      A.   At that point, no.

11:42:58  25  Q.   Could you -- at that point, could you see his

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

```
 1    hands?

 2          A.  I don't recall.

 3          Q.  As he was evading down the hallway, did you ever

 4    see him reach into his pockets?

 5          A.  No.

 6          Q.  As he was evading down the hallway, did you ever

 7    see him reach into his waistband?

 8          A.  No.

 9          Q.  And when he stood up and began evading down the

10    hallway, did you hear him say anything?

11          A.  I recall him saying something of the sort that he

12    was going to kill himself or some kind of context about

13    death.

14          Q.  And when he jumped up and he evaded down the

15    hallway, at that point in time did you direct any orders

16    towards Mr. Cruz?

17          A.  That I don't remember.

18          Q.  And during that same time period, did you hear

19    Deputy Roach direct any orders to Mr. Cruz?

20          A.  Yes.  I recall him telling him to stop.

21          Q.  And did Mr. Cruz stop?

22          A.  No, he did not.

23          Q.  Did you ultimately make contact with Mr. Cruz in

24    that hallway area?

25          A.  Yes, I did.  Mr. Cruz tripped or fell in the
```

11:43:18    5
11:43:31   10
11:43:51   15
11:44:12   20
11:44:38   25

**Kusar** *Keeping Your Word Is Our Business ℠*

65

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    hallway, and that's where my -- my partner and I made

2    contact with him.

3        Q.  And when he tripped and fell, did you see if he

4    tripped and fell over something?  Was there something that

11:44:59    5    caused his trip and fall that you saw?

6        A.  There was a hole in the floor of the mobile home

7    or the residence.

8        Q.  So once he went down to the ground, this is when

9    you first made physical contact with Mr. Cruz during our

11:45:20    10   incident?

11       A.  I'm sorry; I didn't understand the question.

12       Q.  Sure.  Once Mr. Cruz went down to the ground in

13   the hallway, is immediately after that when you first made

14   physical contact with Mr. Cruz during our incident?

11:45:34    15       MR. SAIN:  Vague as to time.  We're talking about

16   right after the trip and fall?

17       MR. PEACOCK:  Yes.

18       THE WITNESS:  Right after -- excuse me, right

19   after the trip and fall, Mr. Cruz landed on his back.  And

11:45:44    20   I actually want to clarify, because in my interview I said

21   that I mounted Mr. Cruz during my initial contact, and in

22   fact, I did not.  I placed my knees on the side of him,

23   attempting to control his hands.

24   BY MR. PEACOCK:

11:46:02    25       Q.  So was that the first physical contact you made

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    first made physical contact with Mr. Cruz, immediately

2    after he had tripped and fell to the ground, did you

3    believe that you had probable cause to arrest Mr. Cruz for

4    any other offenses, other than what we've already

11:54:38    5    discussed?

6        A.  That I'm unaware of.  I -- I needed to conduct a

7    thorough investigation, but did not have the opportunity

8    to.

9        Q.  Okay.  So after Mr. Cruz had tripped and fell to

11:55:01    10    the ground, what did you immediately do after that?

11        A.  After Mr. Cruz tripped in the hallway on the

12    hole, he fell to his back, and fell onto his back, and I

13    proceeded to kneel down beside his right side, and

14    attempted to control his legs and arms, which were

11:55:34    15    flailing around and kicking to prevent harm to myself or

16    my partner.

17        Q.  And when you say "attempted to gain control of

18    his arms and legs," you were trying to grab his arms and

19    legs; is that accurate?

11:55:48    20        A.  Correct.  I was trying to grab his arms and legs

21    with my hands.

22        Q.  And you said he was -- you -- and you were making

23    physical contact with his right side; is that correct?

24            MR. SAIN:  Misstates testimony.

11:56:02    25            THE WITNESS:  I was kneeling down on his right

**Kusar**  Keeping Your Word Is Our Business℠

72

1   resist us.

2   BY MR. PEACOCK:

3        Q.   Were there any other crimes, up until that point,

4   that you believed you had the basis to arrest him for,

12:15:00   5   other than the crimes we have already discussed?

6        A.   Yes.  I believe -- even though he -- I believe

7   that he's actively resisting us, attempting battery on a

8   police officer, whether Mr. Cruz during -- during the

9   incident, he's flailing his hands around, he could

12:15:36   10   possibly harm myself or my partner.

11        I -- I -- was unable for me to determine whether

12   his hands flailing around, or his feet kicking around, was

13   intentional or not, even though we weren't struck by

14   Mr. Cruz, I couldn't determine whether he was doing it

12:15:55   15   intentionally.

16        Q.   Okay.  Up until the point in time in which he was

17   placed onto his stomach, were there any other crimes that

18   you felt you had probable cause to arrest him for, other

19   than what we've discussed?

12:16:15   20        A.   No.

21        Q.   Okay.  Up until the point in time in which

22   Mr. Cruz was placed onto his stomach, were you physically

23   injured in any way by Mr. Cruz?

24        A.   Not at that time, no.

12:16:41   25        Q.   To your knowledge, was Deputy Roach injured by

**Kusar**  *Keeping Your Word Is Our Business* ℠

84

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    Mr. Cruz, up until the point in time onto which he was

2    rolled onto his stomach?

3        A.   That I was unable to determine.  We still had

4    not -- we still did not have him secured to be able to

12:16:58   5    assess each other to make sure that we were okay.  At no

6    point did he communicate that he was physically injured,

7    but I couldn't tell whether he was or not, because Mr.

8    Cruz was still just --

9        Q.   So at the point in time in which Mr. Cruz is

12:17:13  10    placed onto his stomach, were you aware of any other law

11    enforcement personnel, who were inside of the Cruz

12    residence, other than yourself and Deputy Roach?

13        A.   At the point in time that we were still

14    physically -- at that time that Mr. Cruz was still

12:17:37  15    physically resisting, and the one hand handcuff was on,

16    no, there was no other deputy.

17        MR. SAIN:  Counsel, we've been going about

18    90 minutes.  Do you want to take a break anytime soon?

19    BY MR. PEACOCK:  Yeah, I was just going to finish with

12:17:49  20    that specific question, and then pose that question to

21    everyone.  But let me just get this last question out.

22        Q.   At the point in time in which he was flipped over

23    to his stomach, or turned onto his stomach, at that point

24    in time, were you aware of any other law enforcement

12:18:05  25    personnel inside of the Cruz home, other than yourself and

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1   additional handcuff onto Mr. Cruz's left wrist?

2       A.  After several minutes of struggling, we were

3   ultimately able to apply the -- Mr. -- Deputy Roach was

4   ultimately able to apply, and myself, were able to apply

12:32:57   5   the handcuffs and detain Mr. Cruz.

6       Q.  So was there several minutes of struggling from

7   the point in time in which he went into the living room or

8   family room to when the handcuff was placed on his left

9   wrist?

12:33:13   10       A.  In fact, there was.  From the time that he

11   originally fell in the hallway, and that was our initial

12   contact with him, there was approximately a three-minute

13   struggle to where we were able to get his hand placed in

14   one handcuff.  And from there, there was an additional

12:33:32   15   couple of minutes of struggle to where we couldn't -- so

16   we ended up in the hallway -- or excuse me, till we ended

17   up in the family room, and he was on his stomach.  And

18   then there was an additional, approximately two minutes of

19   struggle, to the point where we could get both hands

12:33:53   20   secured in handcuffs.

21       Q.  Can you describe what you characterize as a

22   struggle that took place in the family room, prior to

23   placing the handcuff on his left wrist?

24       MR. SAIN:  Asked and answered.

12:34:06   25       THE WITNESS:  He was still actively resisting.

Kusar   Keeping Your Word Is Our Business ℠

88

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01183-MEMF-SP   Document 98-2   Filed 07/14/22   Page 110 of 203   Page ID
#:2360

1203165

1          A.   No.

2          Q.   And did you happen to notice that the two

3     additional deputies arrived at the same time, or was there

4     one that arrived first, that you observed?

01:00:21  5          A.   That I'm unaware of.

6          Q.   I believe you stated after the two additional

7     deputies arrived on scene, I believe you said that they

8     relieved or something like that, and you were to further

9     assess the situation; is that generally accurate?

01:00:41  10         A.   Yes.  After -- I'm sorry.  After -- after the

11    deputies relieved us, we were able to further assess, and

12    regroup and catch our breath and secure equipment, and --

13    and evaluate whether we were injured as well.

14         Q.   And were you injured?

01:01:12  15            MR. SAIN:  Vague as to time.

16    BY MR. PEACOCK:

17         Q.   During that time period in which you evaluated

18    whether or not you were injured, did you determine whether

19    or not you were injured?

01:01:20  20         A.   I was not.

21         Q.   And it's my fault.  That's a poorly phrased

22    question.  Were you injured -- strike that.

23            Were you able to determine, one way or the other,

24    if you were injured?

01:01:41  25         A.   Yes.

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

```
 1              MR. SAIN:  Vague as to time.  Asked and answered.

 2    BY MR. PEACOCK:

 3         Q.  What did you ultimately determine?

 4         A.  I determined that I was not injured.

 5         Q.  Okay.  After the two additional deputies arrived

 6    on scene, did you observe any of the deputies punch

 7    Mr. Cruz?

 8         A.  No.

 9         Q.  Did you later learn that one of the additional

10    deputies punched Mr. Cruz?

11              MR. SAIN:  Objection to the extent it calls for

12    attorney-client privileged communication or related

13    information.  Try not to answer, other than non-privileged

14    information.

15              THE WITNESS:  I'm sorry.  I -- I...

16    BY MR. PEACOCK:

17         Q.  Let me ask it differently.

18              On the night of the incident, or I should say the

19    morning of the incident, the date of the incident,

20    October 7, 2019, on that date, did you ultimately learn

21    that one of the deputies had punched Mr. Cruz?

22         A.  Yes.

23         Q.  And how did you become aware of that?

24         A.  I became aware of that fact just as we were

25    debriefing the incident, which we do after every -- after
```

01:01:54    5
01:02:11   10
01:02:25   15
01:02:41   20
01:03:08   25

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    Q.   When you say "controlled his legs," were you just

2   holding them down to the ground?

3    A.   Um, at one point I utilized, I don't recall which

4   knee, but I placed it on his calf to prevent his legs from

02:11:56    5   lifting up in the air.  And I controlled his legs together

6   by applying pressure, and holding them together so the

7   hobble could go around his ankles.

8    Q.   So what part of his legs were your hands touching

9   at that point in time?

02:12:10    10    A.   Towards his ankles.

11    Q.   And then who was actually placing it in the

12   hobble?

13    A.   Deputy Roach.

14    Q.   Did you observe any other deputies placing him in

02:12:22    15   the hobble?

16    A.   No.

17    Q.   Did you see what the other two deputies were

18   doing, as Mr. Cruz is being placed in the hobble?

19    A.   No.  At this point, my back was towards -- my

02:12:35    20   back was towards the other two deputies that were

21   assisting Deputy Halbeisen and Deputy Gillison.  So my

22   focus was completely on controlling his legs and applying

23   the hobble.

24    Q.   Could you hear anything going on with the two

02:12:48    25   additional deputies and Mr. Cruz?

**Kusar**  *Keeping Your Word Is Our Business* ℠

119

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside
1203165

DECLARATION

1

2

3        I hereby declare I am the deponent in the within

4   matter; that I have read the foregoing deposition and know

5   the contents thereof, and I declare that the same is true

6   of my knowledge, except as to matters which are therein

7   stated upon my information or belief, and as to those

8   matters, I believe them to be true.

9        I declare under the penalties of perjury of the

10  State of California that the foregoing is true and

11  correct.

12       Executed this _____ day of _____, 2022,

13  at_____, _____.

