1

**LAW OFFICE OF GREGORY PEACOCK**

2  Gregory Peacock, ESQ. (SBN 277669)

3  4425 Jamboree Road
   Suite 130

4  Newport Beach, CA 92660

5  Telephone (949) 292-7478
   Email: gregorypeacockesq@gmail.com

6

7

8                 **UNITED STATES DISTRICT COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

10  | | |
    |---|---|
11  SARAH CRUZ REAZA, individually | Case No: 5:20-CV-01188 MEMF-SP
    and as Successor-in-Interest of Decedent |
12  Fernando Cruz, FERNANDO BAEZA, | [Hon. Maame Ewusi-Mensah
    individually and as Successor-in-Interest | Frimpong; Hon. Sheri Pym]
13  of Decedent Fernando Cruz, |
    FERNANDO CRUZ, JR., individually | **SECOND SUPPLEMENTAL**
14  and as Successor-in-Interest of Decedent | **DECLARATION OF GREGORY**
    Fernando Cruz, FRANK FIDEL CRUZ, | **PEACOCK, ESQ. RE**
15  individually and as Successor-in- | **AUTHENTICITY OF ATTACHED**
    Interest of Decedent Fernando Cruz, CELESTE | **EXHIBITS IN OPPOSITION TO**
16  MARIE CRUZ, individually and as | **DEFENDANT'S MOTION FOR**
    Successor-in-Interest of Decedent | **SUMMARY JUDGMENT**
17  Fernando Cruz, RAELENE MARIE |
18  CRUZ, individually and as Successor-in- |
    Interest of Decedent Fernando Cruz, J.A., |
19  by and through his guardian, JOANNE |
    ALBIDREZ, I.C., by and through his |
20  guardian, JOANNE ALBIDREZ, |
    L.M.C., by and through her guardian, |
21  JOANNE ALBIDREZ, |
22

23                 Plaintiffs,

24        vs.

25

26  COUNTY OF RIVERSIDE,
    RIVERSIDE COUNTY SHERIFF'S
27  DEPARTMENT and DOES 1 through
28  20, Inclusive,

1

**SECOND SUPPLEMENTAL DECLARATION OF GREGORY PEACOCK, ESQ. RE AUTHENTICITY**

**OF ATTACHED EXHIBITS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY**

**JUDGMENT**

Defendants.

I, Gregory Peacock, Esq. do declare that the facts set forth herein are based upon my personal knowledge and on information and belief, and if called upon to testify I could do so competently.

1. I am an attorney duly licensed to practice before all courts of the State of California. I am co-counsel of record for Plaintiff SARA CRUZ REAZA, et al. in this action.

2. Attached as Exhibit "A" is an excerpt of the Deposition of Sarah Reaza Cruz, taken on June 18, 2021, that was taken by the Defendant in this case.

3. Attached as Exhibit "B" is an excerpt of the Deposition of Sandy Acuna, taken on February 17, 2022, that was taken by the Defendant in this case.

4. Attached as Exhibit "C" is an excerpt of the Deposition of Robert Roach, taken on March 10, 2022, that was taken by the Plaintiff in this case.

5. Attached as Exhibit "D" is an excerpt of the Deposition of Andrew Lucifora, taken on March 8, 2022, that was taken by the Plaintiff in this case.

6. Attached as Exhibit "E" is an excerpt of the Deposition of Geoffrey Gillison, taken on March 11, 2022, that was taken by the Plaintiff in this case.

7. Attached as Exhibit "F" is an excerpt of the Deposition of Todd Halbeisen, taken on March 9, 2022, that was taken by the Plaintiff in this case.

8. Attached as Exhibit "G" is an excerpt of the Audio Transcription of Body Worn Camera Video – Final Composite, that was transcribed on July 8,

SECOND SUPPLEMENTAL DECLARATION OF GREGORY PEACOCK, ESQ. RE AUTHENTICITY OF ATTACHED EXHIBITS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

2022.

9.  Attached as Exhibit "H" is an excerpt of the Deposition of Jeffrey Noble, taken on May 19, 2022, taken by the Defendant in this case.

10. Attached as Exhibit "I" is an excerpt of the Deposition of Marvin Pietruszka, M.D., taken on May 18, 2022, taken by the Defendant in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 30th day of August, 2022, in Los Angeles, CA.

Dated: 8/30/2022                    ___/s/_____

                                    GREGORY PEACOCK, ESQ.

---

3

**SECOND SUPPLEMENTAL DECLARATION OF GREGORY PEACOCK, ESQ. RE AUTHENTICITY OF ATTACHED EXHIBITS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

EXHIBIT "A"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | | |
|---|---|---|
| SARAH CRUZ REAZA, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, FERNANDO BAEZA, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, FERNANDO CRUZ, JR., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, FRANK FIDEL CRUZ, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, CELESTE MARIE CRUZ, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, RAELENE MARIE CRUZ, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST OF DECEDENT FERNANDO CRUZ, J.A., BY AND THROUGH HIS GUARDIAN, JOANNE ALBIDREZ, I.C., BY AND THROUGH HIS GUARDIAN, JOANNE ALBIDREZ, L.M.C., BY AND THROUGH HER GUARDIAN, JOANNE ALBIDREZ, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| PLAINTIFFS, | ) ) | |
| VS. | ) ) | CASE NO. 5:20-CV-01188-FMO (SPX) |
| COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT AND DOES 1 THROUGH 20, INCLUSIVE, | ) ) ) | |
| DEFENDANTS. | ) ) ) | |

DEPOSITION OF SARAH REAZA CRUZ

TAKEN ON

FRIDAY, JUNE 18, 2021

MELINDA S. WOMELSDORF, C.S.R. NO. 13124

```
 1              UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

 3

 4                                      )
      SARAH CRUZ REAZA, INDIVIDUALLY AND )
 5    AS SUCCESSOR-IN-INTEREST OF        )
      DECEDENT FERNANDO CRUZ, FERNANDO   )
 6    BAEZA, INDIVIDUALLY AND AS         )
      SUCCESSOR-IN-INTEREST OF DECEDENT  )
 7    FERNANDO CRUZ, FERNANDO CRUZ, JR., )
      INDIVIDUALLY AND AS                )
 8    SUCCESSOR-IN-INTEREST OF DECEDENT  )
      FERNANDO CRUZ, FRANK FIDEL CRUZ,   )
 9    INDIVIDUALLY AND AS                )
      SUCCESSOR-IN-INTEREST OF DECEDENT  )
10    FERNANDO CRUZ, CELESTE MARIE CRUZ, )
      INDIVIDUALLY AND AS                )
11    SUCCESSOR-IN-INTEREST OF DECEDENT  )
      FERNANDO CRUZ, RAELENE MARIE CRUZ, )
12    INDIVIDUALLY AND AS                )
      SUCCESSOR-IN-INTEREST OF DECEDENT  )
13    FERNANDO CRUZ, J.A., BY AND THROUGH)
      HIS GUARDIAN, JOANNE ALBIDREZ,     )
14    I.C., BY AND THROUGH HIS GUARDIAN, )
      JOANNE ALBIDREZ, L.M.C., BY AND    )
15    THROUGH HER GUARDIAN, JOANNE       )
      ALBIDREZ,                          )
16                                       )
                    PLAINTIFFS,          )
17                                       )
          VS.                            ) CASE NO. 5:20-CV-01188
18                                       )      FMO (Spx)
      COUNTY OF RIVERSIDE, RIVERSIDE     )
19    COUNTY SHERIFF'S DEPARTMENT AND    )
      DOES 1 THROUGH 20, INCLUSIVE,      )
20                                       )
                    DEFENDANTS.          )
21    _____  )

22

23

24

25
                                                           2
```

1          DEPOSITION OF SARAH REAZA CRUZ, taken on behalf of

2    the Defendants, at 4199 Flat Rock Road, Riverside, CA,

3    commencing at 9:56 A.M., Friday, June 18, 2021, before

4    Melinda S. Womelsdorf, Certified Shorthand Reporter, License

5    No. 13124, for the State of California, pursuant to Notice.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1    APPEARANCES:

2

3    For the Defendants, COUNTY OF RIVERSIDE:

4         MANNING & KASS, ELLROD, RAMIREZ, TRESTER, LLP
          BY:  TONY SAIN, ESQ.
5         801 S. Figueroa Street, 15th Floor
          Los Angeles, California 90017-3012
6         (213) 624-6900
          tms@manningllp.com
7
     For the Plaintiffs, SARAH CRUZ REAZA, FERNANDO BAEZA,
8    FERNANDO CRUZ JR., FRANK FIDEL CRUZ, CELESTE MARIE CRUZ,
     RAELENE MARIE CRUZ, J.A., I.C., AND LMC
9
          STEVEN A. LERMAN AND ASSOCIATES
10        BY:  NICHOLAS M. LERMAN
          6033 West. Century Boulevard, Suite 740
11        Los Angeles, California 90045
          (310) 659-8166
12        nmlerman0@yahoo.com

13

14   Also Present:

15   Armand Frigon - Videographer

16

17

18

19

20

21

22

23

24

25
                                                          4
```

10:58:29:24  1        Q    And on the date of the incident you had no

2    problems with your hearing; is that correct?

3        A    No.

4        Q    What I said is correct?

10:58:36:21  5        A    Yes.

6        Q    Okay.

7        A    Sorry.

8        Q    All right.  On the date of our incident, you

9    called police to your residence; is that correct?

10:58:48:28 10        A    Yes.

11        Q    And you called them to your residence in order

12    to deal with Fernando Cruz; is that correct?

13        A    Yes.

14        Q    Okay.  Before that incident time, had you ever

10:58:58:18 15    called the police to your home to deal with Fernando

16    Cruz?

17        A    Yes.

18        Q    How many times?

19        A    Like three.

10:59:09:21 20        Q    When was the first time?

21        A    2018.  2018.

22        Q    And in the -- for the 2008 {sic} time, why did

23    you call the police to your home to deal with Fernando

24    Cruz?

10:59:42:10 25        A    We needed help.

55

10:59:43:11  1      Q    What was happening that you felt needed police

2    assistance?

3      A    I thought he was going to hurt himself.

4      Q    By hurt himself, what do you mean?

10:59:51:29  5      A    Hitting on the -- like hitting on the wall.

6      Q    Hitting what with the wall?

7      A    Excuse me?

8      Q    Hitting on the wall with what?

9      A    Head.

11:00:10:10 10      Q    On that occasion when you called the police

11   because Fernando Cruz was hitting his head on the wall

12   so badly that you thought he was going to hurt himself

13   --

14      A    Yes.

11:00:18:17 15      Q    -- did you observe any injuries on Cruz's

16   person?

17      A    No.

18      Q    Did he appear to be under the influence on

19   that occasion?

11:00:27:21 20      A    No.

21      Q    What police agency did you call to the scene

22   to your home that day?

23      A    Pedley.

24      Q    Huh?

11:00:39:21 25      A    Pedley station 911.

56

11:44:17:18  1  Q Never said anything like that?

     2  A No.

     3  Q Okay.  When you were asked, "Have you known

     4 him to use drugs," you never said, "Yeah, he was using

11:44:29:22  5 something"?

     6  A Yes.

     7  Q So when you said that, what were you referring

     8 to?

     9  A I don't know.

11:44:36:02 10  Q Okay.  Even though -- strike that.

    11   Didn't you tell the investigators that you saw

    12 him using -- that you believed he was using drugs

    13 because you saw him with a little glass pipe?

    14  A I don't remember.

11:45:25:16 15  Q So is it your testimony here today that prior

    16 to the October 7th, 2019 incident, is it your testimony

    17 that you had never observed anything that made you

    18 concerned that Fernando Cruz was abusing drugs?

    19  MR. LERMAN:  Object.  Vague and ambiguous as to

11:45:47:18 20 concerned.

    21  THE WITNESS:  No.

    22 BY MR. SAIN:

    23  Q No, you didn't?

    24  A No.

11:45:50:22 25  Q Okay.  So you never told the investigators

                         83

State of California    )
                       )   SS.
County of_____  )


        I, Sarah Reaza Cruz, say I have read the

foregoing deposition and declare under penalty of

perjury that my answers as indicated are true and

correct.




_____
      (DATE)




                            _____
                                 (SIGNATURE)


140

```
 1   State of California     )
                             )  SS.
 2   County of San Bernardino)

 3

 4            I, MELINDA WOMELSDORF, Certified Shorthand

 5   Reporter, License No. 13124, for the State of

 6   California, do hereby certify:

 7            That, prior to being examined, the witness

 8   named in the foregoing deposition, to wit, Sarah Reaza

 9   Cruz, was by me duly sworn to testify the truth, the

10   whole truth and nothing but the truth;

11            That said deposition was taken down by me

12   in shorthand at the time and place therein named and

13   thereafter reduced to computer-aided transcription under

14   my direction;

15            That the foregoing transcript, as typed, is

16   a true record of the said proceedings.