14

15

16

17                    _____

18                    DEPUTY ANDREW LUCIFORA

19

20

21

22

23

24

25

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 114 of 203   Page ID #:2364

1203165

```
1                    REPORTER'S CERTIFICATE

2

3          I, Stacy L. Lozano, a Certified Shorthand

4     Reporter, holding a valid and current license issued by

5     the State of California, CSR No. 12831, do hereby certify:

6

7          That said proceedings were taken down by me in

8     shorthand at the time and place therein set forth and

9     thereafter transcribed into typewriting under my direction

10    and supervision.

11

12         I further certify that I am neither counsel for,

13    nor related to any party to said action, nor in any way

14    interested in the outcome thereof.

15

16         The dismantling, unsealing, or unbinding of the

17    original transcript will render the Reporter's certificate

18    null and void.

19

20         IN WITNESS WHEREOF, I have subscribed my name on

21    this date: March 15, 2022.

22

23

24         _____
               Stacy L. Lozano, CSR # 12831

25
```

EXHIBIT "E"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

SARAH CRUZ REAZA, individually    )
and as Successor-in-Interest of   )
Decedent Fernando Cruz, et al.,   )
                                  )
            Plaintiffs,           )
                                  )
vs.                               ) Case No. 5:20-CV-01188
                                  )           FMO (SPx)
COUNTY OF RIVERSIDE, RIVERSIDE    )
COUNTY SHERIFF'S DEPARTMENT and   )
DOES 1 through 20, Inclusive,     )
                                  )
            Defendants.           )
_____)

VIDEOCONFERENCE DEPOSITION OF GEOFFREY GILLISON

LOS ANGELES, CALIFORNIA

FRIDAY, MARCH 11, 2022

Reported by:  Donna Ball, CSR No. 11191

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside
Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 117 of 203   Page ID
#:2367
1200990

1                      UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

3

4    SARAH CRUZ REAZA, individually   )
     and as Successor-in-Interest of  )
5    Decedent Fernando Cruz, et al.,  )
                                      )
6                    Plaintiffs,      )
                                      )
7    vs.                              ) Case No. 5:20-CV-01188
                                      )            FMO (SPx)
8    COUNTY OF RIVERSIDE, RIVERSIDE   )
     COUNTY SHERIFF'S DEPARTMENT and  )
9    DOES 1 through 20, Inclusive,    )
                                      )
10                   Defendants.      )
     _____)

11

12

13

14

15

16   VIDEOCONFERENCING DEPOSITION OF GEOFFREY GILLISON,

17   taken on behalf of the Plaintiffs, at Los Angeles,

18   California, beginning at 11:06 a.m. and ending at

19   1:39 p.m, on Friday, March 11, 2022, before

20   Donna Ball, Certified Shorthand Reporter No. 11191

21

22

23

24

25

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside
Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 118 of 203   Page ID
#:2368
1200990

```
 1   APPEARANCES:

 2

 3   For the Plaintiffs:

 4            STEVEN A. LERMAN & ASSOCIATES, INC.
              BY:  STEVEN A. LERMAN, ESQ.
 5            Attorney at Law
              (Via Videoconference)
 6            6033 West Century Boulevard
              Suite 740
 7            Los Angeles, California 90045
              (310) 659-8166
 8

 9
     Co-Counsel For the Plaintiffs:
10
              LAW OFFICE OF GREGORY PEACOCK
11            BY:  GREGORY PEACOCK, ESQ.
              Attorney at Law
12            (Via Videoconference)
              4425 Jamboree Road
13            Suite 130
              Newport Beach, California 92660
14            (949) 292-7478

15

16   For the Defendants:

17            LEWIS, BRISBOIS BISGAARD & SMITH LLP
              BY:  TONY M. SAIN, ESQ.
18            633 West 5th Street
              Suite 4000
19            Los Angeles, California 90071
              (213) 250-1800
20

21   Also Present:

22            JENNY ESTES (VIDEOGRAPHER)
23

24

25
```

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01885-MEMF-SP   Document 98-2   Filed 07/14/22   Page 119 of 203   Page ID
#:2369

1200990

1       Q       When did you attend that academy?

2       A       In 2012.

3       Q       And when did you graduate from the academy?

4       A       I graduated in 2000- -- well, 2012.

11:17:55   5    Q       Are you currently employed by the Riverside

6    County Sheriff's Department?

7       A       Yes.

8       Q       And what is your title with the Riverside County

9    Sheriff's Department?

11:18:03   10   A       A deputy sheriff.

11      Q       Have you ever held any other job titles with the

12   Riverside County Sheriff's Department other than deputy

13   sheriff?

14      A       Correctional deputy.

11:18:18   15   Q       Any other job titles?

16      A       No.

17      Q       Have you ever worked for any other law

18   enforcement agency?

19      A       No.

11:18:30   20   Q       Have you ever been a field training officer?

21      A       No.

22      Q       Have you ever been a DRE or a drug recognition

23   expert?

24      A       No.

11:18:45   25   Q       While you were at the academy, were you trained

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside
1200990
Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 120 of 203   Page ID
#:2370

|  |  |
|---|---|
| 1 | on the various POST domains, Peace Officer Standards and |
| 2 | Training? |
| 3 | A    Yes. |
| 4 | Q    And that includes the learning domain on use of |
| 11:19:02    5 | force? |
| 6 | A    Yes. |
| 7 | Q    And while at the academy, did you receive |
| 8 | training on how to conduct yourself while testifying in |
| 9 | court? |
| 11:19:09    10 | MR. SAIN:  Objection.  Discovery phrase. |
| 11 | Relevance. |
| 12 | You can answer. |
| 13 | THE WITNESS:  Yes. |
| 14 | BY MR. PEACOCK: |
| 11:19:16    15 | Q    And this is going to be one of those examples |
| 16 | where I need your best estimate.  What's your best |
| 17 | estimate as to how many times you've testified in court? |
| 18 | And that could be anything from a traffic ticket to a |
| 19 | motion hearing or a trial. |
| 11:19:30    20 | A    My best estimate would be about ten times. |
| 21 | Q    Have you ever received any training at all as it |
| 22 | relates to the topic of positional asphyxiation? |
| 23 | MR. SAIN:  Assumes facts not in evidence. |
| 24 | THE WITNESS:  No. |
| 11:20:00    25 | / / / |

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

```
          1    BY MR. PEACOCK:
          2         Q    Have you ever received any training as it relates
          3    to placing suspects in prone restraints?
          4         A    Yes.
11:20:14  5         Q    And what have you been trained in that regard?
          6         A    I've been trained to place -- have subjects to be
          7    in a prone position simply because that's the safest
          8    position for a suspect to be in.  And once that subject is
          9    in that prone position and we figure out that there's no
11:20:41  10   longer a threat, that we will secure that individual and
          11   position him in a standing position and detain him at that
          12   point.
          13        Q    Is that training you've received from the
          14   Riverside County Sheriff's Department?
11:21:00  15        A    Yes.
          16        Q    Have you been trained that pressing down on the
          17   back of a prone suspect can cause suffocation?
          18             MR. SAIN:  Assumes facts not in evidence.
          19             THE WITNESS:  No.
11:21:16  20   BY MR. PEACOCK:
          21        Q    Have you been trained that pressing down on the
          22   back of a prone subject can make it difficult for that
          23   person to breathe?
          24             MR. SAIN:  Assumes facts not in evidence.
11:21:26  25             THE WITNESS:  No.
```

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01189-MEMF-SP   Document 98-2   Filed 07/14/22   Page 122 of 203   Page ID
#:2372

1200990

1    Incorrect legal standard.

2         THE WITNESS:  No.

3    BY MR. PEACOCK:

4         Q    Have you ever been trained to not punch a

11:24:24    5    passively resisting suspect in the head?

6         MR. SAIN:  Assumes facts not in evidence.

7    Incomplete hypothetical.  Unintelligible as phrased.

8         If you understand the question, you can answer.

9         THE WITNESS:  No.

11:24:46    10   BY MR. PEACOCK:

11        Q    What is your understanding of Riverside County

12   Sheriff's Department policy that was in place on October

13   7th, 2019, as it relates to when a peace officer may use a

14   distraction punch?

11:25:02    15        A    I don't know the policy verbatim.  However, it's

16   my understanding that I can use force, like a punch, when

17   it's objectively reasonable under the totality of the

18   circumstances.

19        Q    Have you ever been trained that it's unreasonable

11:25:27    20   to punch a passively resisting subject?

21        MR. SAIN:  Assumes facts not in evidence.

22   Incomplete hypothetical.  Vague.

23        THE WITNESS:  No.

24   BY MR. PEACOCK:

11:25:40    25        Q    Have you ever been trained to -- strike that.

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside
Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 123 of 203   Page ID
#:2373
1200990

```
 1   his feet.  He actually bucked my partners off a few times,

 2   and I could see that.  His mannerisms were completely

 3   bizarre.  So I knew at that time he needed to be

 4   controlled.  So I -- I stood to the left of his body and

11:41:37  5   placed my knee on the side, on the left side of his

 6   shoulder blade.  And I just was there until we can try to

 7   get him controlled.

 8        Q    When you first entered the residence and saw the

 9   deputies and Mr. Cruz, was Mr. Cruz handcuffed?

11:41:57  10      A    Yes.

11        Q    And was he on his stomach?

12        A    Yes, he was on his stomach with his face faced to

13   the right.

14        Q    And where did you see Deputy Lucifora in relation

11:42:15  15  to Mr. Cruz when you first entered the residence?

16        A    I don't recall.  I know that I -- all I know is

17   that the two deputies, Deputy Lucifora and Deputy Roach,

18   they were toward the -- toward the leg area.  But I'm not

19   sure where Deputy Roach or Deputy Lucifora was positioned

11:42:43  20  at that time.

21        Q    Do you recall if you entered the home prior to

22   Deputy Halbeisen entering the home?

23        A    No.  I followed after Deputy Halbeisen.

24        Q    When you first entered the home and saw the

11:42:56  25  deputies and Mr. Cruz, could you see if any of the
```

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01185-MEMF-SP   Document 98-2   Filed 07/14/22   Page 124 of 203   Page ID
#:2374

1200990

```
            1        A     No.

            2              MR. SAIN:  Assumes facts not in evidence.

            3   Misstates legal standard.

            4   BY MR. PEACOCK:

12:00:20    5        Q     Did you feel you had an opportunity to warn him

            6   that you would punch him prior to punching him?

            7              MR. SAIN:  Assumes facts not in evidence.

            8   Misstates legal standard.

            9              THE WITNESS:  No.

12:00:36   10   BY MR. PEACOCK:

           11        Q     And why is it that you don't believe you had an

           12   opportunity to warn Mr. Cruz that you were going to punch

           13   him?

           14        A     As deputy sheriff I don't need to warn someone

12:00:51   15   that I'm going to punch them.  I chose to punch Mr. Cruz

           16   because Mr. Cruz was very aggressive, incredibly strong,

           17   and he was unable to be controlled.

           18        Q     The punches were -- the purpose of the punches

           19   was to gain compliance; correct?

12:01:15   20        A     Yes.

           21        Q     What was it that you wanted him to comply with?

           22        A     With our commands.  We told him multiple times to

           23   stop resisting, to relax.  I even told him to relax.  I

           24   told him to chill.  You know, I told him to chill multiple

12:01:40   25   times.  I'm sure he understands what chill is.  And he did
```

Geoffrey Gillison

Case 5:20-cv-01185-MEMF-SP   Document 98-2   Filed 07/14/22   Page 125 of 203   Page ID
Sarah Cruz Reaza vs. County of Riverside   #:2375

1200990

```
            1      A    Correction.  I'm sorry.  After I punched Mr. Cruz

            2   in the face, I took out my baton, and used the butt of my

            3   baton and placed it on his left shoulder blade for also

            4   pain compliance.  Pressed down on his shoulder blade a

12:07:17    5   little bit for pain compliance.  He did not respond with

            6   that tool I used.

            7      Q    Approximately how long were you pressing the butt

            8   of the baton onto Mr. Cruz's shoulder blade?

            9      A    About two to three seconds.

12:07:46   10      Q    Are you trained to expect some sort of physical

           11   reaction from a subject after being on the receiving end

           12   of a use of force?

           13           MR. SAIN:  Vague.  Overbroad.  Unintelligible.

           14           THE WITNESS:  I don't understand your question.

12:08:04   15   BY MR. PEACOCK:

           16      Q    Sure.  Are you trained that a suspect will

           17   typically have a physical response after a use of force?

           18           MR. SAIN:  Vague.  Overbroad.

           19           THE WITNESS:  To my -- to my understanding -- I'm

12:08:36   20   sorry.  I really don't understand your question.

           21   BY MR. PEACOCK:

           22      Q    Are you trained that people will typically have a

           23   physical reaction while experiencing pain?

           24      A    Yes.  I mean, that's all part of the pain

12:08:58   25   compliance.  I mean, you know, when we use some sort of
```

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

```
 1   was acting extremely aggressive, and he was incredibly

 2   strong.

 3       Q    At any point in time, did you see Deputy

 4   Halbeisen's knee making contact with Mr. Cruz?

 5       A    I don't recall.

 6       Q    At any point in time, could you see any other

 7   deputy's knee making contact with Mr. Cruz?

 8       A    I don't recall.

 9       Q    And then at some point in time, did it appear to

10   you that Mr. Cruz was suffering from some sort of mental

11   emergency or a medical emergency?

12           MR. SAIN:  I'm sorry.  Objection.  Compound.

13           I think you just need to reask it, Counsel.

14           MR. PEACOCK:  Sure.

15       Q    At some point in time, did it appear to you that

16   Mr. Cruz was suffering from some sort of medical

17   emergency?

18       A    When I noticed Mr. Cruz was suffering from some

19   sort of medical emergency is when -- is when I was away

20   from Mr. Cruz, and I saw that he had some sort of brown

21   fluid coming out of his mouth.

22       Q    When you say "Away from Mr. Cruz," what do you

23   mean by that?

24       A    I was no longer positioned -- my knee was no

25   longer positioned on Mr. Cruz's left shoulder blade.  And
```

Timestamps (left margin):
12:14:51 — line 5
12:15:12 — line 10
12:15:28 — line 15
12:15:47 — line 20
12:16:08 — line 25