17            I further certify that I am not interested

18   in the event of the action.

19            Witness my hand this 5th day of July, 2021.

20

21

22            MELINDA WOMELSDORF, CSR. NO. 13124

23

24

25
                                                    141
```

EXHIBIT "B"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

```
SARAH CRUZ REAZA, INDIVIDUALLY AND )
AS SUCCESSOR-IN-INTEREST OF        )
DECEDENT FERNANDO CRUZ, FERNANDO   )
BAEZA, INDIVIDUALLY AND AS         )
SUCCESSOR-IN-INTEREST OF DECEDENT  )
FERNANDO CRUZ, FERNANDO CRUZ, JR., )
INDIVIDUALLY AND AS                )
SUCCESSOR-IN-INTEREST OF DECEDENT  )
FERNANDO CRUZ, FRANK FIDEL CRUZ,   )
INDIVIDUALLY AND AS                )
SUCCESSOR-IN-INTEREST OF DECEDENT  )
FERNANDO CRUZ, CELESTE MARIE CRUZ, )
INDIVIDUALLY AND AS                )
SUCCESSOR-IN-INTEREST OF DECEDENT  )
FERNANDO CRUZ, RAELENE MARIE CRUZ, )
INDIVIDUALLY AND AS                )
SUCCESSOR-IN-INTEREST OF DECEDENT  )
FERNANDO CRUZ, J.A., BY AND THROUGH)
HIS GUARDIAN, JOANNE ALBIDREZ,     )
I.C., BY AND THROUGH HIS GUARDIAN, )
JOANNE ALBIDREZ, L.M.C., BY AND    )
THROUGH HER GUARDIAN, JOANNE       )
ALBIDREZ,                          )
                                   )
              PLAINTIFFS,          )
                                   )
       VS.                         ) CASE NO. 5:20-CV-01188-FMO (SPX)
                                   )
COUNTY OF RIVERSIDE, RIVERSIDE     )
COUNTY SHERIFF'S DEPARTMENT AND    )
DOES 1 THROUGH 20, INCLUSIVE,      )
                                   )
              DEFENDANTS.          )
_____)
```

DEPOSITION OF SANDY ACUNA

TAKEN ON

THURSDAY, FEBRUARY 17, 2022

MELINDA S. WOMELSDORF, C.S.R. NO. 13124

1                    UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

3

4                                          )
    SARAH CRUZ REAZA, INDIVIDUALLY AND )
5   AS SUCCESSOR-IN-INTEREST OF          )
    DECEDENT FERNANDO CRUZ, FERNANDO     )
6   BAEZA, INDIVIDUALLY AND AS           )
    SUCCESSOR-IN-INTEREST OF DECEDENT    )
7   FERNANDO CRUZ, FERNANDO CRUZ, JR., )
    INDIVIDUALLY AND AS                  )
8   SUCCESSOR-IN-INTEREST OF DECEDENT    )
    FERNANDO CRUZ, FRANK FIDEL CRUZ,     )
9   INDIVIDUALLY AND AS                  )
    SUCCESSOR-IN-INTEREST OF DECEDENT    )
10  FERNANDO CRUZ, CELESTE MARIE CRUZ, )
    INDIVIDUALLY AND AS                  )
11  SUCCESSOR-IN-INTEREST OF DECEDENT    )
    FERNANDO CRUZ, RAELENE MARIE CRUZ, )
12  INDIVIDUALLY AND AS                  )
    SUCCESSOR-IN-INTEREST OF DECEDENT    )
13  FERNANDO CRUZ, J.A., BY AND THROUGH)
    HIS GUARDIAN, JOANNE ALBIDREZ,       )
14  I.C., BY AND THROUGH HIS GUARDIAN, )
    JOANNE ALBIDREZ, L.M.C., BY AND      )
15  THROUGH HER GUARDIAN, JOANNE         )
    ALBIDREZ,                            )
16                                       )
                        PLAINTIFFS,      )
17                                       )
         VS.                             )  CASE NO. 5:20-CV-01188
18                                       )           FMO (Spx)
    COUNTY OF RIVERSIDE, RIVERSIDE       )
19  COUNTY SHERIFF'S DEPARTMENT AND      )
    DOES 1 THROUGH 20, INCLUSIVE,        )
20                                       )
                        DEFENDANTS.      )
21  _____)

22

23

24

25
                                                              2

                    NORMAN SCHALL & ASSOCIATES
                         (800) 734-8838

1          DEPOSITION OF SANDY ACUNA, taken on behalf of the

2    Defendants, at Larry D. Correctional Facility 1627 Hargrave

3    Street, Banning, CA, commencing at 12:21 P.M., Thursday,

4    February 17, 2022, before Melinda S. Womelsdorf, Certified

5    Shorthand Reporter, License No. 13124, for the State of

6    California, pursuant to Notice.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                                              3

```
 1   APPEARANCES:

 2

 3   For the Defendants, COUNTY OF RIVERSIDE:

 4        LEWIS, BRISBOIS, BISGAARD & SMITH, LLP
          BY:  TORI BAKKEN, ESQ.
 5        633 West 5th Street, Suite 4000
          Los Angeles, California 90071
 6        (213) 250-1800
          Tori.Bakken@lewisbrisbois.com
 7
     For the Plaintiffs, SARAH CRUZ REAZA, FERNANDO BAEZA,
 8   FERNANDO CRUZ JR., FRANK FIDEL CRUZ, CELESTE MARIE CRUZ,
     RAELENE MARIE CRUZ, J.A., I.C., AND LMC
 9
          STEVEN A. LERMAN AND ASSOCIATES
10        BY:  NICHOLAS M. LERMAN, ESQ.
               STEVEN A. LERMAN, ESQ.
11        6033 West. Century Boulevard, Suite 740
          Los Angeles, California 90045
12        (310) 659-8166
          nmlerman0@yahoo.com
13
     For the Witness, Sandy Acuna
14
          DEPUTY PUBLIC DEFENDER
15        BY:  LINDA MOORE, ESQ.
          4075 Main Street, Suite 100
16        Riverside, California 92501
          (951) 955-6000
17        LindaMoore@RIVCO.ORG

18

19   Also Present:

20   Adam Ellison - Videographer

21

22

23

24

25
                                                              4
```

12:21:09:26   1              by the Certified Shorthand Reporter and

  2              a copy is attached hereto.)

  3   BY MS. BAKKEN:

  4      Q    Do you recognize who is depicted in that

12:47:57:01   5   photograph?

  6      A    That's my uncle, Fernando Cruz.

  7      Q    And do you know whether or not Fernando Cruz

  8   ever used any drugs or had any substance abuse problems?

  9      A    Well, he had substance abuse problems but I

12:48:34:21 10   don't know when he was using it.  Like, I don't know the

11   exact time he was using it and stuff.  But, yeah, he

12   used drugs before.

13      Q    And what drugs do you know him to have used?

14      A    Meth.  I think that's what it's called.

12:48:51:17 15      Q    Okay.  And when did you first learn that

16   Fernando Cruz was using meth?

17      A    When that happened, the incident, because I

18   guess the police found the drug.

19      Q    Okay.  So prior to October 7th of 2019, the

12:49:10:06 20   date of this incident, did you know that Fernando Cruz

21   had ever used meth before that?

22      A    Yeah, but I don't remember the date.  And,

23   yeah, I -- I know he used drugs before that, but I don't

24   remember the date.

12:49:25:13 25      Q    Okay.  Can you give me an approximate year

                                                 34

13:15:56:22  1    them.

2         Q    Okay.  And do you know what she told the

3    police?

4         A    I don't know what she told the police.

13:16:01:29  5         Q    Okay.  And then at some point you also called

6    911; correct?

7         A    Yes.  Because they wouldn't hurry up and my

8    grandma was getting nervous.

9         Q    How long was it that you called the police

13:16:12:12 10    after your grandma had called the police?

11         A    It wasn't that long after I don't think.  I'm

12    not sure how long after.

13         Q    Was it a couple seconds?  Was it an hour or

14    so?

13:16:26:06 15         A    No, not that long.  Not an hour or so, but

16    maybe a couple minutes later.

17         Q    All right.  And then how long after you called

18    the police until the police arrived?

19         A    I don't know how long -- I don't remember how

13:16:44:08 20    long it took them to arrive.

21         Q    And other than just seeing if they were on

22    their way or trying to get them to hurry up, do you

23    recall anything else that you said to 911 when you

24    called?

13:16:58:16 25         A    I don't remember what I told them.  I don't

57

13:17:02:11 1    remember what I told them on the phone.  Maybe that he

2    was yelling and he was banging on the wall.  That's all

3    I can remember.

4         Q    Did you tell the police that you believed

13:17:13:24 5    Fernando was on drugs?

6         A    Yeah.  Because when he's -- when he does drugs

7    he doesn't take his medicine.  So that's why.  Because

8    he was acting out so I knew he was doing something

9    because he didn't take his medicine so that's what made

13:17:31:28 10   me think he was doing drugs.

11        Q    Okay.  So at the time you called the police

12   you thought that Fernando was high on drugs and had not

13   taken his mental health medication; correct?

14        A    Yeah.

13:17:46:17 15        Q    All right.  And when the police arrived how

16   many officers were there?

17        A    When they first came?

18        Q    Yes.

19        A    There was two officers and then a bunch more

13:17:59:00 20   came, like, a lot of them came after that.

21        Q    Okay.  So just focusing on the first two that

22   arrived, did they arrive together?

23        A    Yeah, they arrived together.  And we were

24   sitting on the couch at first, and then when all the

13:18:14:19 25   other officers came in, they told us to go outside.

                                                              58

13:31:15:18  1        Q    Okay.  So when Fernando got up and ran away

2    from the first two officers, he made it past that

3    bathroom door; is that correct?

4        A    Yeah.  I think he made it past the bathroom

13:31:26:04  5    door.

6        Q    Okay.  All right.  And when the two officers

7    were then handcuffing, you said that they were down

8    on -- were they on their knees by Fernando when they

9    were trying to put the handcuffs on him?

13:31:49:04 10        A    I think they were on their knees.

11        Q    Okay.  And at that point was Fernando still

12    resisting the two officers?

13        A    I think he was, like, squirming around, maybe.

14        Q    Okay.  Do you know where his hands were prior

13:32:02:06 15    to them getting them behind his back?  Was he on top of

16    them?  Was he on the out --

17        A    I think he was on top of them.

18        Q    Okay.  Did you see Fernando resisting those

19    first two officers in any way other than initially

13:32:16:21 20    running away from them down the hall and then laying on

21    top of his hands, preventing them from getting them?

22        A    No.  Just -- he was just moving around a lot,

23    that's it.  And on top of his hands, I think.

24        Q    So would it be accurate to say that Fernando

13:32:31:27 25    was resisting those two officers' efforts to handcuff

71

14:17:15:15 1    their body to do so?

2        A      Their hands.  And I don't know if they were

3    using their knees, the two officers.  I just remember

4    them telling him to put his hands behind his back.

14:17:38:05 5    Q      And then at some point Fernando ends up in the

6    living room; that's correct?

7        A      Uh-huh.

8        Q      Are you aware of how he ended up in the living

9    room?

14:17:47:24 10   A      I don't remember how he ended up in the living

11   room.

12       Q      Do you recall in your interview shortly after

13   the incident that you told the detective that you

14   believe that Fernando was dragged by the officers to the

14:17:57:29 15   living room?

16       A      I think he was.

17       Q      And -- and where Fernando ended up in the

18   living room was, I believe you pointed out in the

19   exhibit, was just right in front of that -- what was it?

14:18:21:20 20   Wardrobe, wooden wardrobe?

21       A      That's where he was.

22       Q      And when Fernando was dragged to that

23   position, was he still on his stomach or had he switched

24   positions at that point?

14:18:50:14 25   A      I don't remember if he was on his stomach or

109

1  State of California   )
                         )  SS.
2  County of_____)

3

4          I, Sandy Acuna, say I have read the

5  foregoing deposition and declare under penalty of

6  perjury that my answers as indicated are true and

7  correct.

8

9

10 _____
         (DATE)

11

12

13

14                          _____
                                 (SIGNATURE)
15

16

17

18

19

20

21

22

23

24

25

                                                129