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

```
             1   I stood back from Mr. Cruz because at that time he was a

             2   little less aggressive.  Still aggressive, but not as

             3   much.  And he wasn't pushing himself up as much as he was

             4   when I first entered the residence.

12:16:28     5        Q    How much time had passed from when you removed

             6   the baton away from Mr. Cruz's back to when you stood up

             7   and stopped making contact with Mr. Cruz?

             8        A    About three minutes.

             9        Q    And during that three-minute time period, was

12:16:58    10   your knee making contact with Mr. Cruz's left shoulder

            11   blade?

            12        A    Yes.  After I used the baton, yes.

            13        Q    And why was it that you decided to stand up?

            14        A    Because the hobble was placed on Mr. Cruz at that

12:17:18    15   time.  And once the hobble is placed, you understand, it

            16   controlled or restrained his ankles.  Mr. Cruz was --

            17   wasn't -- he wasn't moving around as much.  I restrained

            18   him from trying to lift himself up, and he wasn't as

            19   aggressive as he was when the hobble wasn't placed on him.

12:17:44    20        Q    And then how much time had passed from when you

            21   stood up to when you noticed the brown liquid coming out

            22   of Mr. Cruz's mouth?

            23        A    About a minute, two minutes.

            24        Q    And after you had stood up, could you see if any

12:18:06    25   of the other deputies were making physical contact with
```

**Kusar** *Keeping Your Word Is Our Business ℠*

48

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 128 of 203   Page ID
#:2378
Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside
1200990

```
                1    Q    Sure.  So far you've said from arrival to first

                2    punch was about 10 seconds and that this 10 to 15 times of

                3    knee contact all occurred before the punches and that each

                4    of those 10 to 15 times lasted about 5 seconds.  If we add

   12:51:59     5    up 10 to 15 times 5 seconds each, we're going to get to 50

                6    to 75 seconds, which means one of two things, either one

                7    of these estimates is incorrect or the knee contacts

                8    lasted after the punching.  So I'm just trying to get from

                9    you which one is true?

   12:52:25    10    A    To my knowledge, I -- it felt like maybe five

               11    seconds, but it could have been shorter than that.  I'm

               12    not really sure.

               13    Q    After the punches, did your knee come off of

               14    Mr. Cruz in the same manner that it was coming off before

   12:52:48    15    the punches?

               16    A    Yes.

               17    Q    Okay.  And before the punches when your knee was

               18    coming off of Mr. Cruz, did it come off, completely off of

               19    his body?

   12:52:59    20    A    Yes.

               21    Q    Okay.  So in terms of the prepunching knee

               22    intervals, the amount of time that your knee was in

               23    contact with Mr. Cruz's back, did it vary to as much as

               24    five seconds per contact?

   12:53:20    25    A    Yes.
```

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 129 of 203   Page ID
#:2379

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

1

2                              DECLARANT

3

4

5               I hereby declare I am the deponent in the

6   within matter; that I have read the foregoing deposition

7   and know the contents thereof; and I declare that the same

8   is true of my knowledge, except as to the matters which

9   are therein stated upon my information or belief, and as

10  to those matters, I believe them to be true.

11              I declare under the penalties of perjury of

12  the State of California that the foregoing is true and

13  correct.

14

15

16

17              Executed this ____ day of _____,

18  2022, at _____ California.

19

20

21                          _____

22                          Geoffrey Gillison

23

24

25

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

```
 1                         REPORTER'S CERTIFICATE

 2

 3                    I, the undersigned Certified Shorthand

 4      Reporter holding a valid and current license issued by the

 5      State of California, do hereby certify:

 6

 7                    That said proceedings were taken down by me

 8      in shorthand at the time and place therein set forth and

 9      thereafter transcribed under my direction and supervision.

10

11                    I further certify that I am neither counsel

12      for nor related to any party to said action, nor in any

13      way interested in the outcome thereof.

14

15                    Before completion of the deposition, review

16      of the transcript was not requested.

17

18                    The dismantling, unsealing, or unbinding of

19      the original transcript will render the Reporter's

20      certificate null and void.

21

22                    IN WITNESS WHEREOF, I have subscribed my

23      name on this date:  March 15, 2022.

24                                   _____

25                                   Certified Shorthand Reporter
```

# EXHIBIT "F"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION


SARAH CRUZ REAZA, INDIVIDUALLY        )
AND AS SUCCESSOR-IN-INTEREST OF       )
DECEDENT FERNANDO CRUZ, FERNANDO      )
BAEZA, INDIVIDUALLY AND AS            )
SUCCESSOR-IN-INTEREST OF              )
DECEDENT FERNANDO CRUZ, ET AL.,       )
                                      )
          Plaintiffs,                 )
                                      )
     vs.                              ) No. 5:20-cv-01188 FMO
                                      )     (SPx)
COUNTY OF RIVERSIDE, RIVERSIDE        )
COUNTY SHERIFF'S DEPARTMENT AND       )
DOES 1 THROUGH 20, INCLUSIVE,         )
                                      )
          Defendants.                 )
_____)



VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION OF

DEPUTY TODD HALBEISEN

Wednesday, March 9th, 2022

San Bernardino, California


Reported by: JUSTIN R.A. MCPHAIL, CSR No. 13873

Case 5:20-cv-01188-MEMF-SP Document 98-2 Filed 07/14/22 Page 133 of 203 Page ID #:2383

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

1        UNITED STATES DISTRICT COURT

2       CENTRAL DISTRICT OF CALIFORNIA

3            EASTERN DIVISION

4

5   SARAH CRUZ REAZA, INDIVIDUALLY     )
    AND AS SUCCESSOR-IN-INTEREST OF    )
6   DECEDENT FERNANDO CRUZ, FERNANDO   )
    BAEZA, INDIVIDUALLY AND AS         )
7   SUCCESSOR-IN-INTEREST OF           )
    DECEDENT FERNANDO CRUZ, ET AL.,    )
8                                      )
            Plaintiffs,                )
9                                      )
       vs.                            ) No. 5:20-cv-01188 FMO
10                                     )     (SPx)
    COUNTY OF RIVERSIDE, RIVERSIDE     )
11  COUNTY SHERIFF'S DEPARTMENT AND    )
    DOES 1 THROUGH 20, INCLUSIVE,      )
12                                     )
            Defendants.                )
13  _____)

14

15

16       VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION

17       OF DEPUTY TODD HALBEISEN, the Defendant,

18       taken on behalf of Plaintiffs, via

19       Videoconferencing taken from San

20       Bernardino, California commencing at 10:02

21       a.m., Wednesday, March 9th, 2022, before

22       Justin R.A. McPhail, CSR No. 13873,

23       pursuant to Notice.

24

25

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

```
1   APPEARANCES OF COUNSEL:

2       FOR PLAINTIFFS: (Appearing Via Videoconference)

3           LAW OFFICES OF GREGORY PEACOCK
            BY:  GREGORY PEACOCK, ESQ.
4           4425 Jamboree Road
            Suite 130
5           Newport Beach, California 92660
            (949) 292-7478
6           Gregorypeacockesq@gmail.com

7       FOR PLAINTIFFS:

8           STEVEN A. LERMAN & ASSOCIATES, INC.
            BY:  NICHOLAS LERMAN, ESQ.
9           BY:  STEVEN LERMAN, ESQ.
            6033 West Century Boulevard
10          Suite 740
            Los Angeles, California 90045
11          (310) 659-8166
            Nlerman@lermanslaw.com
12          nmlerman0@yahoo.com

13
        FOR DEFENDANTS: (Appearing Via Videoconference)
14
            LEWIS BRISBOIS BISGAARD & SMITH, LLP
15          BY:  ANTHONY SAIN, ESQ.
            633 West 5th Street
16          Suite 4000
            Los Angeles, California 90071
17          (213) 358-6041
            Tony.sain@lewisbrisbois.com
18

19      Also Present:

20          Garrett Estorga, Videographer

21          Robert Roach, Defendant

22          Geoffrey Gillison, Defendant

23

24

25
```

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside
Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 135 of 203   Page ID
#:2385
1203168

```
10:14:33   1        A   Deputy sheriff.

           2        Q   Have you held any other titles, other than

           3   deputy sheriff, with the Riverside County Sheriff's

           4   Department?

10:14:44   5        A   No.

           6        Q   Have you ever been a field training

           7   officer?

           8        A   No.

           9        Q   In October of 2019, were you assigned to

10:14:58  10   Jurupa Valley station?

          11        A   Yes.

          12        Q   And while you were at the academy, was one

          13   of the learning domains that you were trained on the

          14   learning domain related to the use of force?

10:15:20  15        A   Yes.

          16        Q   Have you ever received any training at all

          17   as it relates to the topic of positional

          18   asphyxiation?

          19            MR. SAIN:  Objection.  Discovery phase.

10:15:33  20   Relevance.

          21            THE WITNESS:  No.

          22   BY MR. PEACOCK:

          23        Q   Have you ever received any training as it

          24   relates to the topic of the use of prone restraints?

10:15:51  25        A   Yes.  That's what we are trained on to
```

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

```
10:17:31    1   BY MR. PEACOCK:

            2       Q    Is that training that the Riverside County

            3   Sheriff's Department provided you with?

            4       A    Yes.

10:17:38    5       Q    And was that training in the academy?

            6       A    Yes.

            7       Q    And have you received any subsequent

            8   training from the -- after the academy in that

            9   regard?

10:17:52   10           MR. SAIN:  Can you reask the question,

           11   Counsel?

           12   BY MR. PEACOCK:

           13       Q    Sure.  Have you received any training since

           14   the academy in that regard that you've just

10:18:02   15   testified to?

           16       A    Yes.  We have our perishable skills that

           17   are done every approximately two years that we go to

           18   the academy for, and then we have training that is

           19   through the computer on some things similar to,

10:18:20   20   like, a learning domain or something that we read on

           21   the emails that we receive as well.

           22       Q    Were you trained to place them on their

           23   side, or to sit them up, or stand them up for the

           24   safety of the subject?

10:18:39   25           MR. SAIN:  Assumes facts not in evidence.
```

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 137 of 203   Page ID
#:2387

1203168

10:18:44    1           THE WITNESS:  No.

            2    BY MR. PEACOCK:

            3        Q   Were you ever trained that pressing down on

            4    the back of a prone subject can cause suffocation?

10:19:00    5           MR. SAIN:  Assumes facts not in evidence.

            6           THE WITNESS:  No.

            7    BY MR. PEACOCK:

            8        Q   Have you ever been trained that keeping a

            9    handcuffed individual in a prone position after

10:19:10   10    being handcuffed can negatively affect a subject's

           11    breathing and cause or contribute to positional

           12    asphyxiation?

           13           MR. SAIN:  Assumes facts not in evidence.

           14    Calls for an expert opinion.

10:19:29   15           THE WITNESS:  No.

           16    BY MR. PEACOCK:

           17        Q   Have you ever been trained that an oxygen

           18    deficit that can result in positional asphyxiation

           19    does not preclude speech?

10:19:43   20           MR. SAIN:  Assumes facts not in evidence.

           21    Calls for an expert opinion.

           22           THE WITNESS:  No.

           23    BY MR. PEACOCK:

           24        Q   Have you been trained that handcuffed

10:19:51   25    individuals are at a heightened risk of positional

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

| | | |
|---|---|---|
| 10:19:56 | 1 | asphyxiation even when they are not hogtied? |
| | 2 |       MR. SAIN:  Assumes facts not in evidence. |
| | 3 | Calls for an expert opinion. |
| | 4 |       THE WITNESS:  No. |
| 10:20:05 | 5 | BY MR. PEACOCK: |
| | 6 |     Q    Prior to October 7th, 2019, had you become |
| | 7 | aware of individuals who had died while in prone |
| | 8 | position involving the Riverside County Sheriff's |
| | 9 | Department? |
| 10:20:32 | 10 |       MR. SAIN:  Assumes facts not in evidence. |
| | 11 | Discovery phase.  Relevance.  Vague as phrased. |
| | 12 |       THE WITNESS:  I'm not aware of that, no. |
| | 13 | BY MR. PEACOCK: |
| | 14 |     Q    Prior to October 7th, 2019, had you become |
| 10:20:41 | 15 | aware of individuals who had died while in -- while |
| | 16 | in a prone position involving any other law |
| | 17 | enforcement agency? |
| | 18 |       MR. SAIN:  Same objections. |
| | 19 |       THE WITNESS:  I'm not aware of that, no. |
| 10:20:52 | 20 | BY MR. PEACOCK: |
| | 21 |     Q    Have you been trained that a punch to the |
| | 22 | head is considered deadly force? |
| | 23 |       MR. SAIN:  Assumes facts not in evidence. |
| | 24 | Argumentative. |
| 10:21:05 | 25 |       THE WITNESS:  Absolutely not. |