```
 1   State of California     )
                             )   SS.
 2   County of San Bernardino)

 3

 4            I, MELINDA WOMELSDORF, Certified Shorthand

 5   Reporter, License No. 13124, for the State of

 6   California, do hereby certify:

 7            That, prior to being examined, the witness

 8   named in the foregoing deposition, to wit, Sandy Acuna,

 9   was by me duly sworn to testify the truth, the whole

10   truth and nothing but the truth;

11            That said deposition was taken down by me

12   in shorthand at the time and place therein named and

13   thereafter reduced to computer-aided transcription under

14   my direction;

15            That the foregoing transcript, as typed, is

16   a true record of the said proceedings.

17            I further certify that I am not interested

18   in the event of the action.

19            Witness my hand this 2nd day of March,

20   2022.

21

22

23            MELINDA WOMELSDORF, CSR. NO. 13124

24

25
                                                      130
```

EXHIBIT "C"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

SARAH CRUZ REAZA, individually  )
and as Successor-in-Interest of )
Decedent Fernando Cruz, et al., )
                                )
             Plaintiffs,        )
                                )
        vs.                     ) No. 5:20-CV-01188
                                )      FMO (SPx)
COUNTY OF RIVERSIDE, RIVERSIDE  )
COUNTY SHERIFF'S DEPARTMENT and )
DOES 1 through 20, Inclusive,   )
                                )
             Defendants.        )
_____)

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF

DEPUTY ROBERT ROACH

Thursday, March 10, 2022

REPORTED BY:  Lyn Corrin Aaker, CSR No. 6228

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1

2                   UNITED STATES DISTRICT COURT

3        CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

4

5

6

7

8    SARAH CRUZ REAZA, individually  )
     and as Successor-in-Interest of )
9    Decedent Fernando Cruz, et al., )
                                     )
10                   Plaintiffs,     )
                                     )
11              vs.                  ) No. 5:20-CV-01188
                                     )    FMO (SPx)
12   COUNTY OF RIVERSIDE, RIVERSIDE  )
     COUNTY SHERIFF'S DEPARTMENT and )
13   DOES 1 through 20, Inclusive,   )
                                     )
14                   Defendants.     )
     _____)

15

16

17        Videotaped videoconference deposition of

18        DEPUTY ROBERT ROACH, a Witness, taken on

19        behalf of the Plaintiffs, commencing at the

20        hour of 8:31 a.m., Thursday, March 10, 2022,

21        before Lyn Corrin Aaker, CSR No. 6228,

22        pursuant to Notice of Taking Deposition.

23

24

25

Case 5:20-cv-01188-MEMF-SP   Document 111   Filed 08/30/22   Page 29 of 97   Page ID #:2925

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside                                                    1203172

```
 1    APPEARANCES OF COUNSEL:

 2


 3    For Plaintiffs:

 4                   STEVEN A. LERMAN & ASSOCIATES, INC.
                     BY:  NICHOLAS M. LERMAN
 5                        Attorney at Law
                     (Via Videoconference)
 6                   6033 West Century Boulevard
                     Suite 740
 7                   Los Angeles, California 90045
                     (310) 659-8166
 8                   nlerman@lermanslaw.com

 9                   LAW OFFICE OF GREGORY PEACOCK
                     BY:  GREGORY PEACOCK
10                        Attorney at Law
                     (Via Videoconference)
11                   4425 Jamboree Road
                     Suite 130
12                   Newport Beach, California 92660
                     (949) 292-7478
13                   gregorypeacockesq@gmail.com

14    For Defendants:

15                   LEWIS BRISBOIS BISGAARD & SMITH, LLP
                     BY:  ANTHONY SAIN
16                        Attorney at Law
                     (Via Videoconference)
17                   633 West 5th Street
                     Suite 4000
18                   Los Angeles, California 90071
                     (213) 680-5172
19                   tony.sain@lewisbrisbois.com

20    Videographer (Via Videoconference):

21                   GARRETT ESTORGA

22    Also Present (Via Videoconference):

23                   DEPUTY JEFFREY GILLISON

24

25
```

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

08:59:08  1          THE WITNESS:  I don't recall.

08:59:09  2     BY MR. PEACOCK:

08:59:25  3          Q.   Did you ever observe Mr. Cruz attempt to

08:59:26  4     punch you on the February 2019 incident?

08:59:35  5          (Simultaneous speakers.)

08:59:35  6          THE REPORTER:  What was the objection?

08:59:38  7          THE WITNESS:  No.

08:59:39  8          MR. SAIN:  Vague as to time, but he cleaned it

         9     up.

08:59:40  10         Do you want to just reask the question, Greg?

08:59:42  11         MR. PEACOCK:  Sure.

08:59:42  12         Q.   Did you observe Mr. Cruz ever attempt to

08:59:45  13    punch you during the February 2019 incident?

08:59:50  14         A.   No.

08:59:53  15         Q.   Did you observe Mr. Cruz attempt to punch

08:59:57  16    Deputy Valenciano during the February 2019 incident?

09:00:02  17         A.   No.

09:00:05  18         Q.   Did Deputy Valenciano tell you that

09:00:08  19    Mr. Cruz was acting violently towards her prior to

09:00:15  20    your arrival on the February 2019 incident?

09:00:21  21         A.   No.

09:00:34  22         Q.   Was there anything else that we haven't

09:00:36  23    discussed about this first contact with Mr. Cruz in

09:00:39  24    February of 2019 that you considered and increased

09:00:48  25    your risk for officer safety when you arrived at the

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

11:19:38  1   punch Mr. Cruz with the information that

11:19:43  2   Deputy Gillison had to effectuate a legitimate law

11:19:48  3   enforcement purpose?

11:19:50  4       MR. SAIN:  Asked and answered, cumulative.  You

11:19:52  5   can answer again.

11:19:54  6       THE WITNESS:  Due to deputy Cruz's continual

11:19:58  7   resistance by trying to get up and flee and by

11:20:02  8   bucking his body up and down and kicking and through

11:20:06  9   those movements throwing off Deputy Gillison, Deputy

11:20:11  10  Halbeisen, myself, and Deputy Lucifora, I believed

11:20:14  11  it was reasonable with the limited knowledge that I

11:20:18  12  believe Deputy Gillison had at the time to utilize

11:20:20  13  the two punches to try and gain compliance from

11:20:24  14  Mr. Cruz.

11:20:28  15      Q.   How far off the ground did you observe

11:20:34  16  Mr. Cruz get in an attempt to flee in between the

11:20:39  17  time you observed Deputy Gillison arrived until the

11:20:45  18  point in time in which Deputy Gillison punched

11:20:49  19  Mr. Cruz?

11:20:56  20      A.   Approximately an inch, if that, because

11:21:04  21  while we were attempting to control him, he was

11:21:09  22  still fighting but not successfully.  So we were

11:21:14  23  controlling him, and it was clear what his intent

11:21:17  24  was, was to get off the ground.  However, through

11:21:20  25  the bucking motions and pressing up, he might have

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

| | | |
|---|---|---|
| 11:43:43 | 1 | any training whatsoever related to the topic of |
| 11:43:48 | 2 | positional asphyxiation? |
| 11:43:52 | 3 | A.   No. |
| 11:44:02 | 4 | Q.   So once you repositioned yourself near the |
| 11:44:13 | 5 | couch in the living room, what happened next? |
| 11:44:19 | 6 | MR. SAIN:   Is this when he is standing up? |
| 11:44:21 | 7 | MR. PEACOCK:   Correct. |
| 11:44:23 | 8 | THE WITNESS:   After the application of the |
| 11:44:25 | 9 | hobble, I maintained that position to Mr. Cruz's |
| 11:44:29 | 10 | right side, standing, making no contact for |
| 11:44:31 | 11 | approximately three minutes. |
| 11:44:33 | 12 | BY MR. PEACOCK: |
| 11:44:34 | 13 | Q.   And during that three-minute period was |
| 11:44:41 | 14 | Mr. Cruz still in the prone position? |
| 11:44:43 | 15 | A.   Yes.   During that three-minute period |
| 11:44:47 | 16 | Mr. Cruz was maintained in that prone position face |
| 11:44:51 | 17 | down. |
| 11:44:51 | 18 | Q.   During that three-minute period of time did |
| 11:44:57 | 19 | you observe Deputy Halbeisen in the same position |
| 11:45:00 | 20 | where his right knee is making contact with |
| 11:45:03 | 21 | Mr. Cruz's back? |
| 11:45:04 | 22 | A.   I recall Mr. -- sorry -- Deputy Halbeisen |
| 11:45:12 | 23 | making contact with Mr. Cruz's middle back section |
| 11:45:17 | 24 | with a knee.   I don't recall which knee.   And the |
| 11:45:19 | 25 | other knee, whichever one it was, was on the ground |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

| | | |
|---|---|---|
| 11:45:22 | 1 | while he was maintaining control of Mr. Cruz's left |
| 11:45:24 | 2 | arm with both of his hands. |
| 11:45:26 | 3 | Q. And it was during that three-minute time |
| 11:45:29 | 4 | period? |
| 11:45:29 | 5 | A. Yes. |
| 11:45:31 | 6 | Q. During that three-minute time period, did |
| 11:45:33 | 7 | you see any other law enforcement personnel making |
| 11:45:36 | 8 | physical contact with Mr. Cruz? |
| 11:45:38 | 9 | A. Other than Deputy Halbeisen, no. |
| 11:45:43 | 10 | Q. And at the conclusion of that three-minute |
| 11:45:45 | 11 | time period, what happened next? |
| 11:45:46 | 12 | A. Fernando Cruz abruptly stopped speaking and |
| 11:45:53 | 13 | stopped all thrashing body movements, kicking. And |
| 11:45:59 | 14 | Deputy -- excuse me -- Sergeant Kaffka began to call |
| 11:46:03 | 15 | out to Mr. Cruz stating his name. He said, |
| 11:46:09 | 16 | "Fernando, Fernando." He was calling out to him |
| 11:46:12 | 17 | and then asked if Mr. Cruz was breathing or not. |
| 11:46:18 | 18 | Q. And then what happened? |
| 11:46:19 | 19 | A. Immediately Mr. Cruz was turned onto his |
| 11:46:27 | 20 | left side, and Deputy Halbeisen checked for a pulse. |
| 11:46:32 | 21 | And Deputy Halbeisen relayed that Mr. Cruz did not |
| 11:46:37 | 22 | have a pulse, and I immediately called out and said, |
| 11:46:41 | 23 | "Put him on his back and start compressions," at |
| 11:46:45 | 24 | which time Mr. Cruz was immediately placed on his |
| 11:46:47 | 25 | back and compressions were started by Deputy |

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1203172

DECLARATION

I hereby declare I am the deponent in the within matter; that I have read the foregoing deposition and know the contents thereof, and I declare that the same is true of my knowledge except as to the matters which are therein stated upon my information or belief, and as to those matters, I believe it to be true.

I declare under the penalties of perjury of the State of California that the foregoing is true and correct.

Executed this _____ day of _____, 2022, at _____, _____.


_____

DEPUTY ROBERT ROACH

Deputy Robert Roach
Sarah Cruz Reaza vs. County of Riverside

1                    REPORTER'S CERTIFICATE

2

3          I, the undersigned Certified Shorthand

4   Reporter holding a valid and current license issued

5   by the State of California, do hereby certify:

6          That said proceedings were taken down by me

7   in shorthand at the time and place therein set forth

8   and thereafter transcribed under my direction and

9   supervision.

10         I further certify that I am neither counsel

11  for nor related to any party to said action, nor in

12  any way interested in the outcome thereof.

13         Before completion of the deposition, review

14  of the transcript [ X ]was [    ]was not requested.

15         The dismantling, unsealing, or unbinding of

16  the original transcript will render the Reporter's

17  Certificate null and void.

18         IN WITNESS WHEREOF, I have hereunto subscribed

19  my name on this date: March 14, 2022.

20

21

22

23  _____

24            Certified Shorthand Reporter

25



EXHIBIT "D"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

SARAH CRUZ REAZA, individually )
and as Successor-in Interest of )
Decedent FERNANDO CRUZ, et al., )
                               )
               Plaintiffs, )
                               )
      vs.                 )   No. 5:20-CV-01188
                               )   FMO (SPx)
                               )
COUNTY OF RIVERSIDE,            )
RIVERSIDE COUNTY SHERIFF'S      )
DEPARTMENT, and DOES 1 through  )
20, inclusive,                )
                               )
                               )
                               )
               Defendants. )
                               )
_____)

VIDEOTAPED VIDEOCONFERENCE DEPOSITION OF DEPUTY ANDREW LUCIFORA

Tuesday, March 8, 2022

REPORTED BY:  Stacy L. Lozano, CSR No. 12831

Deputy Andrew Lucifora                                                      1203165
Sarah Cruz Reaza vs. County of Riverside

1

2                           UNITED STATES DISTRICT COURT

3               CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

4

5

6   SARAH CRUZ REAZA, individually  )
    and as Successor-in Interest of )
7   Decedent FERNANDO CRUZ, et al., )
                                     )
8                    Plaintiffs,     )
                                     )
9        vs.                         )    No. 5:20-CV-01188
                                     )    FMO (SPx)
10  COUNTY OF RIVERSIDE,             )
    RIVERSIDE COUNTY SHERIFF'S       )
11  DEPARTMENT, and DOES 1 through   )
    20, inclusive,                   )
12                                   )
                                     )
13                                   )
                                     )
14                   Defendants.     )
                                     )
15  _____)

16

17          Videotaped Videoconference Deposition of

18          DEPUTY ANDREW LUCIFORA, the Defendant,

19          taken on behalf of the Plaintiffs, at San

20          Bernardino California, commencing at the

21          hour of 10:05 a.m., Tuesday, March 8, 2022,

22          before Stacy L. Lozano, CSR No. 12831,

23          Pursuant to Notice.

24

25



Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside
1203165