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside                                                1203168

```
10:48:04    1   BY MR. PEACOCK:

            2       Q   And was your knee placed above where his

            3   hands were located?

            4       A   No.  It was placed -- it didn't go farther

10:48:21    5   than the middle of his back.  Every once in a while

            6   I had to lean over, because Mr. Cruz would take his

            7   hands and rip them away from me and put them on the

            8   right side of his body on the ground, pushing

            9   himself up, so I would have to lean over and grab

10:48:38   10   his hands and try to control his hands again

           11   multiple times, but my knee was always in that same

           12   location.

           13       Q   Was your knee located between his hands and

           14   shoulder blades?

10:48:58   15       MR. SAIN:  In other words, were his hands

           16   lower on Mr. Cruz's body than the shoulder blades

           17   and his knee?

           18             (Simultaneous speaking.)

           19   BY MR. PEACOCK:

10:49:07   20       Q   I just want to know if his knee was placed

           21   in the area between his shoulder blades and where

           22   his hands were handcuffed behind his back.

           23       A   Yes, that would be accurate.

           24       Q   And why is it that you felt it was

10:49:25   25   necessary to place your knee on Mr. Cruz's back?
```

Deputy Todd Halbeisen                                                    1203168
Sarah Cruz Reaza vs. County of Riverside

```
10:50:49   1   and -- and lift himself up.  And even though I was

           2   kneeling next to him, he was still moving me and

           3   pushing myself back as well, and ripping his hands

           4   from mine, and doing this multiple times.

10:51:04   5   BY MR. PEACOCK:

           6       Q   So while your left knee was across or on

           7   Mr. Cruz's back, you were at the same time trying to

           8   hold on to his hands?

           9           MR. SAIN:  Objection.  Misstates prior

10:51:18  10   testimony about the knee being across the back.

          11           You can answer if you understand.

          12           THE WITNESS:  Yeah.  My knee was more on

          13   his left side of his back between his shoulder blade

          14   and just below his shoulder blade.  Was not across

10:51:37  15   his back.  It was just resting on there.  And my

          16   right knee was on the ground.

          17   BY MR. PEACOCK:

          18       Q   When your left knee was on Mr. Cruz's back,

          19   were you also at the same time trying to hold on to

10:51:53  20   his hands?

          21       A   Yes.

          22       Q   And why were you also trying to hold on to

          23   his hands when your knee was on his back?

          24       A   Because he was still moving around.  He was

10:52:15  25   still placing his hands on the ground or his right
```

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

| | | |
|---|---|---|
| 11:06:55 | 1 | observed caused you to believe that it would have |
| | 2 | been appropriate to punch Mr. Cruz in the head? |
| | 3 |         MR. SAIN:  Asked and answered. |
| | 4 |         THE WITNESS:  Yes. |
| 11:07:04 | 5 | BY MR. PEACOCK: |
| | 6 |    Q    When you -- during this incident, did you |
| | 7 | ever punch Mr. Cruz? |
| | 8 |    A    No. |
| | 9 |    Q    During this incident, did you consider |
| 11:07:17 | 10 | punching Mr. Cruz? |
| | 11 |         MR. SAIN:  Discovery phase.  Relevance. |
| | 12 |         THE WITNESS:  I mean, it's not something -- |
| | 13 | it was an option I had, but at that time I was just |
| | 14 | trying to control his hands and keep him from |
| 11:07:36 | 15 | getting up.  So that wasn't something I was doing |
| | 16 | right then and there, but it was an option. |
| | 17 | BY MR. PEACOCK: |
| | 18 |    Q    Did you consider that option at the time? |
| | 19 |    A    Yes. |
| 11:07:48 | 20 |    Q    And why is it that you choose not to punch |
| | 21 | Mr. Cruz? |
| | 22 |         MR. SAIN:  Misstates testimony. |
| | 23 |         THE WITNESS:  I didn't -- I didn't have an |
| | 24 | opportunity because I was trying to control his |
| 11:08:04 | 25 | hands and keep him on the ground; so it wasn't -- |

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

11:28:14  1        A    My total interaction with Mr. Cruz was

        2    about six to seven minutes, somewhere in there.  So

        3    I would say my knee was possibly -- I was kneeling

        4    next to him for maybe four of those minutes.

11:28:33  5        Q    So when you say "four of those minutes,"

        6    are you saying that your knee was making contact

        7    with his back for approximately four minutes?

        8        A    No.  I would say that was my total

        9    interaction with him.  My knee -- I was kneeling

11:28:51 10    down next to him, but there were times when my knee

       11    would not be making contact with him because he was

       12    either not moving around at that time or there

       13    was -- there wasn't a need for it at the time, so it

       14    wasn't continuous.

11:29:08 15        Q    So approximately four minutes your left

       16    knee was on and off making contact with Mr. Cruz's

       17    back?

       18        A    Yes, approximately.

       19        Q    During that four-minute period, was there

11:29:26 20    any -- was there ever a period of time of more than

       21    30 seconds that your knee was not making contact

       22    with his back?

       23            MR. SAIN:  Not making contact.

       24            THE WITNESS:  I didn't understand.  Can

11:29:39 25    you --

Kusar  **Keeping Your Word Is Our Business ℠**

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 143 of 203   Page ID
#:2393

1203168

| | | |
|---|---|---|
| 11:46:02 | 1 | BY MR. PEACOCK: |
| | 2 | Q   So at some point in time, did you notice |
| | 3 | that Mr. Cruz was suffering from some sort of |
| | 4 | medical emergency? |
| 11:46:33 | 5 | A   During the incident when he stopped |
| | 6 | fighting and stopped moving around, the Sergeant |
| | 7 | Kaffka noticed something.  He had called his name a |
| | 8 | couple of times and he didn't respond.  And he |
| | 9 | noticed -- he said is that blood coming from his |
| 11:46:55 | 10 | nose?  Is that blood on the ground?  And Deputy |
| | 11 | Gillison looked at it and said, yes, it's like a |
| | 12 | brownish red substance or, like, liquid or fluid. |
| | 13 | And then at that time, immediately, that's |
| | 14 | when I said, yeah, he's not moving anymore.  And I |
| 11:47:12 | 15 | placed him on his left side.  It could have been his |
| | 16 | right arm.  I grabbed that and pulled him onto his |
| | 17 | left side, and checked his pulse.  Said he did |
| | 18 | not -- I didn't feel a pulse.  And it didn't appear |
| | 19 | that he was breathing. |
| 11:47:31 | 20 | And within seconds is when we -- we saw |
| | 21 | that brown fluid to the time I rolled him on his |
| | 22 | side, checked his pulse.  And then when I said he |
| | 23 | wasn't breathing, we immediately -- or I then |
| | 24 | immediately put him on his back and started chest |
| 11:47:48 | 25 | compressions. |

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

```
11:49:20    1    BY MR. PEACOCK:

            2        Q   Once you pulled him over to his side, what

            3    did you do next?

            4            MR. SAIN:  Asked and answered.

11:49:27    5            THE WITNESS:  That's when I checked for a

            6    pulse, and looked at him to see if I could tell he

            7    was breathing.  It didn't appear that he was

            8    breathing, so I immediately put him on his back and

            9    started chest compressions.

11:49:41   10    BY MR. PEACOCK:

           11        Q   For approximately how long were you

           12    engaging in chest -- chest compressions?

           13        A   Yeah.  As soon as I rolled him to his back,

           14    the fire department was entering the residence, so I

11:50:00   15    started doing them.  It was about -- for about a

           16    minute.  Sixty -- approximately 60 to 65 seconds.

           17    And as soon as -- when I stopped, that's when one of

           18    the fire department personnel relieved me, and

           19    continued doing the chest compression.

11:50:18   20        Q   And once you were relieved from the -- by

           21    the fire department, what did you do next?

           22        A   The area where he was at was very small, so

           23    I started moving some objects out of the way so that

           24    the fire department could treat him and get to -- to

11:50:36   25    him in an easier way.  Moved things around.  They
```

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside
1203168

```
12:36:13    1                     EXAMINATION

            2   BY MR. PEACOCK:

            3        Q   While Mr. Cruz was handcuffed and in the

            4   hobble, did he engage in conduct that you

12:36:24    5   characterize as fighting?

            6        A   Yes.

            7        Q   And what conduct did you observe Mr. Cruz

            8   engage in while handcuffed and hobbled that you

            9   characterize as fighting?

12:36:53   10        A   Him still trying to get up, still trying to

           11   move around, still trying to get away from us.  All

           12   of those are effectively resisting, which would be

           13   fighting or getting to a point where he's trying to

           14   get away from us.

12:37:11   15        Q   Did you ever observe Mr. Cruz punch any of

           16   the deputies?

           17        A   No.

           18        Q   To your knowledge, were any of the deputies

           19   injured during this incident?

12:37:27   20        A   No, I'm not aware of anybody that was

           21   injured.

           22        Q   When you would take your knee off of

           23   Mr. Cruz's back during that four-minute period,

           24   would you increase the amount of pressure onto

12:37:44   25   Mr. Cruz's back to prevent him from continuing to
```

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

```
1                      DECLARATION OF WITNESS

2

3

4           I hereby declare I am the deponent in the

5      within matter; that I have read the foregoing deposition

6      and know the contents thereof, and I declare that the

7      same is true of my knowledge except as to the matters

8      which are therein stated upon my information or belief,

9      and as to those matters, I believe them to be true.

10          I declare under the penalties of perjury of

11     the State of California that the foregoing is true and

12     correct.

13          Executed this _____ day of _____, 2022,

14     at _____, _____.

15

16

17

18                    _____
                              Deputy Todd Halbeisen
19

20

21

22

23

24

25
```

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

```
1                        REPORTER'S CERTIFICATE

2

3              I, the undersigned Certified Shorthand

4     Reporter, holding a valid and current license issued by

5     the State of California, do hereby certify:

6              That said proceedings were taken down by me in

7     shorthand at the time and place therein set forth and

8     thereafter were transcribed under my direction and

9     supervision.

10             I further certify that I am neither counsel for

11    nor related to any party to said action, nor in any way

12    interested in the outcome thereof.

13             The dismantling, unsealing, or unbinding of the

14    original transcript will render the Reporter's

15    certificate null and void.

16             Before completion of the deposition, review of

17    the transcript [XX]was [ ]was not requested.

18

19             IN WITNESS WHEREOF, I have subscribed my name

20    on this date: March 14, 2022.

21

22    _____

23    JUSTIN R.A. MCPHAIL, CSR No. 13873

24

25
```

# EXHIBIT "G"

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 149 of 203   Page ID
#:2399

1213363

1

2

3

4

5

6                         AUDIO TRANSCRIPTION

7

8                     Sarah Cruz Reaza, et al
                                  vs
9                 County of Riverside, et al

10               Case Number:  5:20-CV-01188

11

12

13                  Body Worn Camera Video

14     Audio Labeled:  blu-ray disc video - final composite

15                        Length:  28:40

16                       October 7, 2019

17

18

19

20

21

22

23   Transcribed by:
     Natalie Fagan, CSR 13993
24

25

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

1         SARAH REAZA:  He went around back.

2         DEPUTY LUCIFORA:  Why -- why do you guys

3  continue allowing him here?

4         SARAH REAZA:  I know.  That's what I -- that's

5  why I'm gonna --

6         DEPUTY ROACH:  It's the third time I've been

7  here.

8         SARAH REAZA:  I'm tired already, too.  Because

9  I love him.  I talk to him, and I talk to him.  And I

10  said -- he's like, I'm not gonna go, mom.  And there --

11  he's been do it more recently more because he wasn't --

12  he was working.  He goes to work.

13         DEPUTY LUCIFORA:  Is there any weapons in the

14  house?

15         SARAH REAZA:  No.

16         DEPUTY LUCIFORA:  No guns?  Knives?  Anything

17  like that?

18         SARAH REAZA:  No.  Not any.

19         DEPUTY LUCIFORA:  Okay.  Who else in the house?

20         SARAH REAZA:  Just my grandkids -- my

21  granddaughter and my grandkids.

22         DEPUTY ROACH:  So -- so who called?  Did you

23  call us?