```
 1    APPEARANCES OF COUNSEL:

 2

 3    For Plaintiffs:  SARAH CRUZ REAZA, et al.

 4           LAW OFFICE OF GREGORY PEACOCK

 5           BY:  GREGORY PEACOCK, ESQ.

 6           4425 Jamboree Road, Suite 130

 7           Newport Beach, California  92660

 8           Phone:  (949) 292-7478

 9           Email:  Gregorypeacockesq@gmail.com

10

11    For Plaintiffs:  SARAH CRUZ REAZA, et al.

12           STEVEN A. LERMAN & ASSOCIATES, INC.

13           BY:  STEVEN A. LERMAN, ESQ.

14                NICHOLAS M. LERMAN, ESQ.

15           6033 West Century Boulevard, Suite 740

16           Los Angeles, California  90045

17           Phone:  (310) 659-8166

18           Email:  nlerman@lermanslaw.com
                     nmlerman0@yahoo.com
19

20

21

22

23

24

25
```



Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

```
 1      APPEARANCES OF COUNSEL:

 2

 3      For Defendant:  COUNTY OF RIVERSIDE, et al.

 4              LEWIS, BRISBOIS, BISGAARD & SMITH, LLP

 5              BY:  ANTHONY SAIN, ESQ.

 6              633 W. 5th Street, Suite 4000

 7              Los Angeles, California  90071

 8              Phone:  (213) 358-6041

 9              Email:   Tony.Sain@lewisbrisbois.com

10

11      ALSO PRESENT:  Garrett Estorga, Videographer, Kusar Legal

12      Services, Inc.

13              Defendant Todd Halbeisen

14              Defendant Geoffrey Gillison

15              Defendant Robert Roach

16

17

18

19

20

21

22

23

24

25
```

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    in place at the time of October 7th, 2019, allowed for a

2    hobble to be placed on someone who was passively

3    resisting?

4        A.  During the incident involving Fernando Cruz, we

10:45:49    5    applied the hobble to prevent arms flying to my partners

6    and myself.  Legs were flailing around, kicking around,

7    that could have prevented an injury to one of my partners.

8        Q.  Move to strike as non-responsive.

9            My question is:  Based off of your understanding

10:46:07   10    of the policy that was in place at the Riverside County

11    Sheriff's Department on October 7th, 2019, did the policy

12    permit the use of a hobble for someone who was nearly

13    passively resisting?

14            MR. SAIN:  Asked and answered.

10:46:24   15            THE WITNESS:  My understanding is I'm allowed to

16    apply a hobble to an individual who is resisting, and to

17    prevent harm to myself or one of my partners.

18    BY MR. PEACOCK:

19        Q.  Were you trained that the use of a hobble can

10:46:47   20    cause pain to a suspect?

21        A.  Yes.

22        Q.  And were you trained that the use of a hobble can

23    be considered a use of force?

24        A.  No.

10:47:01   25        Q.  Were you trained that the use of a hobble can



Deputy Andrew Lucifora                                                    1203165
Sarah Cruz Reaza vs. County of Riverside

                1           MR. SAIN:  For the prior incident?

                2           MR. PEACOCK:  Correct.

                3           THE WITNESS:  I don't recall.  I remember

                4    responding to the front of the residence, when I saw him

11:02:07        5    jump out the window, and my partner and I ran around to

                6    contact him out at the -- in the parking lot of the

                7    complex.

                8    BY MR. PEACOCK:

                9        Q.  Okay.  So you saw him jump out the window on the

11:02:18       10    prior incident?

               11        A.  Yes, I did.

               12        Q.  Okay.  And were you inside or outside of the

               13    residence when you saw him jump out?

               14        A.  I -- I don't recall, sir.

11:02:27       15        Q.  Okay.  So then -- did you say you then made

               16    contact with him in the parking lot?

               17           MR. SAIN:  For the prior incident.

               18           THE WITNESS:  For the prior incident, when I

               19    observed him evading us, I ran to the -- to the complex --

11:02:43       20    or to the parking lot, and that's where we attempted to

               21    detain him.

               22    BY MR. PEACOCK:

               23        Q.  Okay.  And when you say, "He was evading us," do

               24    you mean he was running?

11:02:54       25        A.  Correct.



Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1       A.  He was disobeying our commands.  He was flailing

2  his arms, his feet, which could provide harm to my

3  partners or myself.

4       Q.  Did anyone instruct you to punch Mr. Cruz?

11:04:40   5       MR. SAIN:  I'm sorry.  I'm sorry; were you done

6  with your answer?

7       THE WITNESS:  Yes, I was.

8       MR. SAIN:  Okay.

9  BY MR. PEACOCK:

11:04:45  10       Q.  Did anyone instruct you to punch Mr. Cruz during

11  the prior incident?

12       A.  No.

13       Q.  And did you ultimately arrest Mr. Cruz during

14  that prior incident?

11:05:04  15       A.  He was detained, but it wasn't my call for

16  service, so I don't know what the end result was.

17       Q.  Do you know if he was taken to jail for that

18  prior incident?

19       A.  That I don't know.

11:05:20  20       Q.  Were you physically injured at all during that

21  prior incident with Mr. Cruz?

22       A.  I recall punching the ground during that

23  incident.  However, it wasn't reported to my supervisor.

24  I wasn't injured.  I could function completely fine.

11:05:50  25  BY MR. PEACOCK:


Keeping Your Word Is Our Business ℠

41

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    arrest Mr. Cruz, at the time you made entry into the home?

2         A.   For -- for being under the influence.  We're

3    required -- during incidents, we are required to

4    investigate, and that's exactly what we were attempting to

11:47:58   5    do.  Whether we were investigating the under the influence

6    portion of it, or the mental health issues, we were trying

7    to detain him.  Either way, we were conducting an

8    investigation.

9         Q.   But at the time you entered the house, you

11:48:18   10   believe there was -- at that point you already had

11   probable cause to arrest Mr. Cruz, correct?

12        A.   At the time we entered the house, I had probable

13   cause to detain him.

14        Q.   Okay.  Did you have probable cause -- in your

11:48:33   15   mind, did you have probable cause to arrest, at the time

16   you made entry into the home?

17        A.   I'm unable to determine that.  I wasn't -- I

18   didn't conduct my investigation.  I was attempting to,

19   however, he didn't allow me to.

11:48:50   20        Q.   Okay.  So then at the point in time you first

21   made physical contact with Mr. Cruz, after he had tripped

22   and fell to the ground, at that point in time, did you

23   believe you had probable cause to arrest Mr. Cruz?

24        A.   At the time that we initially contacted Mr. Cruz,

11:49:11   25   I had probable cause to detain him -- by him -- and

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

```
 1     conduct an investigation, and determine whether he was

 2     under the influence, or a mental health evaluation.  For

 3     the mental health portion of it, I'm required to detain,

 4     assess, and provide.  And based on the information

 5     provided us, he was a danger to himself, and a danger to

 6     others.  The children were inside the house.

 7          Q.  But my question is more focused on the ability to

 8     arrest him at the point in time that you first made

 9     physical contact with him on the ground.

10              So at the point in time that you first made

11     physical contact with Mr. Cruz, immediately after he

12     tripped and fell to the ground, at that point in time, did

13     you believe you had probable cause to arrest him?

14              MR. SAIN:  Up to that point in time had you

15     observed him committing any arrestable crimes?

16              THE WITNESS:  Yes.  He evaded us.  Ran away.

17     BY MR. PEACOCK:

18          Q.  And is it your understanding that that was

19     probable cause of the violation of California Penal

20     Code 148(a)(1)?

21          A.  I don't know the specific subsections, but yes,

22     resisting arrest, or evading.

23          Q.  And what did you observe that led you to believe

24     that you had probable cause to believe that Mr. Cruz had

25     violated Penal Code 148(a)(1), other than what you've
```

11:49:35   5
11:49:54   10
11:50:11   15
11:50:30   20
11:50:54   25



Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

```
 1    controlling his hands and his legs from assaulting myself

 2    or my partner.

 3         Q.  And was that with your hands?

 4         A.  Correct.

 5         Q.  Okay.  And during our incident, prior to placing

 6    the first handcuff on Mr. Cruz, did any part of your legs

 7    ever come in contact with Mr. Cruz?