24         SARAH REAZA:  Yes.

25         DEPUTY ROACH:  Okay.  What did you call about?

Audio Transcription
Case 5:20-cv-01183-MEMF-SP   Document 98-2   Filed 07/14/22   Page 151 of 203   Page ID
#:2401
Sarah Cruz Reaza vs. County of Riverside
1213363

```
 1              FERNANDO CRUZ:  Please.  I don't care what they
 2    do.  That's why I didn't do shit.
 3              UNIDENTIFIED OFFICER:  All right.  What
 4    (indiscernible) --
 5              FERNANDO CRUZ:  No, mommy.
 6              UNIDENTIFIED OFFICER:  All right, you guys.
 7    Relax.
 8              FERNANDO CRUZ:  I let her go.
 9              DEPUTY LUCIFORA:  You good?
10              UNIDENTIFIED OFFICER:  We got him.  We got him.
11    We got him.
12              FERNANDO CRUZ:  I didn't do -- Ah.
13              UNIDENTIFIED OFFICER:  We got him.  We got him.
14              FERNANDO CRUZ:  I didn't say shit.  Okay.  Kill
15    me.
16              UNIDENTIFIED OFFICER:  You're gonna just stay
17    right here is what you are going to do.  Stay right
18    here.
19              DEPUTY LUCIFORA:  You good, bro?
20              UNIDENTIFIED OFFICER:  Don't even think about
21    getting up.  Don't even fucking think about it.
22              DEPUTY ROACH:  Hey.  Hey.  Hey.  Hey.
23              UNIDENTIFIED FEMALE:  Stop.
24              FERNANDO CRUZ:  No.
25              DEPUTY ROACH:  Don't think about it.
```

Case 5:20-cv-01183-MEMF-SP   Document 98-2   Filed 07/14/22   Page 152 of 203   Page ID
#:2402
Audio Transcription
Sarah Cruz Reaza vs. County of Riverside
1213363

```
 1   care about them.
 2           DEPUTY LUCIFORA:  Stop.
 3           FERNANDO CRUZ:  I'm going to die all for
 4   nothing.
 5           DEPUTY ROACH:  If only it were that easy.
 6           DEPUTY LUCIFORA:  Yep.
 7           FERNANDO CRUZ:  No.  I'm going to get -- please
 8   don't do it.
 9           DEPUTY LUCIFORA:  Stop.
10           FERNANDO CRUZ:  I'm gonna -- (indiscernible) --
11           UNIDENTIFIED OFFICER:  We should probably
12   (indiscernible) in the window so they wouldn't
13   (indiscernible) --
14           UNIDENTIFIED OFFICER:  Stop, man.
15           FERNANDO CRUZ:  I'm going to kill myself.  I
16   remember (indiscernible) --
17           UNIDENTIFIED OFFICER:  Do we have a hobble?
18           UNIDENTIFIED SPEAKER:  They're socking him in
19   the head.
20           UNIDENTIFIED OFFICER:  They might.
21           UNIDENTIFIED SPEAKER:  They socked him in the
22   head --
23           UNIDENTIFIED OFFICER:  Stop.
24           DEPUTY LUCIFORA:  The kids are watching.  Be
25   careful (indiscernible) --
```

Case 5:20-cv-01183-MEMF-SP   Document 98-2   Filed 07/14/22   Page 153 of 203   Page ID
#:2403

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

```
 1              UNIDENTIFIED OFFICER:  Yeah.  Make sure they --

 2              UNIDENTIFIED OFFICER:  They are watching

 3     through the window.

 4              UNIDENTIFIED FEMALE:  You're still socking him?

 5              DEPUTY LUCIFORA:  Stop resisting.

 6              FERNANDO CRUZ:  I can't.

 7              DEPUTY ROACH:  Stop.  Just relax.

 8              FERNANDO CRUZ:  I can't.

 9              DEPUTY ROACH:  Relax.

10              UNIDENTIFIED OFFICER:  Relax.

11              FERNANDO CRUZ:  I'll kill myself.

12              UNIDENTIFIED OFFICER:  Are you guys okay?

13              UNIDENTIFIED OFFICER:  Yeah.

14              DEPUTY LUCIFORA:  We're good.  We're good.

15              FERNANDO CRUZ:  (Indiscernible) --

16              UNIDENTIFIED OFFICER:  You guys are not injured

17     at all?

18              DEPUTY LUCIFORA:  No, sir.

19              UNIDENTIFIED OFFICER:  He's still -- he's still

20     resisting.

21              DEPUTY LUCIFORA:  Stop.

22              UNIDENTIFIED OFFICER:  He's still resisting.

23              FERNANDO CRUZ:  No.

24              DEPUTY LUCIFORA:  Stop resisting.

25              FERNANDO CRUZ:  I can't breathe.  It wasn't me.
```

Audio Transcription
Case 5:20-cv-01183-MEMF-SP   Document 98-2   Filed 07/14/22   Page 154 of 203   Page ID
Sarah Cruz Reaza vs. County of Riverside                    #:2404
1213363

```
 1          UNIDENTIFIED OFFICER:  Use that on the ribs.
 2   Use that on the ribs --
 3          UNIDENTIFIED OFFICER:  Huh.
 4          UNIDENTIFIED OFFICER:  -- if we need to.
 5          FERNANDO CRUZ:  I wouldn't do that.  I
 6   wouldn't --
 7          UNIDENTIFIED OFFICER:  He keeps resisting.
 8          UNIDENTIFIED OFFICER:  And let's wait for CDF,
 9   and we'll put him on a back board.
10          DEPUTY LUCIFORA:  Straight to it.
11          FERNANDO CRUZ:  It was them.  It was them.  It
12   was them.
13          UNIDENTIFIED OFFICER:  Yeah.  And CDF has the
14   backboard for this guy.
15          FERNANDO CRUZ:  (Indiscernible) --
16          DEPUTY LUCIFORA:  Stop.
17          FERNANDO CRUZ:  It was them.  It was -- it
18   was --
19          UNIDENTIFIED OFFICER:  They're -- it's locked
20   together.  He ain't going to get out.
21          FERNANDO CRUZ:  Ow.  I can't breathe.
22          UNIDENTIFIED OFFICER:  Hey, dude.  Just chill
23   out.  Chill out.
24          FERNANDO CRUZ:  Ow.  I -- I'll give you --
25          UNIDENTIFIED OFFICER:  Chill, man.
```

Audio Transcription

Case 5:20-cv-01185-MEMF-SP   Document 98-2   Filed 07/14/22   Page 155 of 203   Page ID
Sarah Cruz Reaza vs. County of Riverside                    #:2405                        1213363

1    UNIDENTIFIED OFFICER:  You got a --

2    UNIDENTIFIED OFFICER:  He's fine.

3    FERNANDO CRUZ:  I've got -- I'm not

4  (indiscernible) dirty.  I've never been.  I

5  understand --

6    UNIDENTIFIED OFFICER:  (Indiscernible)

7    DEPUTY LUCIFORA:  Yep.  Thank you.

8    FERNANDO CRUZ:  It was them.  I -- I'll kill

9  my --

10    DEPUTY LUCIFORA:  Dude, this TV fell on me.  I

11  couldn't get my legs out.

12    UNIDENTIFIED OFFICER:  Oh, shoot.  Yep.

13    DEPUTY ROACH:  I can't believe -- I couldn't

14  get him over.

15    DEPUTY LUCIFORA:  I couldn't get him over.

16    DEPUTY ROACH:  What the frick, dude.

17    DEPUTY LUCIFORA:  He's strong as an ox.

18    DEPUTY ROACH:  Well, when you are high on meth.

19    DEPUTY LUCIFORA:  Yeah.

20    FERNANDO CRUZ:  Oh -- oh --

21    UNIDENTIFIED OFFICER:  They are right around

22  the corner.

23    UNIDENTIFIED OFFICER:  Can you make sure they

24  bring a backboard, and then we'll just put him right on

25  to the backboard so that we can (indiscernible) him.

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

```
 1              FERNANDO CRUZ:  I can't.  You broke my neck.

 2              DEPUTY LUCIFORA:  Stop, man.  Stop moving.

 3              UNIDENTIFIED OFFICER:  Stop moving, dude.

 4              FERNANDO CRUZ:  I didn't kill them.

 5              DEPUTY LUCIFORA:  Stop.

 6              FERNANDO CRUZ:  Okay.  It (indiscernible) --

 7              UNIDENTIFIED OFFICER:  Stop moving, dude.

 8              FERNANDO CRUZ:  I -- I --

 9              DEPUTY LUCIFORA:  You good?

10              DEPUTY ROACH:  Yep.

11              UNIDENTIFIED OFFICER:  Relax.

12              UNIDENTIFIED OFFICER:  The backboard is en

13     route.

14              UNIDENTIFIED OFFICER:  You relaxed?

15              FERNANDO CRUZ:  Oh.

16              UNIDENTIFIED OFFICER:  You relaxed?  Are you

17     relaxed?

18              UNIDENTIFIED OFFICER:  No, he's not.

19              FERNANDO CRUZ:  No.

20              UNIDENTIFIED OFFICER:  No?  Relax.

21              UNIDENTIFIED OFFICER:  What's his name?

22              DEPUTY LUCIFORA:  Fernando.

23              DEPUTY ROACH:  Fernando Cruz.

24              UNIDENTIFIED OFFICER:  Fernando, settle down,

25     man.
```

Audio Transcription
Case 5:20-cv-01183-MEMF-SP   Document 98-2   Filed 07/14/22   Page 157 of 203   Page ID
Sarah Cruz Reaza vs. County of Riverside
#:2407
1213363

```
 1              FERNANDO CRUZ:  (Indiscernible) --

 2              UNIDENTIFIED OFFICER:  Settle down.  Fernando,

 3   settle down.

 4              FERNANDO CRUZ:  Oh.  (Indiscernible) --

 5              DEPUTY LUCIFORA:  Last time I was here we

 6   almost fell through that staircase, and when we carry

 7   down, be careful.

 8              UNIDENTIFIED OFFICER:  Yeah.  So that's why --

 9   we'll backboard him in here.

10              DEPUTY LUCIFORA:  I think it's genius.

11              UNIDENTIFIED OFFICER:  And bring him out on

12   that.  Is CDF here?

13              UNIDENTIFIED OFFICER:  Yeah.  They are just

14   right around the conner.

15              UNIDENTIFIED OFFICER:  All right.

16              UNIDENTIFIED OFFICER:  The guy had to go

17   (indiscernible) and go grab the backboard --

18              UNIDENTIFIED OFFICER:  Okay.

19              UNIDENTIFIED OFFICER:  Fernando?

20              DEPUTY LUCIFORA:  (Indiscernible).  You right

21   after him.  I couldn't get through all the crap on the

22   floor.

23              UNIDENTIFIED OFFICER:  Fernando?

24              DEPUTY ROACH:  Well, I initially wasn't going

25   to, but he tripped and fell.  So...
```

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

```
 1              UNIDENTIFIED OFFICER:  Oh, now there's blood

 2   coming out of his nose.

 3              UNIDENTIFIED OFFICER:  Fernando?

 4              UNIDENTIFIED OFFICER:  It's actually brown.

 5              UNIDENTIFIED OFFICER:  Is he still --

 6              UNIDENTIFIED OFFICER:  He's not fighting

 7   anymore.

 8              UNIDENTIFIED OFFICER:  Is he still breathing?

 9              UNIDENTIFIED OFFICER:  I don't think so.  Flip

10   him over.

11              UNIDENTIFIED OFFICER:  Should we roll him over

12   on the side?  Roll him over on the side?

13              UNIDENTIFIED OFFICER:  Oh, fuck.

14              UNIDENTIFIED OFFICER:  Are we good?

15              UNIDENTIFIED OFFICER:  No.  He's not

16   breathing.

17              UNIDENTIFIED OFFICER:  He's not breathing.

18              UNIDENTIFIED OFFICER:  All right.  Let's start

19   compressions.  Come on.

20              UNIDENTIFIED OFFICER:  Turn him over.  Turn him

21   over.

22              UNIDENTIFIED OFFICER:  Turn him over.  Turn him

23   over.

24              UNIDENTIFIED OFFICER:  Start compressions.

25              UNIDENTIFIED OFFICER:  Turn him over.
```

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

```
 1              REPORTER'S CERTIFICATE

 2              I, the undersigned, a Certified Shorthand

 3     Reporter of the State of California, do hereby certify:

 4              That the foregoing electronically-recorded

 5     proceedings were transcribed by me to the best of my

 6     ability.

 7              I further certify I am neither financially

 8     interested in the action nor a relative or employee of

 9     any attorney or party to this action.

10              IN WITNESS WHEREOF, I hereunto subscribe my

11     name this 8th day of July, 2022.

12

13

14

15     _____

16                         Natalie Fagan
                           CSR NO. 13993
17

18

19

20

21

22

23

24

25
```

**Kusar** *Keeping Your Word Is Our Business ℠*

EXHIBIT "H"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

SARAH CRUZ REAZA, INDIVIDUALLY AND )
AS SUCCESSOR-IN-INTEREST OF )
DECEDENT FERNANDO CRUZ, FERNANDO )
BAEZA, INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST OF DECEDENT )
FERNANDO CRUZ, FERNANDO CRUZ, JR., )
INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST OF DECEDENT )
FERNANDO CRUZ, FRANK FIDEL CRUZ, )
INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST OF DECEDENT )
FERNANDO CRUZ, CELESTE MARIE-CRUZ, )
INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST OF DECEDENT )
FERNANDO CRUZ, RAELENE MARIE CRUZ, )
INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST OF DECEDENT )
FERNANDO CRUZ, J.A., BY AND THROUGH)
GUARDIAN, JOANNE ALBIDREZ, I.C., BY)
AND THROUGH HIS GUARDIAN, JOANNE )
ALBIDREZ, L.M.C., BY AND THROUGH )
HER GUARDIAN JOANNE ALBIDREZ, )
)
)
PLAINTIFFS, )
)
VS. ) CASE NO. 5:20-CV-01188
) FMO(SPx)
COUNTY OF RIVERSIDE, RIVERSIDE )
COUNTY SHERIFF'S DEPARTMENT AND )
DOES 1 THROUGH 20, INCLUSIVE, )
)
DEFENDANTS. )
_____)

DEPOSITION OF JOLIE RODRIGUEZ, M.D.