 8         A.  No.

 9         Q.  And during the same time period, so during our

10    incident, and prior to the first handcuff being placed on

11    Mr. Cruz, did you observe Deputy Roach engage in any force

12    upon Mr. Cruz?

13         A.  Yes.

14         Q.  And what did you observe in that regard?

15         A.  During that incident, when Mr. Cruz was laying on

16    his back, myself and my partner observed a glass pipe in

17    his -- in his right hand.  And my partner utilized his

18    foot and applied pressure to his forearm to control his

19    hand, and that -- in preventing that glass pipe from being

20    a potential harm to myself or my partner.

21         Q.  Did you observe any other force used by Deputy

22    Roach during that time period?

23         MR. SAIN:  At the point of first cuffing.

24         THE WITNESS:  No.  I don't recall.

25    BY MR. PEACOCK:
```

Time stamps:
12:04:34 (line 5)
12:05:00 (line 10)
12:05:19 (line 15)
12:05:52 (line 20)
12:06:09 (line 25)



Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1    Q.  After you picked up your body-worn camera, and

2    were standing at Mr. Cruz's feet, could you see if any of

3    the other deputies were making physical contact with

4    Mr. Cruz?

02:14:29    5    A.  At that point I recall Deputy Halbeisen having

6    contact with his hands -- or his hands holding the

7    handcuffs.  But once my -- once I stood up and

8    repositioned my camera, Deputy Halbeisen was the only one.

9    Q.  Did the hobble restraints appear to have a

02:15:01    10    desired affect upon Mr. Cruz to stop flailing around?

11    A.  The hobble restraint prevented from his legs

12    kicking around in an uncontrollable fashion.  However, he

13    was still screaming and yelling and moving around.

14    Q.  Well, after he's placed in the hobble restraint,

02:15:27    15    what was your objective at that point with Mr. Cruz?

16    A.  After the hobble was placed around his ankles,

17    our objective was to assess him for the mental health

18    issues.

19    Q.  And how were you intending to do that?

02:15:52    20    A.  We didn't have an opportunity to.

21    Q.  But what was your intention, as far as carrying

22    that out?

23    A.  My intention was to -- or our intention was -- it

24    was my partner's and I, were to assess the mental health

02:16:14    25    and have him evaluated medically as well.

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1203165

1      DECLARATION

2

3          I hereby declare I am the deponent in the within

4     matter; that I have read the foregoing deposition and know

5     the contents thereof, and I declare that the same is true

6     of my knowledge, except as to matters which are therein

7     stated upon my information or belief, and as to those

8     matters, I believe them to be true.

9          I declare under the penalties of perjury of the

10     State of California that the foregoing is true and

11     correct.

12          Executed this _____ day of _____, 2022,

13     at_____, _____.

14

15

16

17                         _____

18                         DEPUTY ANDREW LUCIFORA

19

20

21

22

23

24

25

Deputy Andrew Lucifora
Sarah Cruz Reaza vs. County of Riverside

1                   REPORTER'S CERTIFICATE

2

3        I, Stacy L. Lozano, a Certified Shorthand

4  Reporter, holding a valid and current license issued by

5  the State of California, CSR No. 12831, do hereby certify:

6

7        That said proceedings were taken down by me in

8  shorthand at the time and place therein set forth and

9  thereafter transcribed into typewriting under my direction

10  and supervision.

11

12        I further certify that I am neither counsel for,

13  nor related to any party to said action, nor in any way

14  interested in the outcome thereof.

15

16        The dismantling, unsealing, or unbinding of the

17  original transcript will render the Reporter's certificate

18  null and void.

19

20        IN WITNESS WHEREOF, I have subscribed my name on

21  this date: March 15, 2022.

22

23

24        Stacy L. Lozano, CSR # 12831

25

EXHIBIT "E"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION


SARAH CRUZ REAZA, individually        )
and as Successor-in-Interest of       )
Decedent Fernando Cruz, et al.,       )
                                      )
              Plaintiffs,             )
                                      )
vs.                                   ) Case No. 5:20-CV-01188
                                      )          FMO (SPx)
COUNTY OF RIVERSIDE, RIVERSIDE        )
COUNTY SHERIFF'S DEPARTMENT and       )
DOES 1 through 20, Inclusive,         )
                                      )
              Defendants.             )
_____)


VIDEOCONFERENCE DEPOSITION OF GEOFFREY GILLISON

LOS ANGELES, CALIFORNIA

FRIDAY, MARCH 11, 2022


Reported by:  Donna Ball, CSR No. 11191

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside                                    1200990

```
 1                    UNITED STATES DISTRICT COURT

 2          CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

 3

 4    SARAH CRUZ REAZA, individually   )
      and as Successor-in-Interest of  )
 5    Decedent Fernando Cruz, et al.,  )
                                       )
 6                 Plaintiffs,         )
                                       )
 7    vs.                              ) Case No. 5:20-CV-01188
                                       )           FMO (SPx)
 8    COUNTY OF RIVERSIDE, RIVERSIDE   )
      COUNTY SHERIFF'S DEPARTMENT and  )
 9    DOES 1 through 20, Inclusive,    )
                                       )
10                 Defendants.         )
      _____)

11

12

13

14

15

16    VIDEOCONFERENCING DEPOSITION OF GEOFFREY GILLISON,

17    taken on behalf of the Plaintiffs, at Los Angeles,

18    California, beginning at 11:06 a.m. and ending at

19    1:39 p.m, on Friday, March 11, 2022, before

20    Donna Ball, Certified Shorthand Reporter No. 11191

21

22

23

24

25
```



Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside                                          1200990

```
 1    APPEARANCES:

 2

 3    For the Plaintiffs:

 4            STEVEN A. LERMAN & ASSOCIATES, INC.
              BY:  STEVEN A. LERMAN, ESQ.
 5            Attorney at Law
              (Via Videoconference)
 6            6033 West Century Boulevard
              Suite 740
 7            Los Angeles, California 90045
              (310) 659-8166
 8

 9
      Co-Counsel For the Plaintiffs:
10
              LAW OFFICE OF GREGORY PEACOCK
11            BY:  GREGORY PEACOCK, ESQ.
              Attorney at Law
12            (Via Videoconference)
              4425 Jamboree Road
13            Suite 130
              Newport Beach, California 92660
14            (949) 292-7478

15

16    For the Defendants:

17            LEWIS, BRISBOIS BISGAARD & SMITH LLP
              BY:  TONY M. SAIN, ESQ.
18            633 West 5th Street
              Suite 4000
19            Los Angeles, California 90071
              (213) 250-1800
20

21
      Also Present:
22
              JENNY ESTES (VIDEOGRAPHER)
23

24

25
```



Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside                                1200990

1          A     We weren't -- there was no -- there weren't

2     deputies that were mounting him like a cowboy that you

3     said.  No one was riding him or mounting him.  When I use

4     the term bucking, I use it loosely because we lost

11:44:48   5     position and we had to adjustment multiple times.

6          Q     What was your approximate height and weight at

7     the time of our incident?

8          A     At the time of the incident, height 6'3, 240.

9     About 240.

11:45:08  10          Q     And based off of what you observed, what's your

11     best estimate as to the height and weight of Mr. Cruz at

12     the time of our incident?

13          A     Maybe 5'10, 230.

14          Q     Okay.  And would you describe his build as being

11:45:30  15     athletic?  Thin?  Overweight?  How would you describe his

16     overall build?

17          A     A little overweight.

18          Q     And I believe you stated that upon entry you then

19     went to -- up to Mr. Cruz and placed a part of your knee

11:45:53  20     onto his back or shoulder area; is that correct?

21          A     I placed my knee on his shoulder blade.

22          Q     And why is it that you decided to do that?

23          A     It wasn't something I subconsciously decided to

24     do.  I didn't walk in there and say, "Hey, I'm going to

11:46:12  25     put my knee on his shoulder blade."  That was the only

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

                1   me, Deputy Halbeisen was to the right of me, and he was

                2   controlling Mr. Cruz; however, I don't know what the other

                3   two deputies were doing because of the way I was

                4   positioned.

    11:51:34    5        Q    And when you say that Deputy Halbeisen was to

                6   your right, please correct me if I'm wrong, does that mean

                7   that Deputy Halbeisen was more towards Mr. Cruz's leg area

                8   in relation to you?

                9        A    No.  Deputy Halbeisen was maybe toward the mid

    11:52:00   10   parts of his back area, left side of his back area.  I was

               11   more toward the top portion of Mr. Cruz, which was the

               12   shoulder blade.  But to my knowledge, I don't know where

               13   the other two deputies were at that time.

               14        Q    During that approximate two-minute period, could

    11:52:23   15   you see where Deputy Lucifora was?

               16        A    No.

               17        Q    And during that approximate two-minute time

               18   period that we've been discussing, could you see where

               19   Deputy Roach was?

    11:52:38   20        A    No.

               21        Q    At some point in time, did you punch Mr. Cruz?

               22        A    Yes.

               23        Q    How much time had passed from when you first

               24   entered into the residence to when you punched Mr. Cruz

    11:53:05   25   for the first time?

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

```
 1          A     Maybe about -- maybe ten seconds.

 2          Q     How many times did you punch Mr. Cruz?

 3          A     I punched Mr. Cruz three times.  And about two to

 4     three times in his midback area, and one time to the side

 5     of his -- the right side of his face.

 6          Q     What was the sequence of these punches?  Was the

 7     punch to the face first or were the punches to his side

 8     first?  Can you tell me the sequence of punches and where

 9     they landed on Mr. Cruz's body?

10          A     The two to three times in his middle midback

11     area.  That was the first sequence of punches.  And then

12     the last punch was the punch to the right side of his

13     face, maybe the cheek area.

14          Q     And when you punched Mr. Cruz for the first time,

15     was your knee on the left portion of his shoulder?

16          A     I don't recall.

17          Q     Was your knee on his left shoulder when you made

18     any of these approximately three punches?

19          A     I don't recall.

20          Q     Why is it that you decided to punch Mr. Cruz?

21          A     Well, Mr. Cruz was just -- he was -- upon

22     entering the residence, Mr. Cruz was extremely aggressive.