TAKEN ON

TUESDAY, JANUARY 5, 2021

MELINDA S. WOMELSDORF, C.S.R. NO. 13124

```
1              UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

3

4                                        )
     SARAH CRUZ REAZA, INDIVIDUALLY AND )
5    AS SUCCESSOR-IN-INTEREST OF         )
     DECEDENT FERNANDO CRUZ, FERNANDO    )
6    BAEZA, INDIVIDUALLY AND AS          )
     SUCCESSOR-IN-INTEREST OF DECEDENT   )
7    FERNANDO CRUZ, FERNANDO CRUZ, JR., )
     INDIVIDUALLY AND AS                 )
8    SUCCESSOR-IN-INTEREST OF DECEDENT   )
     FERNANDO CRUZ, FRANK FIDEL CRUZ,    )
9    INDIVIDUALLY AND AS                 )
     SUCCESSOR-IN-INTEREST OF DECEDENT   )
10   FERNANDO CRUZ, CELESTE MARIE-CRUZ, )
     INDIVIDUALLY AND AS                 )
11   SUCCESSOR-IN-INTEREST OF DECEDENT   )
     FERNANDO CRUZ, RAELENE MARIE CRUZ, )
12   INDIVIDUALLY AND AS                 )
     SUCCESSOR-IN-INTEREST OF DECEDENT   )
13   FERNANDO CRUZ, J.A., BY AND THROUGH)
     GUARDIAN, JOANNE ALBIDREZ, I.C., BY)
14   AND THROUGH HIS GUARDIAN, JOANNE    )
     ALBIDREZ, L.M.C., BY AND THROUGH    )
15   HER GUARDIAN JOANNE ALBIDREZ,       )
                                         )
16                PLAINTIFFS,            )
                                         )
17        VS.                            ) CASE NO. 5:20-CV-01188
                                         )            FMO(SPx)
18   COUNTY OF RIVERSIDE, RIVERSIDE      )
     COUNTY SHERIFF'S DEPARTMENT AND     )
19   DOES 1 THROUGH 20, INCLUSIVE,       )
                                         )
20                DEFENDANTS.            )
     _____)
21

22

23           DEPOSITION OF JOLIE RODRIGUEZ, M.D., taken on

24   behalf of the Defendants, at 800 S. Redlands Avenue, Perris,

25   CA 92570, commencing at 1:14 P.M., Tuesday, January 5, 2021,
                                                          2
```

1    before Melinda S. Womelsdorf, Certified Shorthand Reporter,

2    License No. 13124, for the State of California, pursuant to

3    Notice.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
 1   APPEARANCES:

 2

 3   For the Plaintiffs, SARAH CRUZ REAZA, FERNANDO BAEZA,
     FERNANDO CRUZ JR., FRANK FIDEL CRUZ, CELESTE MARIE CRUZ,
 4   RAELENE MARIE CRUZ, J.A., I.C., AND LMC:

 5        STEVEN A. LERMAN & ASSOCIATES
          BY:  STEVEN A. LERMAN, ESQ.
 6        6033 W. Century Boulevard, Suite 740
          Los Angeles, California 90045
 7        (310) 659-8166
          nmlerman0@yahoo.com
 8        (Appearing via ZOOM Video Conference)

 9

10   For the Plaintiffs, SARAH CRUZ REAZA, FERNANDO BAEZA,
     FERNANDO CRUZ JR., FRANK FIDEL CRUZ, CELESTE MARIE CRUZ,
11   RAELENE MARIE CRUZ, J.A., I.C., AND LMC:

12        LAW OFFICE OF GREGORY PEACOCK
          BY:  GREGORY PEACOCK, ESQ.
13        4425 Jamboree Road, Suite 130
          Newport Beach, California 92660
14        (949) 292-7478
          gregorypeacockesq@gmail.com
15        (Appearing via ZOOM Video Conference)

16   For the Defendants, COUNTY OF RIVERSIDE:

17        MANNING & KASS
          ELLROD, RAMIREZ, TRESTER, LLP
18        BY:  TONY M. SAIN, ESQ.
          801 S. Figueroa Street, 15th Floor
19        Los Angeles, California 90017
          (213) 624-6900
20        tms@manningllp.com

21

22

23

24

25
                                                              4
```

1    collected at autopsy after he died, in order to have a

2    more accurate evaluation for that decedent, you would

3    prefer to have hospital blood; is that correct?

4         A    I would definitely prefer to have hospital

5    blood.

6         Q    So that's a yes?

7         A    Yes.

8         Q    Okay.  In terms of this autopsy, you said that

9    your general process is to review the coroner's

10   investigation report, review the photos of the scene.

11   Did you do that in connection with the Cruz autopsy?

12        A    Yes.

13        Q    And what was your understanding of the

14   incident involving Mr. Cruz and the law enforcement in

15   terms of what happened?

16        A    My understanding was that the police were

17   initially called to the home by a family member of

18   Mr. Cruz's because he was behaving erratically, and the

19   family member wanted law enforcement's assistance in

20   stopping his behavior.  Um, and that he was combative,

21   and that law enforcement was able to restrain him.  And

22   then he went unresponsive after.

23        Q    Anything else?

24        A    He was transported to the hospital, and he was

25   pronounced in the hospital.

                                                      54

1      Q     Did you have any other incident facts before

2   completing your autopsy?

3      A     No, I think that's it.

4      Q     And did you review any videos before

5   completing your autopsy?

6      A     No.

7      Q     Did you have any information -- before

8   completing your autopsy, did you have any information

9   about the relative position of any law enforcement

10  officers and deputies and Mr. Cruz during their attempts

11  to take him into custody?

12     A     No.

13     Q     So, for example, you don't know one way or the

14  other whether or not deputies were on top of him,

15  whether or not -- how they were restraining him, where

16  they were on his body.  You don't have any of that

17  information; is that correct?

18     A     Correct.

19     Q     You used the term "overdose."  As it pertains

20  to drugs, what does that term mean to you?

21     A     It means a person that is succumbing to or

22  under the influence of the toxic effects of a substance.

23     Q     When you say "succumbing to," what do you

24  mean?

25     A     Well, succumbing to, in a sense, if they died,

                                                         55

```
 1   State of California   )
                           )  SS.
 2   County of_____ )

 3

 4              I, Jolie Rodriguez, M.D., say I have read

 5   the foregoing deposition and declare under penalty of

 6   perjury that my answers as indicated are true and

 7   correct.

 8

 9

10   _____
            (DATE)
11

12

13

14                              _____
                                        (SIGNATURE)
15

16

17

18

19

20

21

22

23

24

25
                                                            170
```

```
 1   State of California    )
                            )  SS.
 2   County of San Bernardino)

 3

 4              I, MELINDA WOMELSDORF, Certified Shorthand

 5   Reporter, License No. 13124, for the State of

 6   California, do hereby certify:

 7              That, prior to being examined, the witness

 8   named in the foregoing deposition, to wit, Jolie

 9   Rodriguez, M.D., was by me duly sworn to testify the

10   truth, the whole truth and nothing but the truth;

11              That said deposition was taken down by me

12   in shorthand at the time and place therein named and

13   thereafter reduced to computer-aided transcription under

14   my direction;

15              That the foregoing transcript, as typed, is

16   a true record of the said proceedings.

17              I further certify that I am not interested

18   in the event of the action.

19              Witness my hand this 27th day of January,

20   2021.