23     He was pushing himself up.  His mannerism was completely

24     bizarre.  And the whole time that I was positioned on

25     Mr. Cruz's left side shoulder blade, he had to reposition
```

Timestamps:
11:53:40  5
11:53:57  10
11:54:19  15
11:54:46  20
11:55:12  25

**Kusar** *Keeping Your Word Is Our Business ℠*

35

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

|  |  |  |
|---|---|---|
| | 1 | MR. SAIN:  Assumes facts not in evidence. |
| | 2 | Argumentative as phrased. |
| | 3 | THE WITNESS:  I believe the time that I entered |
| | 4 | the residence from the time I left the residence, I was |
| 12:05:27 | 5 | checking -- constantly checking on Mr. Cruz's well-being, |
| | 6 | making sure there was no injury to Mr. Cruz, making sure |
| | 7 | that he was secure, making sure that he was unable to hurt |
| | 8 | himself.  Mr. Cruz was -- it appeared he was under the |
| | 9 | influence.  I mean, I -- he showed signs of being under |
| 12:05:49 | 10 | the influence of methamphetamines.  So I was just wanting |
| | 11 | to make sure he was unable to hurt himself.  So the whole |
| | 12 | time I was checking on Mr. Cruz's well-being from the time |
| | 13 | I entered the residence to the time I punched Mr. Cruz and |
| | 14 | to the time I left the residence. |
| 12:06:03 | 15 | BY MR. PEACOCK: |
| | 16 | Q    At any point in time, on October 7th, 2019, did |
| | 17 | anyone tell you that Mr. Cruz was under the influence of |
| | 18 | anything? |
| | 19 | A    No. |
| 12:06:32 | 20 | Q    So after you punched Mr. Cruz in the face, what |
| | 21 | did you do next? |
| | 22 | A    After I punched Mr. Cruz in the face, I just |
| | 23 | continued to control him and make sure that he was unable |
| | 24 | to get up. |
| 12:06:49 | 25 | Q    And what were you doing in that regard? |



Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside

1200990

1    area because I was trying to stabilize myself.  I tried to

2    not get knocked off of his left side.  As he was pushing

3    up, I was getting knocked off.  I had to readjust, and my

4    hand was on his back area to essentially stabilize myself.

12:13:17   5    I don't -- I'm not sure how long my hand was on his back,

6    upper back area.  I don't recall.

7        Q    So when you say you're using your hand to

8    stabilize yourself, does that mean at some point in time

9    you're applying pressure down onto Mr. Cruz's back?

12:13:34   10       A    No.

11       Q    So then if you weren't pressing down on

12   Mr. Cruz's back with your hand to stabilize yourself, how

13   was it that the placement of your hand in that area was

14   helping you stabilize yourself?

12:13:51   15       A    Well, it was also my left -- my left knee being

16   placed on the ground was helping me to stabilize, as well.

17       Q    And was the purpose of your left knee on his --

18   I'm sorry.  Strike that.

19            Was the purpose of your knee on his left shoulder

12:14:09   20   blade to prevent him from getting up?

21       A    It was -- it was to prevent him from getting up

22   and possibly fleeing.  He -- if he was able to get up in

23   cuffs with us and kick his feet and move his feet around,

24   I'm sure it would be -- it wouldn't be difficult for him

12:14:32   25   to get on his knees and try to get up.  So at that time he

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside                                    1200990

1      Mr. Cruz?

2          A     The only deputy that was making contact with

3      Mr. Cruz at the time was Deputy Halbeisen.  He was the

4      only one that was -- that was near Mr. Cruz.  And he

12:18:23   5   didn't have a knee on Mr. Cruz at all.  He just had -- he

6      was just controlling the handcuffs at that time and making

7      sure that, you know, Mr. Cruz wasn't, you know -- he was

8      just securing the handcuffs, his hands.

9          Q     And based off of what you observed at that point

12:18:46  10   in time, why was it necessary to control Mr. Cruz's hands

11     at that point?

12         A     Because Mr. Cruz had two handcuffs on his

13     hands -- on his wrists, and he was able to lift himself up

14     or angle or maneuver his hands to the side of his waist to

12:19:07  15   lift himself up.  So Deputy Halbeisen just had a hand on

16     the cuffs just to make sure he was unable to maneuver his

17     hands back over to the side of his waist to lift himself

18     up.

19         Q     When you say he was able to lift himself up,

12:19:23  20   prior to experiencing what we've been calling a medical

21     emergency, did you ever observe Mr. Cruz lift himself up

22     more than an inch?

23         A     No.

24         Q     Did you assist in placing Mr. Cruz in the

12:19:44  25   hobble?

**Kusar**  *Keeping Your Word Is Our Business ℠*                              49

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside                                  1200990

1      Q    Sure.  So far you've said from arrival to first

2   punch was about 10 seconds and that this 10 to 15 times of

3   knee contact all occurred before the punches and that each

4   of those 10 to 15 times lasted about 5 seconds.  If we add

12:51:59   5   up 10 to 15 times 5 seconds each, we're going to get to 50

6   to 75 seconds, which means one of two things, either one

7   of these estimates is incorrect or the knee contacts

8   lasted after the punching.  So I'm just trying to get from

9   you which one is true?

12:52:25  10      A    To my knowledge, I -- it felt like maybe five

11   seconds, but it could have been shorter than that.  I'm

12   not really sure.

13      Q    After the punches, did your knee come off of

14   Mr. Cruz in the same manner that it was coming off before

12:52:48  15   the punches?

16      A    Yes.

17      Q    Okay.  And before the punches when your knee was

18   coming off of Mr. Cruz, did it come off, completely off of

19   his body?

12:52:59  20      A    Yes.

21      Q    Okay.  So in terms of the prepunching knee

22   intervals, the amount of time that your knee was in

23   contact with Mr. Cruz's back, did it vary to as much as

24   five seconds per contact?

12:53:20  25      A    Yes.



Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside                                    1200990

```
1
2                              DECLARANT
3
4
5              I hereby declare I am the deponent in the
6    within matter; that I have read the foregoing deposition
7    and know the contents thereof; and I declare that the same
8    is true of my knowledge, except as to the matters which
9    are therein stated upon my information or belief, and as
10   to those matters, I believe them to be true.
11             I declare under the penalties of perjury of
12   the State of California that the foregoing is true and
13   correct.
14
15
16
17             Executed this _____ day of _____,
18   2022, at _____ California.
19
20
21
22                             _____
                               Geoffrey Gillison
23
24
25
```

Geoffrey Gillison
Sarah Cruz Reaza vs. County of Riverside                                    1200990

```
 1                    REPORTER'S CERTIFICATE

 2

 3           I, the undersigned Certified Shorthand

 4  Reporter holding a valid and current license issued by the

 5  State of California, do hereby certify:

 6

 7           That said proceedings were taken down by me

 8  in shorthand at the time and place therein set forth and

 9  thereafter transcribed under my direction and supervision.

10

11           I further certify that I am neither counsel

12  for nor related to any party to said action, nor in any

13  way interested in the outcome thereof.

14

15           Before completion of the deposition, review

16  of the transcript was not requested.

17

18           The dismantling, unsealing, or unbinding of

19  the original transcript will render the Reporter's

20  certificate null and void.

21

22           IN WITNESS WHEREOF, I have subscribed my

23  name on this date:  March 15, 2022.

24           _____

25                     Certified Shorthand Reporter
```

EXHIBIT "F"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

SARAH CRUZ REAZA, INDIVIDUALLY       )
AND AS SUCCESSOR-IN-INTEREST OF       )
DECEDENT FERNANDO CRUZ, FERNANDO      )
BAEZA, INDIVIDUALLY AND AS            )
SUCCESSOR-IN-INTEREST OF              )
DECEDENT FERNANDO CRUZ, ET AL.,       )
                                      )
          Plaintiffs,                 )
                                      )
   vs.                                ) No. 5:20-cv-01188 FMO
                                      )      (SPx)
COUNTY OF RIVERSIDE, RIVERSIDE        )
COUNTY SHERIFF'S DEPARTMENT AND       )
DOES 1 THROUGH 20, INCLUSIVE,         )
                                      )
          Defendants.                 )
_____)

VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION OF

DEPUTY TODD HALBEISEN

Wednesday, March 9th, 2022

San Bernardino, California

Reported by: JUSTIN R.A. MCPHAIL, CSR No. 13873

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1              UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                  EASTERN DIVISION

4

5    SARAH CRUZ REAZA, INDIVIDUALLY      )
     AND AS SUCCESSOR-IN-INTEREST OF     )
6    DECEDENT FERNANDO CRUZ, FERNANDO    )
     BAEZA, INDIVIDUALLY AND AS          )
7    SUCCESSOR-IN-INTEREST OF            )
     DECEDENT FERNANDO CRUZ, ET AL.,     )
8                                        )
              Plaintiffs,                )
9                                        )
        vs.                              ) No. 5:20-cv-01188 FMO
10                                       )     (SPx)
     COUNTY OF RIVERSIDE, RIVERSIDE      )
11   COUNTY SHERIFF'S DEPARTMENT AND     )
     DOES 1 THROUGH 20, INCLUSIVE,       )
12                                       )
              Defendants.                )
13   _____)

14

15

16       VIDEO-RECORDED VIDEOCONFERENCE DEPOSITION

17       OF DEPUTY TODD HALBEISEN, the Defendant,

18       taken on behalf of Plaintiffs, via

19       Videoconferencing taken from San

20       Bernardino, California commencing at 10:02

21       a.m., Wednesday, March 9th, 2022, before

22       Justin R.A. McPhail, CSR No. 13873,

23       pursuant to Notice.

24

25

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

```
 1   APPEARANCES OF COUNSEL:

 2       FOR PLAINTIFFS: (Appearing Via Videoconference)

 3           LAW OFFICES OF GREGORY PEACOCK
             BY:  GREGORY PEACOCK, ESQ.
 4           4425 Jamboree Road
             Suite 130
 5           Newport Beach, California 92660
             (949) 292-7478
 6           Gregorypeacockesq@gmail.com

 7       FOR PLAINTIFFS:

 8           STEVEN A. LERMAN & ASSOCIATES, INC.
             BY:  NICHOLAS LERMAN, ESQ.
 9           BY:  STEVEN LERMAN, ESQ.
             6033 West Century Boulevard
10           Suite 740
             Los Angeles, California 90045
11           (310) 659-8166
             Nlerman@lermanslaw.com
12           nmlerman0@yahoo.com

13
         FOR DEFENDANTS: (Appearing Via Videoconference)
14
             LEWIS BRISBOIS BISGAARD & SMITH, LLP
15           BY:  ANTHONY SAIN, ESQ.
             633 West 5th Street
16           Suite 4000
             Los Angeles, California 90071
17           (213) 358-6041
             Tony.sain@lewisbrisbois.com
18