21

22              _____

23              MELINDA WOMELSDORF, CSR. NO. 13124

24

25
```

                                                          171

EXHIBIT "I"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SARAH REAZA CRUZ,<br>individually and as<br>Successor-in-Interest of<br>Decedent Fernando Cruz,<br>et al.,<br><br>            Plaintiffs,<br><br>vs.<br><br>COUNTY OF RIVERSIDE, et al.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

5:20-CV-01188-MEMF-SP

DEPOSITION OF JEFFREY J. NOBLE

Taken on

Thursday, May 19, 2022

TAMARA D. WICKHAM
CSR NO. 4117, RMR, CRR

1                  UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3

4

5

6   SARAH REAZA CRUZ,          )
    individually and as        )
7   Successor-in-Interest of   )
    Decedent Fernando Cruz,    )
8   et al.,                    )
                               )
9        Plaintiffs,           )
                               )            Case No.
10  vs.                        )
                               )     5:20-CV-01188-MEMF-SP
11  COUNTY OF RIVERSIDE,       )
    et al.,                    )
12                             )
         Defendants.           )
13  _____)

14

15

16        DEPOSITION OF JEFFREY J. NOBLE, taken on behalf

17  of the defendants, taken at Lewis Brisbois, 633 West

18  Fifth Street, Suite 4000, Los Angeles, California,

19  commencing at 9:55 o'clock a.m. on Thursday, May 19,

20  2022, before TAMARA D. WICKHAM, CSR No. 4117, RMR, CRR,

21  pursuant to Notice.

22                         --o0o--

23

24

25

1    <u>APPEARANCES OF COUNSEL</u>

2

3    For the Plaintiffs:

4         NICHOLAS A. LERMAN
          Attorney at Law
5         6033 West Century Boulevard
          Suite 740
6         Los Angeles, California 90045
          (310) 659-8166
7         Nmlerman0@yahoo.com

8

     For the Defendants COUNTY OF RIVERSIDE, ROBERT ROACH,
9    ANDREW LUCIFORA, GEOFFREY GILLISON, and TODD HALBEISEN:

10        LEWIS, BRISBOIS, BISGAARD & SMITH
          BY:  TONY M. SAIN, ESQ.
11        633 West Fifth Street
          Suite 4000
12        Los Angeles, California 90071
          (213) 250-1800
13        Tony.sain@lewisbrisbois.com

14

     Also Present:

15        STEVEN A. LERMAN, Of Counsel for Plaintiff

16

17

18

19

20

21

22

23

24

25

1             MR. SAIN:  Counsel, we've heard you say it

2    three times, it doesn't make it true, okay?  So,

3    question --

4             MR. STEVEN LERMAN:  Trial advocacy.

5    BY MR. SAIN:

6     Q.  Question at page 31 of your report -- I'm sorry,

7    page 34, paragraph 31 of your report, you state that:

8    "No legitimate police training instructs officers to

9    strike subjects in the head or face.  Indeed, police

10   agencies commonly instruct officers to avoid such

11   strikes unless circumstances justify the application of

12   deadly force."

13        That's what you stated.

14    A.  Yes.

15    Q.  So your testimony is that a punch to the head is

16   deadly force?

17    A.  It can be, yes.

18    Q.  Okay.

19        Is it standard police practices that officers are

20   trained that punches to the head are to be considered as

21   deadly force?

22             MR. NICHOLAS LERMAN:  Objection.  Incomplete

23   hypothetical.

24             THE WITNESS:  Yes.  The POST standards list

25   serious bodily injury, and they define serious bodily

1    injury as loss of consciousness, a concussion, a bone

2    fracture, a wound requiring extensive suturing, and I

3    think serious disfigurement, as the types of injuries

4    that would qualify as serious bodily injury.

5            Deadly force is that amount of force that is

6    likely to cause death or serious bodily injury.  Any

7    reasonable police officer would know that a punch to the

8    face, particularly a punch to the face by a deputy who's

9    six four, weighs well over 200 pounds, was likely to

10   cause, you know, loss of consciousness, concussion, or a

11   bone fracture.  Thus, that type of, of strike would be

12   considered deadly force.

13           Police officers are trained there are

14   certain areas on the body that we don't, um, um, we

15   don't strike unless we're going to use deadly force,

16   including the face, the groin, the spine, the kidneys,

17   because of the likelihood of serious bodily injury.

18           So, yeah, I do believe that, you know, a

19   punch to the face could be considered deadly force.

20   BY MR. SAIN:

21       Q.  So are you familiar with the sport of boxing?

22       A.  Yes.

23       Q.  And when boxers box each other, is that

24   considered deadly force?

25           MR. NICHOLAS LERMAN:  Objection.  Incomplete

1    bare hand.

2              In this case, when somebody is prone, they

3    can't move their head, they're gonna -- their head's

4    going to be impacting on the ground, the surface, so

5    their head's not going to be allowed to, to rebound back

6    as it would, you know, in a competitive sport.

7              And they're not able to defend themselves,

8    so, you know, it's very different.

9    BY MR. SAIN:

10   Q.  So if you have two people in a bar fight and one

11   of them punched the other in the head and broke the

12   other one's nose, you would charge the puncher with

13   murder?

14             MR. NICHOLAS LERMAN:  Objection.  Incomplete

15   hypothetical.  Assumes facts not in evidence.  May be

16   outside of this expertise -- may be outside of this

17   expert's expertise.

18             THE WITNESS:  So would I charge him with

19   murder?  No, because he didn't die.

20   BY MR. SAIN:

21   Q.  But you would say that he used deadly force.

22   A.  The definition of deadly force for the police is

23   different, so when we are assessing deadly force by the

24   government, it's force likely to cause death or serious

25   bodily injury.  Criminal statutes are different.

1    with this case.

2         You may summarize your opinions, you may testify

3    however you want, but as long as I get the entire list

4    of opinions that you've formed in this case, then we are

5    good.

6         So at this time please tell me all the opinions

7    that you've formed in connection with this case.

8    A.  I'm of the opinion that Deputy Gillison used

9    excessive force when he punched Mr. Cruz, who was at

10   that time handcuffed with his hands behind his back,

11   lying in a prone position, with four deputies present

12   when he punched him to the head.

13        I am of the opinion that the Riverside County

14   Sheriff's Department does not offer any training nor do

15   they have any policies regarding the risks of head

16   strikes.

17        I'm of the opinion that the officers in this

18   case, the deputies in this case did not follow generally

19   accepted police practices by moving Mr. Cruz into what's

20   referred to as a recovery position by placing him on his

21   side or sitting him up after he was handcuffed, and

22   especially after he was handcuffed and hobbled for at

23   least three minutes after he's hobbled between the time

24   he was hobbled and the time that the deputies recognized

25   that he was no longer breathing.

1          And I'm of the opinion that the Riverside County

2     Sheriff's Department has no policies or training

3     regarding positional asphyxia or the need for its

4     deputies to take actions to place a handcuffed, secured

5     individual into a recovery position rather than leaving

6     them face down in a prone position to better facilitate

7     their breathing.

8          Q.   Anything else?

9          A.   No.

10         Q.   Kudos, because that is literally the most

11    efficient summary of opinions I've ever heard.  All

12    right.

13         Is it your testimony -- so that's four opinions.

14    Is it your testimony regarding the -- your opinion that

15    the punch to Fernando Cruz's head was excessive force,

16    by which I take it you mean to say that it was

17    inconsistent with standard police practices; correct?

18         A.   Yes.

19         Q.   So regarding your opinion that the punch by

20    Deputy Gillison to Cruz, the punch to the head was

21    excessive force or inconsistent with standard police

22    practices, is your opinion so based because you believe

23    that at that time Deputy Gillison was using deadly

24    force?

25         A.   I think regardless of whether or not it's

1    considered deadly force, it was excessive force.

2        Q.   Okay.  But what I'm trying to understand, and we

3    can break that up a little bit, but what I'm trying to

4    understand is, is the reason that you believe it was

5    excessive force, that it was unreasonable, inconsistent

6    with standard police practices, because you believe that

7    punch to the head was deadly force?

8        A.   Yeah, and again, I'll answer the same way.  I, I

9    believe that that -- a punch to the head in the manner

10   that Deputy Gillison admits that he did would be likely

11   to cause serious bodily injury and would be deadly

12   force.

13        But, even if it was not deadly force, I would

14   still believe that that amount of force was excessive.

15       Q.   According to standard police practices, based on

16   your review of the factual circumstances of this case,

17   is it your opinion that Deputy Gillison was required to

18   be presented with an immediate threat of death or great

19   bodily injury before he could issue the punches that he

20   did in this case?

21       A.   If the force is considered to be deadly force,

22   then, yes, he would have to be under the immediate

23   threat of death or serious bodily injury.

24        So if he was -- and he is -- he did not claim

25   that he was using deadly force nor was it his intent to

1    facts and circumstances are you relying upon to say that

2    it was still excessive force inconsistent with standard

3    police practices?

4            MR. NICHOLAS LERMAN:  Objection.  Incomplete

5    hypothetical.

6            THE WITNESS:  Because in the -- in these

7    circumstances, Mr. Cruz was handcuffed behind his back.

8    There were four deputies present.  Deputy Gillison says

9    that he punched Mr. Cruz two to three times to his

10   midback and once to the face.

11           I believe it was Deputy Roach who you can

12   hear on the body-worn camera video saying something

13   along the lines of, hey, hey, hey, and who said that he

14   was yelling at Deputy Gillison to stop punching

15   Mr. Cruz.  Roach claims later that he intended to tell

16   him to stop punching because he didn't feel that the

17   punches would be effective.

18           Miss Acuna said that she was watching this

19   and that she saw Deputy Gillison punch Mr. Cruz five to

20   six times to the head.

21           In a situation where an individual is

22   handcuffed, where nobody's claiming that he had a

23   weapon, that at most they're claiming that he is trying

24   to stand and may be moving his legs, no one claimed that

25   he kicked them or bit them or used any force other than

1    trying to stand up, a strike to the head in the manner

2    conducted by Deputy Gillison would be excessive.

3    BY MR. SAIN:

4    Q.  According to standard police practices, if a

5    subject who is in cuffs is resisting the officer by

6    trying to get up or get away, under standard police

7    practices in general, are officers permitted to deploy

8    pain compliance techniques to overcome that resistance?

9           MR. NICHOLAS LERMAN:  Objection.  Incomplete

10   hypothetical.  Assumes facts not in evidence.

11          THE WITNESS:  It would depend on what they

12   do.  So their use of force, you know, has to be

13   objectively reasonable and it has to be proportional to

14   the threat that they're facing.  So it really depends.

15   BY MR. SAIN:

16   Q.  So there are some circumstances under standard

17   police practices where a prone, cuffed subject who was

18   resisting the officer's restraint could be subject to

19   legitimate, lawful pain compliance techniques.

20          Would you agree with that?

21          MR. NICHOLAS LERMAN:  Objection.  Vague and

22   ambiguous as to circumstances, incomplete hypothetical,

23   assumes facts not in evidence.

24          THE WITNESS:  Again, it would really depend

25   on the specific circumstances.

1    they're handcuffed and hobbled, you know, the most they

2    could do in resisting is, you know, shaking their body

3    in some way.  They certainly can't cause any harm to any

4    officer.  And certainly when you have multiple police

5    officers at the scene, absolutely you would put them on

6    their side or sit them up.

7    BY MR. SAIN:

8        Q.  So I just want to make sure I understand this

9    point, because the objection seemed to interfere with

10   the question a little bit.

11          Are you saying that according to standard police

12   practices, a subject who was resisting, who has been

13   cuffed and has been hobbled, who is restrained in a

14   prone position, even if they're continuing to resist

15   after they've been cuffed, after they've been hobbled,

16   standard police practice requires them to be moved into

17   the recovery position?

18       A.  Yes.

19       Q.  You used the term "secured."  Are you using the

20   term "secured" and "controlled" interchangeably?

21       A.  Well, it depends on the circumstances.  You know,

22   so there could be a situation where somebody is secured

23   without being handcuffed, you know, and certainly in

24   this situation I'm talking about when he's being

25   handcuffed.

<u>DECLARATION OF DEPONENT</u>

I, JEFFREY J. NOBLE, say I have read the foregoing deposition and declare under penalty of perjury under the laws of the State of California and all federal laws that my answers as indicated are true and correct.

Dated this _____ day of _____, 20___, at _____,_____.

       (CITY)           (STATE)

_____
(Signature of deponent)

REPORTER'S CERTIFICATE

1

2

3      I, TAMARA D. WICKHAM, Certified Shorthand

4  Reporter No. 4117, do hereby certify:

5

6      That, prior to being examined, the witness named

7  in the foregoing deposition, to wit, JEFFREY J. NOBLE,

8  was duly sworn to testify the truth, the whole truth and

9  nothing but the truth;

10

11      That said deposition was taken down by me in

12  shorthand at the time and place therein named and

13  thereafter reduced to computer-aided transcription under

14  my direction.

15

16      That the foregoing transcript, as typed, is a

17  true record of the said proceedings.

18

19      I further certify that I am not interested in the

20  event of this action.

21

22      Executed at Los Angeles, California, this 25th

23  day of May, 2022.

24

25

_Tamara D. Wickham_

TAMARA D. WICKHAM, CSR No. 4117

NORMAN SCHALL & ASSOCIATES————139

(800) 734-8838

1        <u>REPORTER'S CERTIFIED COPY CERTIFICATE</u>

2

3        I, TAMARA D. WICKHAM, CSR NO. 4117, a Certified

4    Shorthand Reporter, hereby certify that the attached

5    transcript is a correct copy of the original transcript

6    of the testimony of JEFFREY J. NOBLE, taken before me on

7    the 19th day of May, 2022, as thereon stated.

8        I declare under penalty of perjury that the

9    foregoing is true and correct.

10       Executed at Los Angeles, California, this 25th

11   day of May, 2022.

12                              *Tamara D. Wickham*

13                          TAMARA D. WICKHAM, CSR NO. 4117

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT "J"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SARAH REAZA CRUZ, individually and as Successor-in-Interest of Decedent Fernando Cruz, et al., ) ) ) ) ) )<br><br>          Plaintiff,    )<br>                       )<br>vs.                    )<br>                       )<br>COUNTY OF RIVERSIDE, et al.,  )<br>                       )<br>          Defendants.  )<br>_____) | Case No.<br><br>5:20-CV-01188-MEMF-SP |

DEPOSITION OF MARVIN PIETRUSZKA, M.D.

Taken on

Wednesday, May 18, 2022

TAMARA D. WICKHAM
CSR NO. 4117, RMR, CRR

1                    UNITED STATES DISTRICT COURT

2                   CENTRAL DISTRICT OF CALIFORNIA

3

4

5

6    SARAH REAZA CRUZ,          )
     individually and as        )
7    Successor-in-Interest of   )
     Decedent Fernando Cruz,    )
8    et al.,                    )
                                )
9          Plaintiff,           )
                                )              Case No.
10   vs.                        )
                                )      5:20-CV-01188-MEMF-SP
11   COUNTY OF RIVERSIDE,       )
     et al.,                    )
12                              )
           Defendants.          )
13   _____)

14

15

16         DEPOSITION OF MARVIN PIETRUSZKA, M.D., taken on

17   behalf of the, defendants, taken at 633 West Fifth

18   Street, Suite 4000, Los Angeles, California, commencing

19   at 12:55 o'clock p.m. on Wednesday, May 18, 2022, before

20   TAMARA D. WICKHAM, CSR No. 4117, RMR, CRR, pursuant to

21   Notice.

22                            --oOo--

23

24

25

```
 1   APPEARANCES OF COUNSEL

 2

 3   For the Plaintiff:

 4        NICHOLAS A. LERMAN
          Attorney at Law
 5        6033 West Century Boulevard
          Suite 740
 6        Los Angeles, California 90045
          (310) 659-8166
 7        Nmlerman0@yahoo.com

 8

     For the Defendants COUNTY OF RIVERSIDE, ROBERT ROACH,
 9   ANDREW LUCIFORA, GEOFFREY GILLISON, and TODD HALBEISEN:

10        LEWIS, BRISBOIS, BISGAARD & SMITH
          BY:  TONY M. SAIN, ESQ.
11        633 West Fifth Street
          Suite 4000
12        Los Angeles, California 90071
          (213) 250-1800
13        Tony.sain@lewisbrisbois.com

14
     Also Present:
15
          STEVEN A. LERMAN, Of Counsel for Plaintiff
16

17

18

19

20

21

22

23

24

25
```

1    case.

2         You and I have done this before.  I have no

3    particular preference in how you do it, if you want to

4    summarize, if you want to read key quotes, if you

5    want -- however you want to do that, but what I'm

6    looking for is the complete list of opinions that you've

7    formed in this case.

8         Do you understand me, Doc?

9    A.   Yes.

10   Q.   So please tell me now, please list all the

11   opinions you've formed in connection with this case.

12   A.   Basically we have an individual, Mr.,

13   Mr. Fernando Cruz, 39 years old, has a long-standing

14   history of bronchial asthma.  He has -- suffers from

15   schizophrenia.  He takes a number of medications for his

16   mental condition.  He's also a chronic user of

17   methamphetamine.

18        He is in his home.  Does not appear to be in any

19   state of delirium.  He's able to answer questions when

20   police officers come.  He speaks coherently.  He's

21   conscious; he's oriented; his perception may be, may be

22   not a hundred percent complete.  He has fears.

23        Not possible to differentiate entirely between

24   his preexisting psychiatric condition and, and the

25   specific effects of methamphetamine as they contribute

1   to his demeanor.

2       I do not believe that Mr. Cruz was even

3   significantly intoxicated by methamphetamine.

4   Methamphetamine was encountered in his blood at a level

5   that is not unusual for chronic users of

6   methamphetamine.  The level was low, and it was at the

7   lowest -- close to the lowest limit of, of toxicity.

8       However, I don't believe that he was exhibiting

9   symptoms of toxicity.  Individuals who are

10  methamphetamine users frequently demonstrate symptoms of

11  hyperactivity; violence; teeth grinding; sweating;

12  muscle tremors; bizarre behavior; paranoia; seizures;

13  unconsciousness.

14      From the description of the police officers as

15  they arrived, it did not appear that he was having

16  symptoms of methamphetamine toxicity.  His response to

17  the police officers could reasonably be consistent with

18  his preexisting mental disorder.  He suffers from

19  schizophrenia, and when he was approached by police

20  officers, he demonstrated symptoms of paranoia.

21      His response to police officers was not, not

22  unusual for an individual with a serious mental

23  condition.  I believe that police officers described him

24  as not being combative or, or aggressive towards,

25  towards them, but that he ran away.  He was able to

1    inhaler, as I said.

2          So, with that history, and the information that I

3    found in my own autopsy that I performed, the second

4    autopsy, I identified evidence of emphysema in his lung.

5    So that combination of bronchial asthma and emphysema,

6    and emphysema is, is on a spectrum with asthma, if

7    bronchitis is the earliest part of the spectrum and

8    asthma is somewhere in the middle of the spectrum,

9    emphysema is the end of the spectrum.

10         He had lung disease resulting from his asthma.

11   Asthmatics develop emphysema over time.

12         So the next opinion is that this struggle, this

13   struggle caused -- and placing him in the prone position

14   and, and just all of the trauma to his body that's

15   evidenced by bruises and, and pressure on his chest and

16   lying on his abdomen, especially with his weight, I

17   believe that the weight actually might be wrong.  I saw

18   in one place his weight was close to 249 pounds.  He

19   appears from the photographs to be a lot, a lot heavier

20   than, than the 198 or so pounds that, that was listed.

21         Lying on the ground, just lying on the ground

22   makes it difficult to breathe.  With someone pressing on

23   your chest with a knee, that makes it even harder.

24         I believe that his overall respiratory capacity

25   was diminished because of his asthma.  The struggle, the