19       Also Present:

20           Garrett Estorga, Videographer

21           Robert Roach, Defendant

22           Geoffrey Gillison, Defendant

23

24

25
```



Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1203168

12:37:50

1    move around?

2        A    I don't understand your question.

3        Q    Sure.  You had stated that during an

4    approximate four-minute period your left knee was

12:38:02    5    making contact on and off with Mr. Cruz's back;

6    correct?

7        A    Yes.

8        Q    And during that approximate four-minute

9    period, it's your testimony that your knee came off

12:38:19    10   of Mr. Cruz's back approximately 25 times; correct?

11       A    Yes.

12       Q    During that period of time when you would

13   reapply your knee to Mr. Cruz's back, at any point

14   did you increase the amount of pressure to his back

12:38:40    15   to prevent him from continuing to move around?

16       A    Yes.  It would be determined on what his

17   actions were and how hard he was pushing up, whether

18   or not he had his hand on the ground, was pushing,

19   he was just turning his torso, whatever it may have

12:39:02    20   been.  It could have -- I'm sure that I applied more

21   depending on what he was doing at the time and how

22   hard he was trying to get up.

23       Q    Was there something that happened which

24   caused you to no longer place your knee on his back?

12:39:25    25       A    Yes, he was not as aggressive.  He started

**Kusar**  Keeping Your Word Is Our Business ℠

104

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

1                    DECLARATION OF WITNESS

2

3

4          I hereby declare I am the deponent in the

5    within matter; that I have read the foregoing deposition

6    and know the contents thereof, and I declare that the

7    same is true of my knowledge except as to the matters

8    which are therein stated upon my information or belief,

9    and as to those matters, I believe them to be true.

10         I declare under the penalties of perjury of

11   the State of California that the foregoing is true and

12   correct.

13         Executed this _____ day of _____, 2022,

14   at _____, _____.

15

16

17

18         _____

19                 Deputy Todd Halbeisen

20

21

22

23

24

25

Deputy Todd Halbeisen
Sarah Cruz Reaza vs. County of Riverside

                    REPORTER'S CERTIFICATE

1

2

3         I, the undersigned Certified Shorthand

4    Reporter, holding a valid and current license issued by

5    the State of California, do hereby certify:

6         That said proceedings were taken down by me in

7    shorthand at the time and place therein set forth and

8    thereafter were transcribed under my direction and

9    supervision.

10        I further certify that I am neither counsel for

11   nor related to any party to said action, nor in any way

12   interested in the outcome thereof.

13        The dismantling, unsealing, or unbinding of the

14   original transcript will render the Reporter's

15   certificate null and void.

16        Before completion of the deposition, review of

17   the transcript [XX]was [ ]was not requested.

18

19        IN WITNESS WHEREOF, I have subscribed my name

20   on this date: March 14, 2022.

21

22   

23        JUSTIN R.A. MCPHAIL, CSR No. 13873

24

25

EXHIBIT "G"

Case 5:20-cv-01188-MEMF-SP   Document 111   Filed 08/30/22   Page 71 of 97   Page ID
#:2967                                                                        1213363

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1

2

3

4

5

6                        AUDIO TRANSCRIPTION

7

8                    Sarah Cruz Reaza, et al ,
                              vs
9               County of Riverside, et al

10            Case Number:  5:20-CV-01188

11

12

13                 Body Worn Camera Video

14     Audio Labeled:  blu-ray disc video - final composite

15                    Length:  28:40

16                    October 7, 2019

17

18

19

20

21

22

23   Transcribed by:
     Natalie Fagan, CSR 13993

24

25

Case 5:20-cv-01188-MEMF-SP   Document 111   Filed 08/30/22   Page 72 of 97   Page ID #:2968

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

1    SARAH REAZA:  Oh, because my granddaughter --

2    about a year -- I don't know whether he -- because he --

3    he thinks too much of his wife -- his ex-wife, and he

4    thinks something is going on with -- with -- they are

5    hitting her or something.  And he hit the -- I don't

6    know if he hit the door, but he banged it real hard.

7         DEPUTY ROACH:  Okay.  So --

8         SARAH REAZA:  That's when I told him --

9         DEPUTY ROACH:  -- he hit it one time, and that

10   was it?

11        SARAH REAZA:  And then he says, Shut the -- he

12   told me, Shut the hell up something, bitch.  He never

13   cusses at me.  And I said, Well, I'm going to call the

14   cops on you.  He goes, I don't give a -- you know -- I

15   don't.  Call them.

16        DEPUTY ROACH:  So what would you --

17        SARAH REAZA:  And I said, Well, I am because

18   you're going to get a --

19        DEPUTY ROACH:  What would you like us to do?

20        SARAH REAZA:  I want him arrested because I

21   can't handle --

22        DEPUTY ROACH:  Arrested for what?

23        SARAH REAZA:  He's under the influence.

24        DEPUTY ROACH:  Of?

25        SARAH REAZA:  He goes in -- every time --

1      DEPUTY ROACH:  Of what?

2      SARAH REAZA:  That stuff.  That glass pipe.  I

3  don't know what it's called.  I never used it, so I --

4      DEPUTY ROACH:  Okay.  Did you see him use it?

5      SARAH REAZA:  I seen him in the kitchen.

6      DEPUTY ROACH:  Okay.

7      SARAH REAZA:  And he ran to the room because --

8      DEPUTY ROACH:  So let me ask you something, we

9  come here.  We take him.  I take him for being under the

10  influence or whatever it is that you think he is --

11  which is a misdemeanor -- and I take him down to the

12  jail, and they take his picture, and then they release

13  him.

14      SARAH REAZA:  But then if --

15      DEPUTY ROACH:  And then we're back in the same

16  situation.

17      SARAH REAZA:  He can't go to court and --

18      DEPUTY ROACH:  So you -- so when are you going

19  to take responsibility and do something --

20      SARAH REAZA:  Yeah.

21      DEPUTY ROACH:  -- because this is the third

22  time I've been here.

23      SARAH REAZA:  I've already told him.  I told

24  him go --

25      DEPUTY ROACH:  And one of the -- no.  I'm

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

1    sitting there.  Some of my grandkids are sitting --

2             (Dogs barking)

3             Stop it.

4             You could go through here.  There's a --

5             DEPUTY ROACH:  15.

6             SARAH REAZA:  There's a mess.

7    (Indiscernible) --

8             DEPUTY ROACH:  Can we go minimum traffic while

9    we contact subject?

10            DEPUTY LUCIFORA:  Okay.

11            SARAH REAZA:  (Indiscernible).

12            DEPUTY ROACH:  Oh, that's a big spider.

13            What's up, Fernando?

14            DEPUTY LUCIFORA:  Fernando, what's going on, my

15   man?

16            FERNANDO CRUZ:  Nothing I want right here.

17            DEPUTY LUCIFORA:  Hey, don't shut the door.

18            FERNANDO CRUZ:  Nah, please.  I'll --

19            DEPUTY LUCIFORA:  No.

20            FERNANDO CRUZ:  I'll kill myself.

21            DEPUTY LUCIFORA:  What's that?

22            FERNANDO CRUZ:  Man, I'll kill myself.

23            DEPUTY LUCIFORA:  Fernando --

24            DEPUTY ROACH:  Hey, Fernando, get back here,

25   dude.  Come here.  Come here, bro.

1213363

1    FERNANDO CRUZ:  No.  I didn't

2    (indiscernible) --

3        DEPUTY ROACH:  Drop what's in your hand.

4        FERNANDO CRUZ:  I didn't do nothing to white

5    people.

6        DEPUTY ROACH:  Drop what's in your hand right

7    now.

8        FERNANDO CRUZ:  That's why they are going to

9    kill me, mom.  Please let me go.

10        DEPUTY LUCIFORA:  Drop what's in your hand.

11        FERNANDO CRUZ:  I didn't do nothing to

12    nobody.

13        DEPUTY LUCIFORA:  I have his feet.

14        FERNANDO CRUZ:  I promise you.

15        DEPUTY ROACH:  Hey, you got that arm?

16        DEPUTY LUCIFORA:  Yeah.  You're good.

17        FERNANDO CRUZ:  I don't care.  I'm going to

18    kill my --

19        DEPUTY ROACH:  I'm going to roll -- I'm going

20    to roll --

21        FERNANDO CRUZ:  I'd rather kill myself --

22        DEPUTY ROACH:  -- him on his stomach.

23        FERNANDO CRUZ:  -- right now.

24        DEPUTY LUCIFORA:  You're good.  You're good.

25        FERNANDO CRUZ:  Let me kill myself.

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1          DEPUTY LUCIFORA:  You got his arm?

2          FERNANDO CRUZ:  No.  I won't do nothing,

3    Sandy.

4          UNIDENTIFIED FEMALE:  He's not hurting

5    anyone.

6          DEPUTY ROACH:  Get on his --

7          FERNANDO CRUZ:  I'm not going to hurt nobody.

8          DEPUTY ROACH:  Get on your stomach.

9          DEPUTY LUCIFORA:  Get on your stomach.

10         DEPUTY ROACH:  Get on your stomach --

11         FERNANDO CRUZ:  I'm not going to hurt nobody.

12         DEPUTY ROACH:  -- now.

13         DEPUTY LUCIFORA:  Get on your stomach.

14         DEPUTY ROACH:  Get on your stomach.

15         FERNANDO CRUZ:  Okay.

16         DEPUTY ROACH:  Now.  Get on your fucking

17   stomach.

18         FERNANDO CRUZ:  I was just smoking.

19         DEPUTY ROACH:  Lay on your fucking --

20         DEPUTY LUCIFORA:  Get on your stomach.

21         FERNANDO CRUZ:  Okay.

22         DEPUTY ROACH:  Now.  Get on your stomach.

23         FERNANDO CRUZ:  Don't kill me.

24         UNIDENTIFIED FEMALE:  (Indiscernible) --

25         DEPUTY LUCIFORA:  Get on your stomach.

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

```
 1              FERNANDO CRUZ:  Get them, Sandy.  You're --

 2      okay.  I will let my family go.  If that was the case, I

 3      promise.

 4              UNIDENTIFIED FEMALE:  (Indiscernible) --

 5              DEPUTY ROACH:  Get on your stomach, dude.  Just

 6      make this easy for us.

 7              FERNANDO CRUZ:  No, because I went over

 8      there -- I got fucking --

 9              DEPUTY LUCIFORA:  Get on your stomach.  I have

10      his legs.

11              FERNANDO CRUZ:  Nah.  I don't want to get

12      killed.

13              DEPUTY LUCIFORA:  We aren't going to kill you.

14      We're here to help you.

15              DEPUTY ROACH:  Get on your stomach.

16              FERNANDO CRUZ:  No.  I don't want --

17              DEPUTY ROACH:  Get on your stomach right now.

18              DEPUTY LUCIFORA:  Stop.

19              FERNANDO CRUZ:  I don't got no money.

20              DEPUTY LUCIFORA:  Get the kids out.

21              FERNANDO CRUZ:  No, please don't get the kids

22      out.