```
 1   positioning, the pressure on, on his thorax, keeping him
 2   in a down position, and all -- and the -- the struggle
 3   itself, would have aggravated his asthma.  Because of,
 4   of the type of asthma that he had, exercise would worsen
 5   his asthma, ultimately resulting in asphyxia and an
 6   asphyxial type death.
 7        This opinion opposes the opinion of the coroner,
 8   who believes it was methamphetamine.  However, the next
 9   opinion I have is that coroners frequently list
10   methamphetamine toxicity as a cause of death.  I believe
11   it's because it's -- it is the intention of the coroner
12   to expedite the release of the body, and this is a
13   simple way to expedite the release of the body.  They
14   find methamphetamine, they assume that methamphetamine
15   had played some role.
16        Most certainly the coroner did not have access to
17   hardly any information when, when she was completing the
18   autopsy.  There was much more information, she didn't
19   have access to it, and definitely she didn't realize
20   that there was a history of asthma dating back to
21   childhood and ongoing for all those years.
22        The literature that I brought with me supports my
23   opinions, if I can look at that again.  Is that okay?
24   Q.  Sure, but right now I'm just trying to get the
25   list of the opinions so --
```

1    A.  This was told to me by the mom.

2    Q.  Move to strike as nonresponsive.

3        My question was --

4    A.  No, no, there were not.

5    Q.  So let's get a clean record, please.

6        Is there any medical record that you reviewed

7    that documented that Fernando Cruz was suffering from

8    schizophrenia?

9    A.  No.

10   Q.  Was there any medical record that you reviewed

11   that documented that Fernando Cruz was suffering from

12   paranoia?

13   A.  No.

14   Q.  You used the term "hyperactivity."  What does

15   that mean to you?

16   A.  Hyperactivity, pacing about; moving his arms

17   about; speaking rapidly.  That's it essentially.

18   Q.  Thank you.

19       And your opinion was in part based on your

20   observation or your review of the records and

21   recordings; you did not perceive Fernando Cruz's

22   experiencing or exhibiting any hyperactivity; is that

23   correct?

24   A.  No.  Prior to the struggle, I did not gather that

25   he was having any symptoms of hyperactivity.

1                    DECLARATION OF DEPONENT

2

3        I, MARVIN PIETRUSZKA, M.D., say I have read the

4    foregoing deposition and declare under penalty of

5    perjury under the laws of the State of California and

6    all federal laws that my answers as indicated are true

7    and correct.

8

9        Dated this _____ day of _____, 20___,

10   at _____,_____.

11          (CITY)                (STATE)

12

13                      _____

14                      (Signature of deponent)

15

16

17

18

19

20

21

22

23

24

25

<u>REPORTER'S CERTIFICATE</u>

1

2

3      I, TAMARA D. WICKHAM, Certified Shorthand

4 Reporter No. 4117, do hereby certify:

5

6      That, prior to being examined, the witness named

7 in the foregoing deposition, to wit, MARVIN PIETRUSZKA,

8 M.D., was duly sworn to testify the truth, the whole

9 truth and nothing but the truth;

10

11      That said deposition was taken down by me in

12 shorthand at the time and place therein named and

13 thereafter reduced to computer-aided transcription under

14 my direction.

15

16      That the foregoing transcript, as typed, is a

17 true record of the said proceedings.

18

19      I further certify that I am not interested in the

20 event of this action.

21

22      Executed at Los Angeles, California, this 25th

23 day of May, 2022.

24      _____*Tamara D. Wickham*_____
        TAMARA D. WICKHAM, CSR No. 4117

25

1                    <u>REPORTER'S CERTIFIED COPY</u>

2

3           I, TAMARA D. WICKHAM, CSR NO. 4117, a Certified

4    Shorthand Reporter, hereby certify that the attached

5    transcript is a correct copy of the original transcript

6    of the testimony of MARVIN PIETRUSZKA, M.D., taken

7    before me on the 18th day of May, 2022, as thereon

8    stated.

9           I declare under penalty of perjury that the

10   foregoing is true and correct.

11          Executed at Los Angeles, California, this 25th

12   day of May, 2022.

13                            _____*Tamara D. Wickham*_____

14                            TAMARA D. WICKHAM, CSR NO. 4117

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT "K"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| SARAH CRUZ REAZA, individually and as ) <br> Successor-in-Interest of Decedent ) <br> Fernando Cruz; FERNANDO BAEZA, ) <br> individually and as Successor-in- ) <br> Interest of Decedent Fernando Cruz; ) <br> FERNANDO CRUZ, JR., individually and ) <br> as Successor-in-Interest of Decedent ) <br> Fernando Cruz; FRANK FIDEL CRUZ, ) <br> individually and as Successor-in- ) <br> Interest of Decedent Fernando Cruz; ) <br> CELESTE MARIE CRUZ, individually and ) <br> as Successor-in-Interest of Decedent ) <br> Fernando Cruz; RAELENE MARIE CRUZ, ) <br> individually and as Successor-in- ) <br> Interest of Decedent Fernando Cruz; ) <br> J.A., by and through his guardian, ) <br> JOANNE ALBIDREZ; I.C., by and through ) <br> his guardian, JOANNE ALBIDREZ; L.M.C, ) <br> by and through her guardian, JOANNE ) <br> ALBIDREZ, ) <br> ) <br>       Plaintiffs, ) <br> ) <br>    vs. ) <br> ) <br> COUNTY OF RIVERSIDE; RIVERSIDE COUNTY ) <br> SHERIFF'S DEPARTMENT; and DOES 1 ) <br> through 20, inclusive, ) <br> ) <br>       Defendants. ) <br> _____) | Case No.: <br> 5:20-CV-01188 <br> FMO (SPx) |

VIDEOTAPED DEPOSITION OF
COMMANDER STEVEN LURIE
FRIDAY, MAY 13, 2022
LOS ANGELES, CALIFORNIA

REPORTED BY:  Amy J. Marsden, CSR No. 13067

Commander Steven Lurie
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 199 of 203   Page ID
#:2449

1207365

1                    UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

3

4    SARAH CRUZ REAZA, individually and as  )  Case No.:
     Successor-in-Interest of Decedent       )  5:20-CV-01188
5    Fernando Cruz; FERNANDO BAEZA,          )  FMO (SPx)
     individually and as Successor-in-       )
6    Interest of Decedent Fernando Cruz;     )
     FERNANDO CRUZ, JR., individually and    )
7    as Successor-in-Interest of Decedent    )
     Fernando Cruz; FRANK FIDEL CRUZ,        )
8    individually and as Successor-in-       )
     Interest of Decedent Fernando Cruz;     )
9    CELESTE MARIE CRUZ, individually and    )
     as Successor-in-Interest of Decedent    )
10   Fernando Cruz; RAELENE MARIE CRUZ,      )
     individually and as Successor-in-       )
11   Interest of Decedent Fernando Cruz;     )
     J.A., by and through his guardian,      )
12   JOANNE ALBIDREZ; I.C., by and through   )
     his guardian, JOANNE ALBIDREZ; L.M.C,   )
13   by and through her guardian, JOANNE     )
     ALBIDREZ,                               )
14                                           )
                           Plaintiffs,       )
15                                           )
             vs.                             )
16                                           )
     COUNTY OF RIVERSIDE; RIVERSIDE COUNTY   )
17   SHERIFF'S DEPARTMENT; and DOES 1        )
     through 20, inclusive,                  )
18                                           )
                           Defendants.       )
19   _____ )

20

21          Videotaped deposition of COMMANDER STEVEN
     LURIE, a witness, taken on behalf of the plaintiffs, at
22   Sheraton Gateway, 6101 West Century Boulevard,
     Conference Room 210, Los Angeles, California,
23   commencing at the hour of 12:13 p.m., on Friday,
     May 13, 2022, before Amy J. Marsden, CSR No. 13067,
24   pursuant to Notice of Taking Deposition.

25

Commander Steven Lurie
Sarah Cruz Reaza vs. County of Riverside
1207365

```
 1    APPEARANCES OF COUNSEL:

 2

 3    For Plaintiffs:

 4        STEVEN A. LERMAN & ASSOCIATES
          BY:   STEVEN A. LERMAN
 5              NICHOLAS M. LERMAN
          6033 West Century Boulevard, Suite 740
 6        Los Angeles, California  90045
          (310) 659-8166
 7        nmlerman0@yahoo.com

 8

      For Plaintiffs:
 9
          LAW OFFICE OF GREGORY PEACOCK
10        BY:   GREGORY PEACOCK
          4425 Jamboree Road, Suite 130
11        Newport Beach, California  92660
          (949) 292-7478
12        gregorypeacockesq@gmail.com

13
      For Defendants:
14
          LEWIS BRISBOIS BISGAARD & SMITH LLP
15        BY:   TORI L.N. BAKKEN
          633 West Fifth Street, Suite 4000
16        Los Angeles, California  90071
          (213) 250-1800
17        tori.bakken@lewisbrisbois.com

18
      Also present:
19
          Jennifer Vazquez, Videographer
20

21

22

23

24

25
```

Commander Steven Lurie
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01183-MEMF-SP   Document 98-2   Filed 07/14/22   Page 201 of 203   Page ID
#:2451

1207365

1    someone's back may restrict their breathing.

2    BY MR. PEACOCK:

3        Q.   Is that something that peace officers in the

4    state of California are trained to understand?

14:12  5        A.   I don't know that every police officer is

6    trained to understand that.  But, sure.  And as we

7    referenced in the new law that was passed after this

8    incident, that's why, when placing people in certain

9    positions, it's important to monitor their breathing.

14:12 10        Q.   And when you listened to the audio recordings

11    of this incident, did you ever hear Mr. Cruz saying "I

12    can't breathe"?

13        A.   I don't recall -- yes, yes, I think he did say

14    that.

14:12 15        Q.   And after Mr. Cruz stated that he can't

16    breathe, do you believe it would've been appropriate

17    for the deputies to place him in a recovery position?

18        MS. BAKKEN:   Objection.  Incomplete

19    hypothetical.

14:12 20        THE WITNESS:   Again, hypothetical situation.

21    They're responsible for -- for monitoring his overall

22    safety during the incident.  Simply a suspect stating

23    "I can't breathe" is not enough to change your control

24    position necessarily, no.

14:13 25    //

Commander Steven Lurie
Sarah Cruz Reaza vs. County of Riverside

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 202 of 203   Page ID
#:2452

1207365

1

2

3                    DECLARATION

4

5

6           I hereby declare I am the deponent in the

7    within matter; that I have read the foregoing

8    deposition and know the contents thereof; and I declare

9    that the same is true of my knowledge except as to the

10   matters which are therein stated upon my information or

11   belief, and as to those matters, I believe them to be

12   true.

13          I declare under the penalties of perjury of

14   the State of California that the foregoing is true and

15   correct.

16          Executed this _____ day of _____,

17   20_____, at _____, _____.
                              [City]                    [State]
18

19

20

21          _____

22          COMMANDER STEVEN LURIE

23

24

25

Case 5:20-cv-01188-MEMF-SP   Document 98-2   Filed 07/14/22   Page 203 of 203   Page ID
#:2453

Commander Steven Lurie
Sarah Cruz Reaza vs. County of Riverside

1207365

1       I, Amy J. Marsden, CSR 13067, do hereby declare:

2       That, prior to being examined, the witness named
in the foregoing deposition was by me duly sworn
3   pursuant to Section 30(f)(1) of the Federal Rules of
Civil Procedure and the deposition is a true record of
4   the testimony given by the witness.

5       That said deposition was taken down by me in
shorthand at the time and place therein named and
6   thereafter reduced to text under my direction.

7       _XX__   That the witness was requested to review
the transcript and make any changes to the
8           transcript as a result of that review
pursuant to Section 30(e) of the Federal
9           Rules of Civil Procedure.

10      _____  No changes have been provided by the
witness during the period allowed.
11

_____  The changes made by the witness are
12          appended to the transcript.

13      _____  No request was made that the transcript be
reviewed pursuant to Section 30(e) of the
14          Federal Rules of Civil Procedure.

15      I further declare that I have no interest in the
event of the action.
16

17      I declare under penalty of perjury under the laws
of the United States of America that the foregoing is
true and correct.
18

WITNESS my hand this 17th day of May, 2022.
19

20

21

22

23                              _____

24                              Amy J. Marsden, CSR No. 13067

25