23              DEPUTY ROACH:  Get on your stomach --

24              DEPUTY LUCIFORA:  Get the kids out.

25              DEPUTY ROACH:  -- right now.
```

Case 5:20-cv-01188-MEMF-SP   Document 111   Filed 08/30/22   Page 78 of 97   Page ID #:2974

Audio Transcription
Sarah Cruz Reaza vs. County of Riverside

1213363

1    REPORTER'S CERTIFICATE

2         I, the undersigned, a Certified Shorthand

3    Reporter of the State of California, do hereby certify:

4         That the foregoing electronically-recorded

5    proceedings were transcribed by me to the best of my

6    ability.

7         I further certify I am neither financially

8    interested in the action nor a relative or employee of

9    any attorney or party to this action.

10        IN WITNESS WHEREOF, I hereunto subscribe my

11   name this 8th day of July, 2022.

12

13

14

15   _____

16   Natalie Fagan
     CSR NO. 13993

17

18

19

20

21

22

23

24

25

EXHIBIT "H"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

SARAH REAZA CRUZ,               )
individually and as             )
Successor-in-Interest of        )
Decedent Fernando Cruz,         )
et al.,                         )
                                )
            Plaintiffs,         )
                                )          Case No.
vs.                             )
                                )     5:20-CV-01188-MEMF-SP
COUNTY OF RIVERSIDE, et al.,    )
                                )
            Defendants.         )
_____)

DEPOSITION OF JEFFREY J. NOBLE

Taken on

Thursday, May 19, 2022

TAMARA D. WICKHAM
CSR NO. 4117, RMR, CRR

1                    UNITED STATES DISTRICT COURT

2                  CENTRAL DISTRICT OF CALIFORNIA

3

4

5

6    SARAH REAZA CRUZ,           )
     individually and as         )
7    Successor-in-Interest of )
     Decedent Fernando Cruz,    )
8    et al.,                     )
                                 )
9         Plaintiffs,            )
                                 )            Case No.
10   vs.                         )
                                 )       5:20-CV-01188-MEMF-SP
11   COUNTY OF RIVERSIDE,        )
     et al.,                     )
12                               )
          Defendants.            )
13   _____)

14

15

16        DEPOSITION OF JEFFREY J. NOBLE, taken on behalf

17   of the defendants, taken at Lewis Brisbois, 633 West

18   Fifth Street, Suite 4000, Los Angeles, California,

19   commencing at 9:55 o'clock a.m. on Thursday, May 19,

20   2022, before TAMARA D. WICKHAM, CSR No. 4117, RMR, CRR,

21   pursuant to Notice.

22                         --o0o--

23

24

25

1    <u>APPEARANCES OF COUNSEL</u>

2

3    For the Plaintiffs:

4         NICHOLAS A. LERMAN
          Attorney at Law
5         6033 West Century Boulevard
          Suite 740
6         Los Angeles, California 90045
          (310) 659-8166
7         Nmlerman0@yahoo.com

8

     For the Defendants COUNTY OF RIVERSIDE, ROBERT ROACH,
9    ANDREW LUCIFORA, GEOFFREY GILLISON, and TODD HALBEISEN:

10        LEWIS, BRISBOIS, BISGAARD & SMITH
          BY:  TONY M. SAIN, ESQ.
11        633 West Fifth Street
          Suite 4000
12        Los Angeles, California 90071
          (213) 250-1800
13        Tony.sain@lewisbrisbois.com

14
     Also Present:
15
          STEVEN A. LERMAN, Of Counsel for Plaintiff
16

17

18

19

20

21

22

23

24

25

                        NORMAN SCHALL & ASSOCIATES                    3
                            (800) 734-8838

1  enforcement agencies don't rely on medical studies or

2  medical science to determine what the risks of

3  positional asphyxia are; they rely upon other government

4  agencies, like the Department of Justice; is that

5  correct?

6      A.  No, I think what I'm saying is -- or what -- I

7  don't think I -- what I'm saying is that it's not up for

8  individual police departments to do their own medical

9  research to either confirm or recant different medical

10  studies.  I mean that's not what, what occurs.

11      Instead, the medical studies exist.  Different

12  organizations evaluate studies and evaluate issues like

13  positional asphyxia, and they publish findings and, and

14  recommendations on how to deal with such things.

15      In our case, certainly, you know, one of the more

16  guiding issues is the California POST, the basic

17  standards for police officer training.  California POST

18  recognizes positional asphyxia, and says that, you know,

19  it could restrict somebody's breathing, and the training

20  is that what follows from that is to put them in a

21  recovery position.

22      Q.  You would agree that California POST standards

23  are not required to be adopted by law enforcement

24  agencies verbatim; true?

25      A.  No, they're -- basically what California POST

1                     DECLARATION OF DEPONENT

2

3          I, JEFFREY J. NOBLE, say I have read the

4     foregoing deposition and declare under penalty of

5     perjury under the laws of the State of California and

6     all federal laws that my answers as indicated are true

7     and correct.

8

9          Dated this _____ day of _____, 20___,

10    at _____,_____.

11              (CITY)                  (STATE)

12

13                          _____

14                          (Signature of deponent)

15

16

17

18

19

20

21

22

23

24

25

<u>REPORTER'S CERTIFICATE</u>

I, TAMARA D. WICKHAM, Certified Shorthand Reporter No. 4117, do hereby certify:

That, prior to being examined, the witness named in the foregoing deposition, to wit, JEFFREY J. NOBLE, was duly sworn to testify the truth, the whole truth and nothing but the truth;

That said deposition was taken down by me in shorthand at the time and place therein named and thereafter reduced to computer-aided transcription under my direction.

That the foregoing transcript, as typed, is a true record of the said proceedings.

I further certify that I am not interested in the event of this action.

Executed at Los Angeles, California, this 25th day of May, 2022.

*Tamara D. Wickham*
TAMARA D. WICKHAM, CSR No. 4117

1              REPORTER'S CERTIFIED COPY CERTIFICATE

2

3         I, TAMARA D. WICKHAM, CSR NO. 4117, a Certified

4    Shorthand Reporter, hereby certify that the attached

5    transcript is a correct copy of the original transcript

6    of the testimony of JEFFREY J. NOBLE, taken before me on

7    the 19th day of May, 2022, as thereon stated.

8         I declare under penalty of perjury that the

9    foregoing is true and correct.

10        Executed at Los Angeles, California, this 25th

11   day of May, 2022.

12                        _Tamara D. Wickham_

13                        TAMARA D. WICKHAM, CSR NO. 4117

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT "I"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SARAH REAZA CRUZ,<br>individually and as<br>Successor-in-Interest of<br>Decedent Fernando Cruz,<br>et al.,<br><br>          Plaintiff,<br><br>vs.<br><br>COUNTY OF RIVERSIDE, et al.,<br><br>          Defendants. | Case No.<br><br>5:20-CV-01188-MEMF-SP |

DEPOSITION OF MARVIN PIETRUSZKA, M.D.

Taken on

Wednesday, May 18, 2022

TAMARA D. WICKHAM
CSR NO. 4117, RMR, CRR

1                 UNITED STATES DISTRICT COURT

2                CENTRAL DISTRICT OF CALIFORNIA

3

4

5

6    SARAH REAZA CRUZ,          )
     individually and as        )
7    Successor-in-Interest of   )
     Decedent Fernando Cruz,    )
8    et al.,                     )
                                 )
9          Plaintiff,           )
                                 )              Case No.
10   vs.                         )
                                 )        5:20-CV-01188-MEMF-SP
11   COUNTY OF RIVERSIDE,        )
     et al.,                     )
12                               )
           Defendants.          )
13   _____)

14

15

16        DEPOSITION OF MARVIN PIETRUSZKA, M.D., taken on

17   behalf of the, defendants, taken at 633 West Fifth

18   Street, Suite 4000, Los Angeles, California, commencing

19   at 12:55 o'clock p.m. on Wednesday, May 18, 2022, before

20   TAMARA D. WICKHAM, CSR No. 4117, RMR, CRR, pursuant to

21   Notice.

22                        --oOo--

23

24

25

                 NORMAN SCHALL & ASSOCIATES                    2
                      (800) 734-8838

1  <u>APPEARANCES OF COUNSEL</u>

2

3  For the Plaintiff:

4       NICHOLAS A. LERMAN
        Attorney at Law
5       6033 West Century Boulevard
        Suite 740
6       Los Angeles, California 90045
        (310) 659-8166
7       Nmlerman0@yahoo.com

8

For the Defendants COUNTY OF RIVERSIDE, ROBERT ROACH,
9  ANDREW LUCIFORA, GEOFFREY GILLISON, and TODD HALBEISEN:

10      LEWIS, BRISBOIS, BISGAARD & SMITH
        BY:  TONY M. SAIN, ESQ.
11      633 West Fifth Street
        Suite 4000
12      Los Angeles, California 90071
        (213) 250-1800
13      Tony.sain@lewisbrisbois.com

14  Also Present:

15      STEVEN A. LERMAN, Of Counsel for Plaintiff

16

17

18

19

20

21

22

23

24

25

NORMAN SCHALL & ASSOCIATES——————3
(800) 734-8838

1   Calls for speculation.  Assumes facts not in evidence.

2   Incomplete hypothetical.

3           THE WITNESS:  Well, the answer requires an

4   explanation, if I can give you an explanation.

5   BY MR. SAIN:

6       Q.  Sure, but first I'd like a yes or no, then we'll

7   deal with the explanation, so...

8       A.  All right then.

9       Q.  Do you want the question again?

10      A.  I heard the question, and it doesn't have a

11  simple answer.

12      Q.  So --

13      A.  It doesn't have a yes or no answer.

14      Q.  In general, isn't it possible that if

15  0.100 milligrams per liter is the low end of the toxic

16  range for methamphetamine, doesn't that mean that a

17  person -- it is possible for a person to die solely as a

18  result of methamphetamine if they have 0.100 milligrams

19  per liter or above in their system?

20          Isn't that possible?

21          MR. NICHOLAS LERMAN:  Objection.  Incomplete

22  hypothetical.  Compound.  Assumes facts not in evidence.

23  Vague and ambiguous.

24          THE WITNESS:  The answer is that

25  methamphetamine users have tolerance, they develop

1    tolerance to the usage of the drug.  This gentleman was

2    a chronic user of methamphetamine.

3              Individuals who are tolerant do not

4    necessarily suffer the adverse effects of the drug,

5    especially at the lowest levels of toxicity.  Toxicity

6    does not necessarily mean that it's a lethal dose, it

7    doesn't necessarily have to be a lethal dose.

8              The literature is not very clear on the

9    subject, mainly because the studies combine just about

10   anybody who dies who happens to have a level of

11   methamphetamine, even at .1.

12             So the answer is not a simple answer.  My,

13   my opinion is that an individual with a .1 most likely

14   is not going to die from that dosage because of the

15   scientific principle of tolerance.

16             MR. SAIN:  So move to strike as

17   nonresponsive.

18             I wasn't talking about whether or not that's

19   always a fatal level, and I wasn't talking about this

20   case yet and I haven't reached your opinions, I will,

21   don't worry.  My question was a little broader.

22             THE WITNESS:  Okay.

23             MR. SAIN:  Because so far what you've told

24   me is that according to the medical literature that you

25   are familiar with, the low end of the toxic range for

1    Q.   So let's unpack that.

2         First, you're saying that the weight that you

3    have in your own autopsy exam, which you list as 185,

4    you're now saying that that is wrong?

5    A.   I think it's wrong.   It doesn't look like the

6    individual that I observed in the photographs.

7    Q.   And are you aware that according to the autopsy

8    performed by Dr. Rodriguez, that she measured his weight

9    as approximately 196 pounds?

10   A.   Yes.

11   Q.   So my question to you is, is a person who is --

12   regardless of what your measurement was, is a person who

13   is five-foot-six tall and between 185 and 196 pounds, is

14   that person considered obese?

15   A.   No.

16   Q.   Under Skull and Central Nervous System of your

17   autopsy report, you identify a left temporal occipital

18   hematoma, a right -- a hematoma of the right temporal

19   muscle, and a subarachnoid hemorrhage.

20        What is the medical significance of those

21   findings?

22   A.   I believe the subarachnoid hemorrhage was -- I

23   couldn't confirm it.   It looked like it could be maybe

24   it was only congestion.

25        The hematomas of the scalp and the temporal

1    muscle suggests that there was some significant trauma

2    to the head.   The only significance to the -- without

3    any brain injury that could be identified, is that the

4    head -- the head was impacted some between three to five

5    times from the records.

6        It does show, the autopsy showed abrasions of the

7    chin, indicating that his head was in a down position,

8    which would again make it difficult to breathe if your

9    head is close to the ground or close to a floor.   It's

10    kind of hard to breathe when, when you're getting hit in

11    the head a few times.

12        Q.   So your own autopsy found no evidence of any

13    brain injury for Mr. Cruz; true?

14        A.   Correct.

15        Q.   And did any of the hemorrhages, hematomas or

16    other injuries you found in your own autopsy, did any of

17    the hemorrhages, hematomas or injuries to Mr. Cruz's

18    head, did any of those cause or contribute to Mr. Cruz's

19    death?

20        A.   No.

21        Q.   According to your own autopsy, it says:   "The

22    heart is of a normal shape and size."   Correct?

23        A.   Yes.

24        Q.   It says there's a mild atherosclerosis of the

25    aorta; correct?

<u>DECLARATION OF DEPONENT</u>

     I, MARVIN PIETRUSZKA, M.D., say I have read the foregoing deposition and declare under penalty of perjury under the laws of the State of California and all federal laws that my answers as indicated are true and correct.

     Dated this \_\_\_\_\_ day of _____, 20\_\_\_, at _____, _____.

         (CITY)            (STATE)

                _____

                (Signature of deponent)

<u>REPORTER'S CERTIFICATE</u>

1

2

3      I, TAMARA D. WICKHAM, Certified Shorthand

4  Reporter No. 4117, do hereby certify:

5

6      That, prior to being examined, the witness named

7  in the foregoing deposition, to wit, MARVIN PIETRUSZKA,

8  M.D., was duly sworn to testify the truth, the whole

9  truth and nothing but the truth;

10

11      That said deposition was taken down by me in

12  shorthand at the time and place therein named and

13  thereafter reduced to computer-aided transcription under

14  my direction.

15

16      That the foregoing transcript, as typed, is a

17  true record of the said proceedings.

18

19      I further certify that I am not interested in the

20  event of this action.

21

22      Executed at Los Angeles, California, this 25th

23  day of May, 2022.

24                    _Tamara D. Wickham_
                 TAMARA D. WICKHAM, CSR No. 4117
25

NORMAN SCHALL & ASSOCIATES————94
(800) 734-8838

```
 1                  REPORTER'S CERTIFIED COPY

 2

 3        I, TAMARA D. WICKHAM, CSR NO. 4117, a Certified

 4   Shorthand Reporter, hereby certify that the attached

 5   transcript is a correct copy of the original transcript

 6   of the testimony of MARVIN PIETRUSZKA, M.D., taken

 7   before me on the 18th day of May, 2022, as thereon

 8   stated.

 9        I declare under penalty of perjury that the

10   foregoing is true and correct.

11        Executed at Los Angeles, California, this 25th

12   day of May, 2022.

13
                          Tamara D. Wickham
14                   TAMARA D. WICKHAM, CSR NO. 4117

15

16

17

18

19

20

21

22

23

24

25
```